2:99-0107

In the Eighty-Eight U.S. District Courts of the Fifty States of the United States of America

FILED
FEB 10 1999
SAMUEL L. KAY, CLERK
U. S Distri &
So

Civil and Criminal Action File Number

**One**

Donald S. Drusky, Petitioner.
The People of the Fifty States of the United States of America,
Plaintiffs,

v.

The 100th U.S. Congress thru 105th Congress, and the Governor, Lt. Governor and Legislature of the Fifty States,
Defendants.

**Two**

Donald S. Drusky and All the People of the Fifty States of the United States of America,
Complainants,

v.

USX Corporation and United Steelworkers of America,
Defendants.

**Three**

Donald S. Drusky and All the People of the Fifty States of the United States of America,
Complainants,

v.

George Bush, All the Individual Members of the U.S. Senate and U.S. House of Representatives of the 100th U.S. Congress, and Edwin Meese, and the Governors and State Attorney Generals, as Individuals, of the Fifty States of the United States of America, as of June 1986,
Defendants.

**Four**

Donald S. Drusky and All the People of the Fifty States of the United States of America,
Plaintiffs,

v.

U.S. Attorney General Janet Reno and the U.S. Attorney for Each U.S. District Court of the Eighty-Eight U.S. District Courts of the United States of America,
Defendants.

**Five**

Donald S. Drusky and All the People of the Fifty States of the United States of America,
Plaintiffs,

v.

Federal Communications Commission, Defendant, with American Broadcasting Company, Columbia Broadcasting Company, National Broadcasting Company, Fox Broadcasting Company and Cable News Network, as Necessary or Indispensable Parties.

**Six**

Donald S. Drusky, Petitioner,

v.

The Sovereign People of the United States of America,
Defendants.

**Seven**

Donald S. Drusky, Plaintiff,

v.

God,
Defendant.

To the Honorable, the Judges of the Eighty-Eight U.S. District Courts of the Fifty States of the United States of America:

Section One. - The Case of Donald S. Drusky, Petitioner. The People of the Fifty States of the United States of America, Plaintiffs, v. The 100th Congress thru the 105th Congress, and the Governor, Lt. Governor and Legislature of the Fifty States, Defendants. - Petition for removal from office all the remaining members of the 100th Congress thru the 105th Congress. Petition to remove from office the Governor, Lt. Governor and entire Legislature of each state (bicameral or unicameral) in office as of the present date, that were in office during 1998.

Reason for Removal From Office: Wilful failure to redress grievances at the federal and state levels of government. They love your vote and love your tax money. They do not love you or care about you. They can't stand your grievances and will not redress your meritorious grievances under your Amendment One rights. Petitioner Donald S. Drusky is the only one that loves you, and I am sincerely concerned about you. They are incapable of good government and must be removed for bad government.

The Legal Setting: The People of the Fifty States of the United States of America, as Plaintiffs in this action, invoke U.S.C.A. 28, Section 1331 to gain jurisdiction over federal and state officials, that were elected into office by the people, and are subject to removal from office by the people for violation of Amendment One right to redress. The people of the 50 states voted into office their respective members of the U.S. Congress and State Government, and are responsible, respectively, for the removal of their elected officials of federal and state government. At Note 3 on page 563 under Gordon v. Leatherman 450 F.2d, 562 (1971), it reads as follows: "Insofar as the United States Constitution is concerned, an elector may vote for a good reason, a bad reason, or for no reason whatsoever, and such principle applies to recall elections as it does to all other elections. U.S.C.A. Constitutional Amendment 14."

Claim of Relief Sought: The people seek possible removal by Court or, in the alternative, by recall vote.

The Factual Setting: Part One - The Case of the 100th U.S. Congress thru the 105th U.S. Congress. Petitioner Donald S. Drusky submitted an eight page petition dated August 14, 1987 with supporting exhibits to the U.S. District Court for the District of Columbia. Within the petition, a motion was made to enjoin, amongst others, the U.S. Senate and U.S. House of Representatives as Defendants. It required Plaintiff Donald S. Drusky to serve process upon all 100 U.S. Senators and all 435 U.S. Representatives. The petition was reduced in size and fitted onto one page front to back. A series of exhibits were also reduced in size and fitted onto two pages front to back. A copy of the reduced in size petition and two pages of reduced in size exhibits are attached as an exhibit to this petition in the 88 U.S. District Courts. Donald S. Drusky did serve process upon all 100 U.S. Senators and upon almost all the 435 U.S. Representatives. At the time of service of process, certain names were not available. Within the motion to enjoin Congress as Defendants, Plaintiff Donald S. Drusky sought a legislative redress of grievances and a special court to properly process civil and criminal complaints against the USX Corporation and the United Steelworkers of America. Congress failed to redress my grievances, failed to create a Special Court, and did not create a Special "United States Committee for the Redress of Grievances." In essence, the people of the 50 states (election after election) voted Congress the power to not legislatively redress grievances. Meanwhile, the U.S. District Court for the District of Columbia did not docket or process the prima-facie petition. The U.S. District Court improperly returned the petition to Donald S. Drusky with a covering letter dated August 24, 1987 by Deputy Clerk A. J. Rambow. A copy of the letter is attached as an exhibit. The 100th Congress, in essence, countenanced the inaction of the U.S. District Court for the District of Columbia.

The Factual Setting: Part Two - The Case of the Governor, Lt. Governor and Legislature of the Fifty States. Petitioner Donald S. Drusky submitted an eight page petition dated August 14, 1987 with supporting exhibits to the U.S. District Court for the District of Columbia. On Exhibit 'A' attached to the petition is a view of a reduced in size 4 page petition dated June 28, 1986 to the U.S. Supreme Court that Donald S. Drusky neatly and accurately drafted on behalf of himself and on behalf of all the citizens of the United States of America. Part I of the Complaint reads as follows: "I bring this suit on my behalf and on behalf of all the citizens of America." The Certificate of Service was made on the bottom of the 4th page. It read: "On the 28th day of June 1986, I served a copy of this complaint by first class mail to the Governors and Attorney Generals of the 50 States of America, and to the Solicitor General and to the National Labor Relations Board." The Complaint was respectfully submitted by Donald S. Drusky. By letter dated July 1, 1986, Assistant Clerk Edward C. Schade of the U.S. Supreme Court improperly

returned the valid petition. A reduced in size copy of the letter is viewed on Exhibit 'A'. The Governors and Attorney Generals of the Fifty States of the United States of America, in essence, countenanced the inaction of the U.S. Supreme Court. The Defendants could not possibly or truly rebut the complaint against the 50 states for their failure to redress grievances under Amendment One at the state level of government. The 50 state governments do not have a "Committee for the Redress of Grievances" to work in conjunction with the "People's Right to Petition for Redress."

Conclusion of Part One and Part Two of the Factual Setting: Congress and the 50 State Legislatures cannot produce verified records to prove the legislative redress of the day-to-day grievances of the people. No records are available in law libraries or public libraries. The day-to-day grievances of the people are not being redressed by officials at the federal and state levels of government, and they are subject to removal from office by their respective electors. The right of recall is a fundamental right of the people in a representative democracy.

---

Section Two - The Case of Donald S. Drusky and All the People of the Fifty States of the United States of America, Complainants, v. USX Corporation and United Steelworkers of America, Defendants.

The Legal Setting: Criminal Complaint for Violation of U.S.C.A. 18, Section 1503 - Influencing or injuring officer, juror or witness generally; and U.S.C.A. 18, Section 371 - Conspiracy to committ offence or defraud the United States; and U.S.C.A. 18, Section 241 - Conspiracy against rights of citizens.

The Factual Setting: Part One - The Complainants state that a petition on exhibit dated August 14, 1987 was submitted to the U.S. District Court for the District of Columbia. Defendants USX Corporation and United Steelworkers of America jointly forced the U.S. District Court for the District of Columbia to not docket or process the meritorious petition neatly and accurately drafted by Donald S. Drusky to bring the company and union to civil and criminal justice. The petition sought the redress of Donald S. Drusky's grievances and all the people of America, as their grievances arise under Amendment One of the U.S. Constitution. A valid motion for leave to proceed in forma pauperis was made with supporting affidavit. On exhibit is a copy of a letter dated August 24, 1987 by Deputy Clerk A. J. Ramlow improperly returning the petition to Donald S. Drusky. The valid petition and certificate of service were also supported by affidavit.

The Factual Setting: Part Two - The Complainants state that on Exhibit 'A', attached to the August 14, 1987 petition to the U.S. District Court for the District of Columbia, is a view of a reduced in size 4 page petition dated June 28, 1986 to the U.S. Supreme Court, that was neatly and accurately drafted by Donald S. Drusky on behalf of himself and on behalf of all the citizens of America. A valid motion for leave to proceed in forma pauperis, and certificate of service were supported by affidavit. The body of the 4 page petition to the U.S. Supreme Court does not refer to the USX Corporation or the United Steelworkers of America. However, as it would eventually affect the company and union, they jointly intervened in the action by forcing the U.S. Supreme Court to not docket or process the valid petition. By letter dated July 1, 1986, Assistant Clerk Edward C. Schade of the U.S. Supreme Court improperly returned the valid petition to Donald S. Drusky. A copy of the reduced in size letter is viewed on Exhibit 'A'.

The Factual Setting: Part Three - The Complainants state that on Exhibit 'AA', attached to the August 14, 1987 petition to the U.S. District Court for the District of Columbia, is a view of a reduced in size 4 page 'Opinion' by Senior District Judge Wallace Gourley of the U.S. District Court for the Western District of Pennsylvania. The caption on the Civil Action read: "Donald S. Drusky, Plaintiff, v. The Judges of the Supreme Court, Eleven U.S. Circuit Courts of Appeals and Eighty-Nine U.S. District Courts Embracing the Fifty States of the United States of America, and District of Columbia, and the United States Steel Corporation, and I. W. Abel, Joseph Molony and Walter Burke of the United Steelworkers of America, and the National Labor Relations Board, Defendants." The case was docketed as Civil Action Number 71-249. The 'Opinion' was concluded with an 'Order' which read: "Now this 16 day of March 1971, It Is Ordered that leave to proceed in forma pauperis be and the same is hereby denied and the Complaint is dismissed." This particular case was docketed with an opinion and concluding order. However, in this case, Defendants United States Steel Corporation (now known as the USX Corporation) and the United Steelworkers of America caused the court to issue a decision, which withheld justice.

Section Three – The Case of Donald S. Drusky and All the People of the Fifty States of the United States of America, Complainants, v. George Bush, All the Individual Members of the U.S. Senate and U.S. House of Representatives of the 100th Congress, and Edwin Meese, and the Governors and State Attorney Generals, as Individuals, of the Fifty States of the United States of America, as of June 1986, Defendants.

The Legal Setting: Criminal Complaint for Violation of U.S.C.A. 18, Section 3. Accessory after the fact; and U.S.C.A. 18, Section 4. Misprision of felony.

The Factual Setting: Part One – The Complainants state that this Complaint against the federal Defendants of Section Three is based upon the Factual Setting - Part One and Part Two of Section One of this petition, and derived from the Legal Setting and the Factual Setting - Part One and Part Two and Part Three of Section Two of this petition. Additionally, on page 6 of the petition on exhibit to the U.S. District Court for the District of Columbia, a motion was made to enjoin U.S. Attorney General Edwin Meese as a Defendant. Donald S. Drusky served process upon Edwin Meese. From the time that U.S. Steel and the United Steelworkers of America jointly committed perjury in Civil Action 68-124 to illegally and criminally obtain Summary Judgment against Donald S. Drusky, they jointly barred the U.S. Attorney for the Western District of Pennsylvania and the U.S. Attorney General and the U.S. Department of Justice to not initiate criminal proceedings against them. U.S. Attorney General E. Meese continued the trend. Part One Defendants are George Bush, Edwin Meese & Individuals of Congress.

The Factual Setting: Part Two – The Complainants state that this Complaint against the Governors and State Attorney Generals, as Individuals, of the Fifty States of the United States of America, as of June 1986, is based upon the Factual – Part Two of Section One of this petition, and derived from the Legal and Factual – Part Two of Section Two of this petition.

Conclusion of Section Three: The Defendants of Part One of the Factual Setting made no formal investigation of the inaction of the U.S. District for the District of Columbia. The Defendants of Part Two of the Factual Setting made no formal investigation of the inaction of the U.S. Supreme Court. The Defendants of Part One and Part Two of the Factual Setting took advantage of the inaction of the U.S. District Court for the District of Columbia and U.S. Supreme Court, respectively. Defendants Bush, Meese and Individuals of the 100th Congress could not truly rebut the valid complaint against them, and did not take any positive action to maintain the felons responsible for the inaction of the U.S. District Court for the District of Columbia. The Governors and State Attorney Generals of the Fifty States could not truly rebut the valid complaint against their respective state. They covered up for their respective state and took no positive action to maintain the felons responsible for the inaction of the U.S. Supreme Court. Instead, the felons have barbarously disenfranchised Donald S. Drusky. Defendants Bush, Meese and Individuals of the 100th Congress had full knowledge of felonies committed by the USX Corporation and the United Steelworkers of America. To save face and avoid disgrace, no affirmative action was made to create a special court to properly prosecute the company and union.

A definition of 'misprision of felony' under U.S.C.A. 18, Section 4 is as follows: A "misprision of felony" is the concealment of a felony without giving any degree of maintenance to the felon. ——— The law citation is U.S. v Perlstein, 126 F.2d 789. The law under U.S.C.A. 18, Section 3 'Accessory after the fact' reads as follows: Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact. ——— An accessory after the fact to a crime is an offense principally tending to evade the public justice and is subsequent in its commencement to the crime of aiding and abetting. – U.S. v Anthony, D.C. Pa. 1956, 145 F. Supp. 323. Regarding all the Defendents of Section Three: Conviction of the principal offender is not a necessary condition precedent to conviction of an accessory after the fact. – U.S. v Walker (1969, CA9 Cal) 415 F. 2d 530. ——— The right to petition the government for the redress of grievances includes the right of access to the courts; that right is also subject to due process protection in that the opportunity must be at a meaningful time and in a meaningful manner. – U.S.C.A. Constitutional Amendments 1 and 5. – Matter of N.C. Trading, Cust. & Pat. App. 1978, 586 F.2d 221. ——— Right of petition guarantees all citizens' right to appeal to the legislature or judiciary and this right is not conditioned upon motive. – Wilmorite, Inc. v Eagan Real Estate, Inc. D.C. N.Y. 1977, 454 F. Supp. 1124.

Within the petition to the U.S. District Court for the District of Columbia, a request was made for a special court to properly process civil and criminal complaints against the USX Corporation and the United Steelworkers of America. Simultaneously, the 100th Congress denied a special court and the U.S. District Court for the District of Columbia denied access to their court. The matter was further compounded because the 100th Congress would not grant funds toward Donald S. Drusky's pursuit of justice, which economically coerced Donald S. Drusky. The denial of public funds obstructed justice and clarified the crimes of misprision of felony and accessory after the fact. The despicable offenses by the collective Defendants of Section Three severely compounded the legal disability and medical disability of Donald S. Drusky, which severely disenfranchised Donald S. Drusky. Under the petition to the U.S. District Court for the District of Columbia, Donald S. Drusky was to be restored but was destroyed. The crimes by the USX Corporation and the United Steelworkers of America have been known for years. Donald S. Drusky has petitioned public ~~public~~ officials at all levels of government for years, that have compounded the crimes of the company and union. The petition on exhibit dated August 14, 1987 to the U.S. District Court for the District of Columbia was effectively thrown out of the court, which has become the greatest crime of all time. The petition was of major magnitude and was reduced to nothing under the oversight of the 100th Congress.

---

Section Four – Donald S. Drusky and All the People of the Fifty States of the United States of America, Plaintiffs, v. U.S. Attorney General Janet Reno and the U.S. Attorney for Each U.S. District Court of the Eighty-Eight U.S. District Courts of the United States of America, Defendants.

Legal Setting: Donald S. Drusky and the People of the Fifty States, as Plaintiffs in this action, invoke U.S.C.A. 28, Section 1361 to gain jurisdiction over U.S. Attorney General Janet Reno and the U.S. Attorney for each U.S. District Court of the 88 U.S. District Courts of the United States of America. At Note 4. Mandamus under Public Citizen v. Kantor 864 F. Supp. 208 (D.D.C. 1994), it reads as follows: Purpose of Mandamus Act section providing court with an extraordinary remedy to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff" was not to expand traditional scope of mandamus, but to provide that remedy to federal courts outside District of Columbia. 28 U.S.C.A. § 1361. (The 88 U.S. District Courts of the Fifty States are obviously outside the District of Columbia.)

Claim of Relief Sought: Donald S. Drusky and the People seek a court order to compel U.S. Attorney General Janet Reno and the 88 U.S. Attorneys of their respective districts to prosecute all Defendants cited in Sections Two and Three of this petition for violations set forth in the Legal Setting of Sections Two and Three. Additionally, the duty of the Defendants of Section 4 is clear and indisputable.

Factual Setting: The factual setting is outlined in the Factual Setting under Sections Two and Three. A writ of mandamus must be issued by the 88 U.S. District Courts directing U.S. Attorney General Janet Reno and the 88 U.S. Attorneys of the 88 U.S. District Courts to immediately initiate prosecution of the Defendants listed under Sections Two and Three of this petition.

---

Section Five – Donald S. Drusky and All the People of the Fifty States of the United States of America, Plaintiffs, v. Federal Communications Commission, Defendant, with American Broadcasting Company, Columbia Broadcasting System (erroneously captioned as Columbia Broadcasting Company), National Broadcasting Company, Fox Broadcasting Company and Cable News Network, as Necessary or Indispensable Parties.

Legal Setting: Donald S. Drusky and the People of the Fifty States, as Plaintiffs in this action, invoke the Legal Setting set forth in Section Four of this petition to gain jurisdiction over the FCC in Section Five of this petition. The people further invoke U.S.C.A. 47, Section 411 (a) Joinder of Parties to gain jurisdiction of the 88 U.S. District Courts. -- Additionally, the people invoke U.S.C.A. 47, Section 401. Enforcement provisions.

Claim of Relief Sought: If participants ABC, CBS, NBC, FOX and CNN do not formally volunteer their facilities to the people, an order by the 88 U.S. District Courts directing Defendant Federal Communications Commission to immediately, in the public interest and convenience, order the News Division of participants ABC, CBS, NBC, FOX and CNN to furnish their facilities to the people to inform all the people of the 50 states of the contents of this entire petition to the 88 U.S. District Courts of the United States of America.

The Factual Setting: The factual setting is outlined in the over-all petition with supporting exhibits to the 88 U.S. District Courts. More specifically, at the base of page 4 of the petition to the U.S. District Court for the District of Columbia, a motion was made to join the FCC as a defendant. The FCC failed to act on its own power and motion in the public convenience, interest or necessity in violation of U.S.C.A. 47, Section 403.

Conclusion: The misconduct of elected public officials at the federal and state levels of government must be brought before the public. The fact that Congress and the 50 State Legislatures do not legislatively redress grievances must be brought to the attention of the people. The people of America cannot govern America with the news media only informing the public about floods and tornadoes, murders and bank robberies, house fires and automobile accidents, the medical report, the scores of the ball games, the weather forecast, and the lottery numbers. The people have the right to regulate their government. The people cannot possibly regulate their government without knowing the misconduct of public officials, which is being suppressed by the news media. A very important and appropriate legal precedent can be found at 354 U.S. at page 200. The pertinent sentence reads: "The public is, of course, entitled to be informed concerning the workings of its government."

The law authorizes mandamus and circumstances require it. If, for example, an order is not issued by the 88 U.S. District Courts to compel the FCC to perform a duty owed to the People Plaintiffs, they would remain (as they have unknowingly been) as subjects of the federal and 50 state governments, and the people would remain in the dark and uninformed. The case is clear and undisputable for the 88 U.S. District Courts to issue mandamus upon the FCC. The FCC must act in the public convenience, and it is of great interest and necessity that the people be promptly informed of their case in the 88 U.S. District Courts. The people must have broad access to their case in the 88 U.S. District Courts. Under U.S.C.A. Constitution Amendments 1 and 14, the people are entitled to receive information and ideas, which includes the entire contents of their case before the 88 U.S. District Courts.

In its action on licenses, the FCC is to be guided by the "touchstone" of "public convenience, interest or necessity," which is the standard provided by law for licensing of radio and television broadcasting stations. No television or radio broadcasting license may be granted unless the licensee serves the public interest, and licensees have a duty to operate their stations so as to serve the public interest, the station being deemed a trustee for the public. The FCC must act so that the people may have the best possible radio and television service. In this particular case, the news media is serving the interest of the corrupt U S X Corporation and the United Steelworkers of America, and all levels of government, which are not redressing grievances under Amendment One. More specifically, the U S X Corporation and the United Steelworkers of America have censored my picketing in Pittsburgh and elsewhere, and also censored all my legal activity in the courts. Under U.S.C.A. 47, Section 326. Censorship, it bars the FCC the power of censorship over radio communication. If it bars the FCC the power of censorship, it obviously bars the USX Corporation and the United Steelworkers of America with the power of censorship, which has been without restraint to the present date. Under U.S.C.A. 47, Section 326. Censorship, people invoke the following citation: "This section declaring national policy does not authorize states to exercise censorship specifically denied to the federal agency. Allen B. Dumont Laboratories v. Carroll, C.A. Pa. 1950, 184 F.2d 153, certiorari denied 71 S. Ct. 490, 340 U.S. 929, 95 L. Ed. 670." Working from this brief citation under U.S.C.A. 47, Section 326. Censorship; the 50 states, the federal government, USX Corporation and the United Steelworkers of America cannot censor the people's case before the 88 U.S. District Courts. Neither can the 88 U.S. District Courts, which can only issue mandamus for the broadcasting news media to bring case before the 88 U.S. District Courts to the attention of the public.

Under Amendment One's Freedom of Speech and Press, the people invoke in their favor the following citations: "Rights of viewers and general public under this clause are paramount and supersede those of broadcasters. DeFilipo v. National Broadcasting Co., Inc., R.I. 1982, 446 A. 2d 1036." and "Because the broadcast media utilize a valuable and limited public resource, there is also present an unusual order of values under this amendment: although the broadcaster is not without protection under this amendment, it is the right of the viewers and listeners which is paramount. Columbia Broadcasting System, Inc. v. Democratic National Committee, U.S. Dist. Col. 1973, 93 S. Ct. 2080, 412 U.S. 94, 36 L. Ed. 2d 772."

Under U.S.C.A. 47, Section 412, this entire document with exhibits before the 88 U.S. District Courts shall be preserved as public records (upon service to the Commission) in the custody of the secretary of the Commission, and shall be received as prima facie evidence of what they purport to be for the purpose of investigations by the Commission and in all judicial proceedings.

Finally and even more specifically, there is a public issue discussion requirement. The people invoke in their favor the following citation under U.S.C.A. 47, Section 326 Censorship: "Commission is authorized to require licensees to use stations for discussion of public issues, and is free to implement requirement by reasonable rules and regulations which fall short of abridgement of freedom of speech and press and of censorship proscribed by statute. Red Lion Broadcasting Co. v. F.C.C., Dist. Col. 1969, 89 S. Ct. 1794, 395 U.S. 367, 23 L. Ed. 2d 371."

For all the above reasons, an order (mandamus) must be issued by the 88 U.S. District Courts directing Defendant Federal Communication Commission to immediately in the public interest order the News Division of the American Broadcasting Company, Columbia Broadcasting System, National Broadcasting Company, Fox Broadcasting Company and Cable News Network to inform the people of their case in the 88 U.S. District Courts. The public must not be kept in the dark. Under the eyes of alert public opinion, a just solution to the problem must be found. Under U.S.C.A. 47, Section 326, on behalf of the people, the programming of facts and law against the federal and state governments cannot be censored.

In the alternative, the people seek to purchase the furnishing of broadcast facilities to inform the public of their case before the 88 U.S. District Courts. The people invoke U.S.C.A. 47, Section 406. Compelling furnishing of facilities; mandamus; jurisdiction.

The 88 U.S. District Courts of the United States shall have jurisdiction over the broadcasters to issue writs of mandamus against the broadcasters to furnish facilities for such communication or transmission to the parties (people of America) applying for the writ. If advertisers will not sponsor the communication to the people, the people motion to pay for the furnishing of broadcast facilities from public funds. The air waves belong to the people, and the people are entitled to buy air wave time.

---

Section Six — The Case of Donald S. Drusky, Petitioner, v. The Sovereign People of the United States of America, Defendants and/or Respondents.

The Legal Setting: Petitioner Donald S. Drusky invokes U.S.C.A. 28, Section 1331 to gain jurisdiction over the Sovereign People of the United States of America. Donald S. Drusky also invokes the following citations regarding the Constitution and Amendment One: The "constitution" of the United States is the supreme law of the land, and the judges in every state are bound thereby, anything in the constitution or laws of their own state to the contrary notwithstanding. Atkinson v. Woodmansee, 74 P. 640, 641, 68 Kan. 71, 64 L.R.A. 325. —— The federal Constitution is a compact established by the people of the United States, and not by the states in their sovereign capacity. In re Opinion of the Justices, 107 A. 673, 674, 118 Me. 544, 5 A.L.R. 1412. The "constitution" is a solemn mandate by the people to various branches of government, and Supreme Court would be derelict in its duty if it permitted such mandates to be circumvented, regardless of the court's personal desires, no matter how expedient such circumvention might appear at the time. Troy v. Yelle, 176 P. 2d 459, 27 Wash. 2d 99, 170 A.L.R. 1425.

A constitution is defined by Judge Story to be a fundamental law or basis of government. It is established by the people, in their own original sovereign capacity, to promote their own happiness, and permanently to secure their rights, property, independence and common welfare. McKoan V. Devries, N.Y., 3 Barb. 196, 198, quoting 1 Story, Const. §§338, 339; Church v. Kelsey, Pa. 7 S.Ct. 897, 898, 121 U.S. 282, 30 L.Ed. 960. ——— A constitution is but a higher form of statutory law, and it is entirely competent for the people, if they so desire, to incorporate into it self-executing enactments. Willis V. Mabon, 56 N.W. 1110, 1111, 48 Minn. 140, 16 L.R.A. 281, 31 Am St. Rep. 626. ——— That the rights to freedom of speech and press were coupled in a single guaranty with the right of the people peaceably to assemble and to petition for redress of grievances was not by accident or coincidence but all these, though not identical are inseparable, and are cognate rights. U.S.C.A. Const. Amend. 1. Thomas V. Collins, 65 S. Ct. 315. ——— Under Richmond Newspapers, Inc. V. Commonwealth of Virginia. 100 Supreme Court Reporter 2814 at page 2815, Notes 8, 9, and 14 read as follows: - Note-8. Constitutional Law: Expressly guaranteed freedoms of First Amendment share common core purpose of assuring freedom of communication on matters relating to functioning of government. - Note-9. Constitutional Law: The free speech carries with it some freedom to listen. - Note-14. Constitutional Law: Very purpose of First Amendment is to guarantee all facets of each right described. Notes 8, 9, and 14 are each concluded with: (Per Chief Justice Burger, two Justices concurring, and four Justices concurring in the judgment.) U.S.C.A. Const. Amend. 1.

Donald S. Drusky further invokes the following citations regarding the description of the Sovereign People of the United States: The words "sovereign people" are familiarly used to describe the political body, who, according to our republican institutions, form the sovereign, and who hold the power and conduct the government through their representatives. Every citizen is one of these people and a constituent member of the sovereignty. Scott V. Sanford, MO. 60 U.S. 393, 404, 19 How. 393, 404, 15 L.Ed. 691. ——— Who, or what, is sovereignty? In one sense, the term "sovereign" has for its correlative "subject." In this sense, the term can receive no application; for it has no object in the Constitution of the United States. Under that Constitution there are citizens but no subjects. The term "subject" occurs, indeed, once in the instrument; but to mark the contrast strongly the epithet "foreign" is prefixed. Chisholm V. State of Georgia, 2 U.S. 419, 455, 2 Dall. 419, 455, 1 L. Ed. 440.

The Factual Setting: In the past and present, the government of America is not being properly conducted by Congress and the Legislature of the Fifty States of the United States of America. This suit in the 88 U.S. District Courts presents a great future for America. They have failed their people and their country. They are arbitrarily not representing or redressing the grievances of the people of America. This means the people are subjects of the federal government and their respective state government. In order to gain the status of citizenship, the people are confronted with the responsibility to remove all elected members of Congress and their respective state legislature from office. At that point, the people will positively be the body politic. Over a quarter billion people will temporarily become the new Congress and their respective state legislature. Instead of a quarter billion people being reduced down by election to 535 members of Congress, it will be a Congress of a quarter billion members with the 88 U.S. District Courts as its Capitol. Likewise, the U.S. District Court(s) within each state will be the new Capitol of their respective legislature. In any event, the people can supersede their government in the 88 U.S. District Courts. As subjects, the people have an opportunity to truly become citizens during their case before the 88 U.S. District Courts. The Legal Setting of Section Six makes it clear that "sovereignty" is the right to govern. Even without removing elected officials from Congress or any state legislature, the people can independently enact legislation.

Wherefore, Petitioner Donald S. Drusky seeks from the sovereign people of the United States of America the following:

Constitutional and Legislative Solutions Sought:

The Problem: Congress and the Legislature of the 50 States of the United States of America do not legislatively redress meritorious grievances under Amendment One of the Constitution. The Solution: Enter an Amendment to the U.S. Constitution and all State Constitutions. The Amendment shall be as follows: This Amendment bars all other legislative process until the legislative redress of meritorious grievances occurs first.

The merits of each grievance shall be determined by a special permanent "Committee for the Redress of Grievances." The Committee shall be composed of individuals, with preferment given to priests with extremely high moral and religious standards, two elected from each state and one from the District of Columbia area. Amongst the 101 members, they shall elect their own President for each term. The term shall be for a four year period. The President shall have no vote unless the Committee be equally divided. The Committee shall have oversight by the presiding Pope in aid of the "Church's Obligation to Secure Redress of Grievances under Amendment One." The Church, in this instance, being deemed as a coordinate of the United States Government to satisfy Catholic Church doctrine and doctrine of any other religion. The Committee shall be formally sworn in by oath. Violators of the oath shall be subject to false oath and prosecuted in a Church Court under a canon law prohibiting false oath or perjury. Violators of the oath shall be removed. Freedom of Religion shall meet its Amendment One obligation toward redress through the Committee for Redress of Grievances. Minor grievances can outrightly be redressed by the Committee without any further Congressional process to ease the burden on major legislation pending in Congress. Major grievances can be submitted to Congress with or without the Committee's recommendation for redress. The Committee has the power to order a moratorium on all other legislative process, or schedule with Congress a prompt review of the grievance subject to redress. Accordingly, each state shall establish a Committee for the Redress of Grievances.

Note: The number 101 can be deleted entirely to save correction to 103, if another state is annexed to the United States. The District of Columbia area is permanently fixed with one member. even if it ever gains statehood. The Catholic Church may need to reinstate perjury canon law.

The Problem: The federal and state courts have been invaded by political and special interest pressures. They encroached upon the dignity of the Courts and its Officers, and infringed upon another's right. Congress or any State Legislature made no effort to insulate their courts or any prosecuting officer from ruthless political coercion.
The Solution: Enter an Amendment to the U.S. Constitution and all State Constitutions. The Amendment shall be as follows: This Amendment establishes a special permanent "Committee for Judicial Oversight." The Committee shall be composed of Law Professors, Lawyers or retired Judges. Two members shall be elected from each state and one from the District of Columbia area. The Committee shall elect its President for each term. The term shall be for a four year period. The President shall have no vote unless the Committee be equally divided. The Committee will insulate the Courts and its Officers from political and special interest pressures. The Committee shall have investigatory power to process meritorious complaints regarding obvious problems with any Court or Officer not properly administering law or justice over valid petitions submitted to their Court and criminal complaints. The parties responsible for coercing a Clerk of Court and/or Judge of a Court shall be criminally prosecuted by the Committee for Judicial Oversight. The U.S. Attorney General, State Attorney General, U.S. Attorney or local District Attorney are Officers of the Court. The parties responsible for coercing any prosecuting attorney to avoid criminal prosecution shall be criminally prosecuted by the Committee for Judicial Oversight. They shall face civil prosecution by the victim(s) suffering the injustice. If a Judge, Clerk of Court, or any Prosecuting Attorney does not report the incident to the Committee for Judicial Oversight, they shall be directly removed from office and criminally prosecuted by the Committee. They shall face civil prosecution by the victim(s) suffering the injustice. Any private attorney or lawyers involved anywhere in the sequence of events to obstruct justice shall face permanent disbarment and criminal prosecution by the Committee for Judicial Oversight. The shyster lawyer or law firm shall face civil prosecution by the victim(s) suffering the injustice. Any party tampering with the Committee for Judicial Oversight shall face criminal contempt prosecution by the Committee and face civil prosecution by the victim(s).

Note: The Amendment regarding the Committee for the Redress of Grievances could be Section One of the next Amendment. The Amendment regarding the Committee for Judicial Oversight could be Section Two of the Amendment, or each can be given a separate Amendment Number. In addition to the Amendment, the members of each Committee shall receive Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. There needs to be a special building constructed for the offices of the members of each Committee and a large assembly room to convene. The best money ever spent for America.

The Problem: Apart from removing members of Congress or any State Legislature from office, the people can supersede an incompetent Congress or any State Legislature. If there are any doubts about the sovereign people having the independent right to enact legislation, the people can remove that doubt by having the right to compact through the judicial system to legislate.
The Solution: Enter an Amendment to the U.S. Constitution and all State Constitutions. The Amendment shall be as follows: Congress or any State Legislature shall make no law prohibiting the free exercise of enacting necessary and proper legislation through the judicial system. The people reserve the right to remove from office members of Congress or any State Legislature through the judicial system.

The Problem: Congress and all State Legislatures do not have a Clean Hands Policy. Apart from the judicial system being invaded by political and special interest pressures, the Congress and any State Legislature have been even more easily invaded by political and special interest pressures. The most that members of Congress did for Donald S. Drusky is to provide reports on my behalf from the National Labor Relations Board. Some of the reports are on exhibit. None of all the reports were infallibly interpreted by the Courts, but were skipped over by the Courts as if they did not exist. However, they are real. Unfair labor practices committed by the former U.S. Steel Corporation (now USX Corp.) and the United Steelworkers of America are the object of the reports by the National Labor Relations Board. Once the company and union "secured" an obstruction of justice at the Judicial Branch of Government, they invaded the Legislative Branch of Goverment to hinder a redress and hinder the establishment of a "Special Court" to properly process civil and criminal complaints against the company and union. They have friends in Congress and can get to almost anybody. Juries in civil and criminal cases can't be tampered with, and neither can Congress or any State Legislature. In essence, Congress is a jury for redress. Once some members of Congress are tampered by the USX Corp. and United Steelworkers, they have tampered with the jury affecting a redress of grievance. A clear example of the situation in Congress and all State Legislatures is by using another extreme to perfectly describe the circumstances. Synonymously, it would be like the Holy Father, Pope John Paul II, inviting the Devil to be the "Guest of Honor" at the Vatican and have "Tea and Cookies" with the Pope. The Pope and Devil are rivals, and it is not the Devil's right to demand of the Pope exactly which Canon Law of the Church should be repealed or abolished, and what type of new Canon Law for the Church to enact. Thereafter, insist upon the Pope to not represent Donald S. Drusky. The lawmakers in Congress and any State Legislature are to be rivals of felons. Corrupt politicians seek favors in Congress and any State Legislature to the detriment of the innocent and powerless. Of course, the Pope would avoid the Devil. But, it is not a matter, of course, for Congress or any State Legislature to avoid the corrupt. Most importantly, there were times my case came up in Congress. The USX Corporation and the United Steelworkers of America had direct knowledge regarding Congress and my grievances. Each time my case came up in Congress, it was set aside without my knowledge of it. I gained knowledge of it on the streets. Moreover, on December 22, 1985, while crossing a street in East McKeesport, Pennsylvania, I was hit by a car and by ambulance was brought to McKeesport Hospital. I had a broken leg and a broken nose besides cuts and bruises. USX Corp. and United Steelworkers gained knowledge of my unfortunate accident, and used this opportunity to secretly and corruptly intervene into all phases of the car accident case to suit their satisfaction. Meanwhile, the car accident case provided the USX Corp. and the United Steelworkers of America with the opportunity to prey upon members of Congress. They made their way around Congress to prevent any "due legislative effort" by Congress to redress Donald S. Drusky's grievances. The accident stopped the constant rhythm of my picketing, and stopped the work to draft three new law suits. The accident ruined over 19 years of picketing for redress, and I lost my train of thought to properly draft the three law suits. From August 8, 1966 (date of illegal discharge from employment by the U.S. Steel Corporation while picketing the United Steelworkers of America for \$2500 that the union owed me, which I will donate to Children's Hospital) till December 1985, I maintained steady picketing in Pittsburgh. It did seem soon that I may gain a redress through legislation by the 20 year point of discharge, or 20 year period of picketing, or by date of August 8, 1986. Originally, I had it planned to start work to draft the three court petitions at about 8 o'clock in the evening of Dec. 22, 1985. The documents were to be submitted simultaneously to the U.S. District Court for the District of Columbia, the U.S. Court of Appeals for the District of Columbia Circuit, and the United States Supreme Court. I was hit by a car at 5:30 in the late afternoon of December 22, 1985.

I hoped to mail the three petitions by February 1, 1986. The car accident ruined the triple court petition and immediately stopped my picketing to expose Congress towards redress. I was keenly aware that I had to improve upon the "original valid petitions for the three courts to process, or I may spend another 20 years of picketing in Pittsburgh for a legislative redress by Congress. It was best then to submit each petition as it was completed. Eventually, a petition dated June 28, 1986 was submitted to the U.S. Supreme Court. A petition dated March 31, 1987 was received by the U.S. Court of Appeals for the District of Columbia Circuit. A petition dated August 14, 1987 was submitted to the U.S. District Court for the District of Columbia. I am under a medical disability and progress is slow. Copies of the reduced in size August 14, 1987 petition on exhibit were served upon all 100 U.S. Senators and almost all 435 U.S. Representatives to no avail, and it became the subject and object of this petition in the 88 U.S. District Courts of the Fifty States. This further demonstrates the need for a Committee for the Redress of Grievances, and a Committee for Judicial Oversight, and the right of the people to compact in the courts to legislate over an incompetent Congress, and a "Clean Hands Policy."

The Solution: Enter an Amendment to the Constitution of the United States and all State Constitutions adapting a "Cleans Hands Policy." The Amendment shall be as follows: Congress and all State Legislatures shall adapt a "Clean Hands Policy." They shall not entertain the unlawfulness of the guilty against the right of the innocent. "Favoritism" and "Partiality," the tendency to show special kindness to some while neglecting others who have equal claims, are abolished in Congress and all the State Legislatures. Known felons are barred from the premises of Congress or any State Legislature, either in person, by phone or by mail. Convicts in prison may write or call by phone their representatives in Congress or their Legislature, if they need to do so over problems within the prison, or for entrapment, false imprisonment, or being framed, or wrongfully convicted.

The Conclusion: These proposed Amendments shall guarantee the common defense of the legally disabled and disenfranchised, that are victims of great injustice under extremely severe burden. Wherefore, the sovereign people of the United States of America, in Order to form a more perfect Union, strengthen the Country, improve the Administration of Justice, insure a Redress of Grievances and promote the general Welfare must ordain and establish these Amendments to the Constitution of the United States and all State Constitutions.

The Problem: On Exhibit 'BB' attached to this petition is a reduced in size copy of a valid unfair labor practice charge against the United States Senate and House of Representatives dated March 3, 1972. Viewed on Exhibit 'B' is a copy of a three page report dated May 29, 1969 from former U.S. Senator Harold B. Hughes. Near the bottom of page 3, regarding charge 6-CB-1669-8, it points out that former Union president David McDonald had caused 25,000 workers to be illegally discharged during his term of office. Legislation pertaining to the charge against Congress would balance the National Labor Relations Act, which would reduce unrest and industrial strife. Congress carelessly failed to enact necessary and proper labor legislation for America and its work force. The work force is the number one asset of America.
The Solution: Balance the National Labor Relations Act as outlined in the charge of March 3, 1972.
The Problem: The National Labor Relations Act is remedial not criminal.
The Solution: Incorporate into the National Labor Relations Act a provision to make it criminal for an employer, or for a union to cause an employer to illegally discharge a person from employment. All parties participating in the illegal discharge shall face a 5 year prison penalty. The legislation should be derived from Pennsylvania Penal Code 18 P.S. § 4669 - Coercion of employes, which carried a one year prison penalty, but was repealed absolutely with other acts on December 6, 1972. It was replaced with a new law effective June 6, 1973 - 18 Pa. C.S.A. § 2906 - Criminal coercion - with the penalty increased from 1 to 5 years. The corrective legislation to make the National Labor Relations Act criminal should be patterned after the combined 18 §§ 4669 + 2906. Coercing an official of the National Labor Relations Board to withhold action over an illegal discharge must also carry a 5 year prison penalty. A new U.S. Criminal Coercion Law similar to 18 Pa. C.S.A. § 2906 must be enacted to protect all departments, any U.S. Attorney, or U.S. Attorney General and the Courts from criminal coercion by powerful political establishments. The people must disestablish and permanently dismantle the United Steelworkers of America for disenfranchising and breaking the 25,000 workers illegally discharged. The AFL-CIO compounded the discharges and must also be dismantled. Permanently occupy and quarantine the U.S. X Corp. from everyday politics.

Section Seven – The Case of Donald S. Drusky, Plaintiff, v. God, Defendant.
The Legal Setting: This is a claim for a divine redress and special favors arising under the First Amendment to the Constitution of the United States of America, all as more fully set forth in The Factual Setting. The 88 U.S. District Courts have jurisdiction by reason of U.S.C.A. 28, Section 1331. The complaint regarding Defendant God centers on a broken Oath to God under Article VI of the Constitution to support the Constitution. The executive, legislative and judicial officers of both the United States and the 50 States of America wilfully broke their Oath to God to support the Constitution. One cannot support the Constitution when one does not redress grievances under Amendment One of the Constitution. Article VI is invoked and reads in pertinent part as follows: "The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." The Legal Setting includes the Abridged Text of the Ten Commandments in Exodus 20:1-17 (R.S.V.), at IX. You shall not bear false witness against your neighbor (VS. 16), and the Abridged Text of the Ten Commandments in Deuteronomy 5:6-21 (R.S.V.), at VIII. Neither shall you bear false witness against your neighbor (VS. 20).
The Factual Setting: The Oath of Office (violated by all officers cited within the petition on exhibit dated August 14, 1987) was compounded by all government officials under solemn declaration that were served process in that case. The first six sections of this petition before the 88 U.S. District Courts provide the legal and factual background in support of the valid claim against Defendant God. A copy of the reduced in size August 14, 1987 petition and exhibits were sent to Pope John Paul II to keep the Holy Father informed of my problems with the U.S. Government. According to Catholic Doctrine, the Church is not a subordinate of the United States Government, but is a coordinate of the U.S. Government. The Catholic Church is guaranteed and enjoying "freedom of religion" under Amendment One. Therefore, the Catholic Church must guarantee and secure a redress of grievances under Amendment One. The Catholic Church did not honor their responsibility and failed to secure a redress of Donald S. Drusky's grievances and all others similarly situated. Donald S. Drusky is a victim of the crime of perjury, which is also a crime against the Church. The Catholic Church discontinued the Canon of Perjury since it became common law. Perjury is condemned by all forms of government. The Catholic Church as a coordinate of the U.S. Government, and as a member of the association of rights under Amendment One, hypocritically and arbitrarily, made no effort to rectify the crime of perjury or secure the redress of grievances. This has ruined the life of Donald S. Drusky
Claim for Divine Redress and Special Favors: Plaintiff Donald S. Drusky respectfully asks Defendant God to grant a Divine Redress and Special Favors. I firmly believe, I am worthy of a Divine Redress and Special Favors I ask of Thee at this time. Wherefore, Plaintiff prays: That Princess Diana and the other two victims of the car accident in France be returned to life or resurrected. I am asking Thee for resurrection or restore to life Amelia Airhart, Nicole Brown and Ronald Goldman, JonBenet Ramsey, Anne Frank (died at a Nazi extermination camp at Belsen in 1945 at age 15) and her mother and father, Karla Faye Tucker executed by law in Texas on February 3, 1998, and Emperor Nicholas II, Empress Alexandra, their five children and four servants that were executed in Russia on July 17, 1918. The return to life entrance shall be at Market Square, Pittsburgh, Pennsylvania. I am also asking Thee to cure Pope John Paul's Parkinson's Disease and restore the Holy Father to good health. Included for resurrection are all the members of Anne Frank's family and friends (8) that lived in mortal fear of being discovered, and were betrayed and arrested, while hiding in Amsterdam, Netherlands.

Application for Appointment of Counsel: Petitioner Donald S. Drusky and the Sovereign People of America are applying to each of the 88 U.S. District Courts for "Appointment of Counsel" to represent this case before the 88 U.S. District Courts.
Motion for Leave to Proceed on Public Funds: Public funds belong to the Sovereign People and the people move that this money must be made available for use to pay court fees and costs, counsel.
Motion for Leave to Proceed in Forma Pauperis: Petitioner Donald S. Drusky moves for leave to proceed in forma pauperis under U.S.C.A. 28 § 1915, and in support thereof attaches the affidavit by Donald S. Drusky. On the reverse side of affidavit is a copy of a letter dated Aug. 24, 1987 from the Office of the Clerk of the U.S. District Court for the District of Columbia over petition exhibited.

Respectfully submitted,
Donald S. Drusky, Petitioner Pro Se

In the U.S. District Court for the District of Columbia

Donald S. Drusky, Plaintiff,

v

Office of the President of the United States of America, and the United States of America, and President Ronald Reagan, and God, Defendants.

Civil Action No.

To the Honorable, the Judges of the above said Court:

Motion for Leave to Proceed in Forma Pauperis

Plaintiff Donald S. Drusky moves for leave to proceed in forma pauperis under Title 28 § 1915 for the following reasons:

I have been unemployed and disabled since August 8, 1966 discharge by U.S. Steel. Attached as Exhibit "1 is a copy of the August 16, 1976 "Decision of Appeals Council" of the Social Security Administration, which shows I was disabled as of August 8, 1966. I have been on disability benefits since September 1976. I presently receive $541 per month in Social Security Disability Benefits and $10 per month in food stamps. I have $47.77 in the Union National Bank. The last sentence in my 1-15-85 petition to President Reagan, Vice President Bush, 100 U.S. Senators, 435 members of the U.S. House of Representatives, the Governors of the 50 States of the United States of America, ABC News, CBS News, NBC News, United Press, Associated Press, His Holiness Pope John Paul II, and others reads as follows: "I am again applying for public funds to pursue redress of grievances." The request was ignored. Attached as Exhibit "2 is a copy of the 1-15-85 petition with a front to back attached exhibit. I can only provide the Court with copies of the 2 Exhibits in support of motion to proceed in forma pauperis. I have no savings bonds and do not own an automobile, house or other valuable property but only own ordinary household furnishings and clothing. Because of my poverty, I am unable to pay court fees and costs.

Therefore, Donald S. Drusky moves for leave to proceed in forma pauperis be granted.

Civil Complaint Against the Office of the President of the United States of America, and the United States of America for False Arrest and False Imprisonment in Violation of Amendment Four, and for Failure to Redress Grievances in Violation of Amendment One of the Constitution of the United States of America

I, Donald S. Drusky, respectfully submit the following:

The United States of America through its elected officials are obligated to redress grievances and should not arrest innocent citizens seeking redress of meritorious grievances. At least on 3 or more occasions, I picketed President Johnson at the White House in Washington, D.C. On May 8, 1967, I picketed the President over my employment problems. On June 27, 1967, I picketed the President over my grievances against the National Labor Relations Board. On July 18, 1967, I was on my knees at the White House front gate begging for help with a placard in letter form that read as follows: "Dear Mr. President: I need help. It is an emergency. Please believe me. Please give me a chance. Please have mercy. Please help me. Please? Please have mercy. Please? ——— Very truly yours, Donald S. Drusky" A cardboard picture of Uncle Sam and the American Flag were also mounted on the placard. On this occasion, even though I was blocking an entrance to the White House, I was falsely arrested and falsely imprisoned in violation of Amendment IV of the Constitution, which resulted in no redress of grievances and a violation by the Office of the President of my right of Redress under Amendment One of the Constitution. Attached as Exhibit "3 is a copy of a sheet that reveals pictures of picket signs I used at White House at dates I picketed the White House. The Court will be provided with a copy of the exhibit. Viewed on the attached Exhibit 'A' is a copy of page 4 from an eight page statement that was included with the three page report (seven exhibit side marked as Exhibit 'B') dated March 17, 1969, which Senator Edward Kennedy received on my behalf from the National Labor Relations Board. On the bottom paragraph of page 4, it erroneously shows I was arrested on May 8, 1967 with placard over employment. Actually, I was arrested only once at the White House and it was on July 18 not May 8. The false arrest and imprisonment compounded the disability of Donald S. Drusky, who is suffering a disabling injustice.

The reason for my appearance at the White House was to press the President to assist in redressing my grievances, since he previously failed to take action. The reason for the arrest was to not redress a meritorious grievance. On my next occasion picketing at United Steelworkers of America headquarters in Pittsburgh, my arrest was a big joke to them as they were laughing about it. In any event, the next day I was transferred from the Precinct Jail to a Court. Outside the courtroom, the prosecuting attorney told me that I am free to go because there was too much principle behind my action. At the Precinct Jail, no charge was filed by the arresting officers. No prosecution by the prosecuting attorney and no charge filed by arresting officers amounts to a prima facie case of false arrest and false imprisonment brought on by the Office of the President and Government of the United States of America for not redressing grievances. (One is liable for false arrest made by another if he directed, advised, countenanced, encouraged, or instigated arrest. — Rohrbaugh v Campbell, 377 F2d 237) The Park Police under color of authority arrested me at the White House front gate. At the Precinct Jail, my detention was without any legal authority. It was an arbitrary, callous and malicious arrest and detention in violation of Amendment IV. Any person who causes an unlawful arrest and detention, and all persons participating in an unlawful arrest and detention are liable.

The people of America and the innocent picketers of America are totally unaware that they are not going to beat the White House with cardboard placards. The Government of the United States of America first causes aggrieved people trouble by not redressing real grievances, and then compound the problem by callously putting them through a lot of trouble to no avail in their pursuit of redress and justice. The Office of the President at the White House has been knocking off picketers for redress like they were flies. While seeking redress, I was forced by the difficult circumstances (that I was aware I would be confronted with at the White House) to not only kneel and block the White House front gate with picket signs, but also with a 7 feet tall wooden cross made from 2" x 4" lumber. I needed and was entitled to the relief and blessing of redress and justice but, instead, I faced an ugly arrest and tremendous disgrace and humiliation over false arrest and detention in jail. A large crowd gathered on the White House sidewalk and across the street as it took time for Park Police to get there to make the arrest. The overall experience amounted to a long, horrible nightmare. The White House had complete disregard for my grievances and the 7 feet tall wooden cross. To preserve its record of not redressing grievances. The wooden cross gave me company that the White House wickedly defied. The matter was cruelly suppressed by the news media. The cross at my side at the White House served as a reminder to President Lyndon Johnson of his oath of office as President of the United States. The people did not elect the President or any member of Congress to disregard grievances subject to redress under Amendment One of the Constitution. The Office of the President is bound by the Constitution and his oath of office to redress grievances and has failed to do so. My arrest should never have been made in the first place and my grievance against the National Labor Relations Board should have been immediately redressed. The false arrest and failure to redress grievances severely defamed and ruined the life of Donald S. Drusky.

Civil Complaint Against President Ronald Reagan and the United States of America for Violation of Amendment One of the U.S. Constitution and Action to Compel President Ronald Reagan to Perform a Duty Owed to Donald S. Drusky

The United States of America through its elected officials must redress grievances under Amendment One of the Constitution and arbitrarily failed to redress grievances. Attached as Exhibit "4 is a copy of a petition dated February 22, 1983 to the Governors of the 50 States, the 50 Senators of the Senate of Pennsylvania, President Ronald Reagan, Vice President George Bush and to Pope John Paul II. Attached also are the 2 exhibits to the petition. One exhibit is a copy of a petition dated November 9, 1982 to President Ronald Reagan, Vice President George Bush, the 100 U.S. Senators and Pope John Paul II. The other exhibit is a copy of a letter from former California Governor Ronald Reagan's Assistant Cabinet Secretary (Kenneth F. Hall) over my problem with the National Labor Relations Board. The last paragraph of the letter reads as follows: "The Governor regrets that he cannot be of assistance to you in this particular instance. As you are aware, the matter is under the jurisdiction of the federal government, and state officials have no authority in connection with it." The date on the letter is July 16, 1968. The letter points out that my case with the National Labor Relations Board is under the jurisdiction of the federal government and means that many years later President Ronald Reagan has failed to perform his duty of granting a redress of my grievances against the National Labor Relations Board. Both the February 22, 1983 and the November 9, 1982 petitions make it very clear that all the Federal Courts did not grant the relief Donald S. Drusky was entitled to receive. President Reagan and all the governmental recipients of both petitions failed to do their duty and provide a redress of my grievances under Amendment One of the Constitution. The complaint is that President Ronald Reagan arbitrarily failed to grant a redress or work with Congress to obtain a constitutional redress of my grievances against the National Labor Relations Board and all the Federal Courts, which would not judicially redress the grievances. The legislation required to remedy the problem has been arbitrarily denied. Donald S. Drusky has exhausted all available means of relief and invokes Title 28 § 1361 - Action to compel an officer of the United States to perform his duty. This section gives the District Courts original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to Donald S. Drusky. Title 28 § 1391 (e) provides the U.S. District Court for the District of Columbia with the venue to process the complaint against President Ronald Reagan. President Reagan, Vice President Bush and all members of Congress owed Donald S. Drusky the performance of a legal duty so plainly prescribed as to be free from doubt. The petitions at Exhibit "2 and Exhibit "4 makes it quite obvious that President Reagan (Vice President Bush and Congress) owes Donald S. Drusky a legislative redress of meritorious grievances

The people of America elected Defendant President Ronald Reagan (Vice President George Bush and Congress) by voting them the power to govern the country and to represent and redress grievances. When federal officers "exceed" their power and violate Amendment One of the Constitution, mandamus action must be maintained against them for a legislative redress of grievances. Regarding 28 U.S.C. § 1391 (e), the starting point for determining the legislative purpose is an appreciation of "mischief" which Congress was seeking to alleviate. Besides paper petitions via the mail, I have picketed in Pittsburgh since August 10, 1965. On August 8, 1966, I was illegally fired by U.S. Steel, while I was picketing the United Steelworkers of America for $250 that the union owed me, which I will donate to Children's Hospital. For a long period of years and time up to December 20, 1985, I picketed with various placards (petitions) seeking redress of grievances of major magnitude. On December 22, 1985, I was hit by a car while crossing a street a few blocks from where I live. I received a broken leg and a broken nose and was a mess. I went through three nose operations and need a fourth operation on my nose. Due to circumstances arising from the accident, I temporarily discontinued my picketing. The automobile accident ruined my chances to prepare three lawsuits by January or February of 1986 for the U.S. District Court, U.S. Court of Appeals and U.S. Supreme Court in Washington. I was disabled before being hit by a car, which greatly compounded my disability. This made it difficult for me to complete my legal work faster. I will again begin and maintain my picketing in Pittsburgh after completion of this lawsuit. However, I did appear in Pittsburgh on December 22, 1986 for just one day of picketing. On this occasion, I used two placards that I carried a great many times in the past, while picketing in Pittsburgh. One of the placards reads as follows: "Those rascals in Congress have been "Putting on the Ritz" spending the taxpayer's money while they ignore the Constitution and omit the legislative redress of grievances and the responsible state governments of America did not initiate remedial action." President Ronald Reagan cannot redress the grievances by himself and needs the cooperation of Congress to provide a legislative redress of grievances.

Motion to Join the U.S. Senate and U.S. House of Representatives and Vice President George Bush as Defendants

Plaintiff Donald S. Drusky moves to join the U.S. Senate, U.S. House of Representatives and Vice President George Bush as defendants as provided by Rule 19 (a) (1) and Rule 20 of the Federal Rules of Civil Procedure. Rule 19 is the Joinder of Persons Needed for Just Adjudication. Under Rule 19 (a) (1), a party shall be joined in the action if in his absence complete relief cannot be accorded among those already parties. Under Rule 20, it reads in pertinent part as follows: "All persons may be joined in one action if any question of law or fact common to all defendants will arise in the action."

The President, Vice President and every member of Congress are jointly responsible and must be joined together to provide a redress, which they have previously failed to achieve for all citizens of America. To this point, I have attached Exhibits "1", "2", "3", "4" and Exhibit 'A' - 'B' for the Court. Exhibit 'A' - 'B' will also be provided to all 100 U.S. Senators and all 435 U.S. Representatives and Vice President George Bush. Viewed on Exhibit 'A' is a copy of a 4 page petition (reduced in size) dated June 28, 1986 to the U.S. Supreme Court against the 50 States of the United States of America seeking redress of grievances on my behalf and on behalf of all citizens of America. Without the bottom paragraph of page one of the petition, it reads in part as follows: "The

Plaintiff Donald S. Drusky is entitled to a redress of grievances under Amendment One of the U.S. Constitution. The right of the people to petition for redress of grievances is "among the most precious of liberties safeguarded by the Bill of Rights." Article 1, Section 8, Clause 18 of the Constitution gives Congress authority to make the "necessary and proper" legislation to create a remedy to redress my grievances and to establish a special court (well insulated from politics and with Congressional oversight) to properly process civil and criminal complaints against the USX Corp. and the United Steelworkers of America. This petition formally informs the Court and Defendant President Reagan and proposed Defendants Vice President Bush and all members of Congress of its obligations to provide a redress.

The people of America have the right to be participants in government other than just paying taxes and actually voting Congress the power to not redress grievances. The people of America have the right to full participation in the process of government. President Abraham Lincoln's November 19, 1863 Address at Gettysburg ended with the following quotation: "That this nation, under God, shall have a new birth of freedom; and that government of the people, by the people, for the people, shall not perish from the earth." That poor soul (Mr. Lincoln) did not have time to perfect the government of America. The Defendants in this case would also be doing Abraham Lincoln a great favor by forming a more perfect government for America that would meet God's satisfaction. There will be no real government of the people, by the people, for the people, until a special "United States Committee for the Redress of Grievances" is established either through legislation or by constitutional amendment. The Defendants in this case are obligated to devise means for an election of two people from each state of America and one from the District of Columbia to serve on the "United States Committee for the Redress of Grievances." One member would serve as President of the United States Committee for the Redress of Grievances. The committee shall be solidly and permanently insulated from political interference and control by public officials and selfish, ruthless, corrupt political gangs all over America. The committee shall have a perfect and strong code of ethics, and shall have the responsibility and power to initiate formal criminal proceedings against those who have wrongfully acquired corrupt political favors from any branch of government, including the President, Vice President, members of Congress, or any department, agency or court. When Defendant President Reagan and proposed Defendants Vice President Bush and Congress exceed their power by arbitrarily not redressing grievances in violation of the Constitution, mandamus must be maintained jointly against all the Defendants.

Wherefore, the motion to join the U.S. Senate and the U.S. House of Representatives and Vice President George Bush as Defendants must be granted.

Civil Complaint Against Ronald Reagan, George Bush and All Individuals of Congress (Except the New Members of the 100th Congress) for Violation of Amendment One of the Constitution of the United States of America

Background information on the overall problem that Donald S. Drusky's ... resenting to the FCC can be seen in the attached Exhibits 'A' - 'B' and 'AA' - 'BB' to this suit, but the case ... ding ABC, CBS, NBC centers on a letter viewed on Exhibit 'B' dated November 21, 1980, that was sent to President Ronald Reagan and various other public officials and organizations, which included ABC, CBS and NBC. Copies of Exhibits 'A' - 'B' and 'AA' - 'BB' are attached for the FCC and ABC, CBS and NBC. The letter pointed out that on November 10, 1980, I began picketing in Pittsburgh with a new placard (cited as Placard #5 in the letter) along with 3 other placards I used while picketing in Pittsburgh. The new placard read as follows: "ABC News, CBS News, NBC News, Associated Press and United Press: Congress does not redress grievances and we are not going to publicize grievances to put the heat on Congress to redress grievances." The placard reflects upon the attitude of ABC, CBS and NBC. I picketed with this placard for a long period of time in Pittsburgh. It was eventually supplemented with other placards, and then alternately reused on other occasions, while picketing in Pittsburgh. Other petitions were received by ABC, CBS, and NBC before and after the November 21, 1980 document viewed on Exhibit 'B'. Amendment One of the Constitution provides the right to petition for redress of grievances. My petitions for redress in letter form and placard form are subject to redress. The purpose of the news media, in the first place, is to inform the public of misconduct by elected public officials. Instead, the news media is covering up for elected public officials that do not redress grievances. The public has the right to remove public officials, that callously do not redress grievances. Since President Ronald Reagan, Vice President George Bush, and Congress do not wish to run the country with the redress of grievances, they are not worthy of running the country without the redress of grievances, and are subject to removal from office by the people of America, and they shall not receive a government pension. As a consequence of ABC, CBS and NBC not informing the public of the misconduct of public officials, the people of America will be continually voting against themselves by electing public officials that do not specifically promise to redress their grievances. The public has the right to remove public officials not able to respond to their obligations of redressing grievances. Participants ABC News, CBS News and NBC News maliciously performed a libel and defamation of Donald S. Drusky by concealing the truth about the picketing of Donald S. Drusky in Pittsburgh. It was the intention of ABC, CBS and NBC to unfairly prevent the truth about my picketing from coming to the attention and observation of all the people of America. The continuing libel and defamation of Donald S. Drusky over the years by ABC, CBS and NBC has affected proper elections, hindered redress of grievances, obstructed justice, compounded unfair labor practices, and has ruined the life of Donald S. Drusky. ABC, CBS and NBC were unfair to Donald S. Drusky and the people have the right to know the truth. Under U.S.C. 47 § 307 (d), any license granted may be revoked. Basically, the public interest, convenience, and necessity have not been served. Instead, ABC, CBS and NBC have served the interests of the corrupt U.S. Steel Corporation and United Steelworkers of America by making it a convenient advantage to them at the expense of Donald S. Drusky. Justice must prevail not corruption and injustice. Under U.S.C.A. 47 § 312, the Commission may revoke any station license for willful or repeated failure to operate substantially. Donald S. Drusky does not have a copy of their license, but believes ABC, CBS and NBC must be fair and tell the truth, and the people have the right to know the truth. President Reagan, Vice President Bush and Congress do not redress grievances, or contemplate redressing grievances. Specifically, since ABC, CBS, and NBC have not informed the public of the misconduct of public officials not redressing grievances, then ABC, CBS and NBC are not worthy of a license to broadcast. Therefore, the Federal Communications Commission has a clear and indisputable duty to revoke the licenses of the American Broadcasting Company, Columbia Broadcasting System, and National Broadcasting Company. Under U.S.C.A. 28 § 1361, this Court has original jurisdiction to issue mandamus compelling the FCC to revoke the licenses of ABC, CBS, and NBC for their continuing libel and defamation of Donald S. Drusky, and working against the public's right in violation of Amendment One. Basically, ABC, CBS and NBC are separating themselves from the responsibility of overseeing the redress of grievances. Viewed on Exhibit 'B' is a legal citation (United Mine Workers v. Illinois State Bar Association) regarding Amendment One. The citation points out that free speech, free press, peaceful assembly, and to petition for redress of grievances are inseparable. ABC, CBS, and NBC violated Amendment One and their responsibility to the people of America. The right of the viewers and listeners of the general public are paramount (as well as the right and character of Donald) and supercede those of the broadcasters. In this particular case, licensees ABC, CBS, and NBC have no right, but a major obligation to Donald and the people of America. Donald S. Drusky is initiating the complaint to the FCC in this court for immediate settlement, because it is a matter of national importance. Licensees ABC, CBS, and NBC must have their licenses revoked.

Therefore, the motion to join the Federal Communications Commission as a defendant must be granted.

---

Motion to Join the American Broadcasting Company, Columbia Broadcasting System, National Broadcasting Company, Associated Press and United Press International as Defendants. Plaintiff Donald S. Drusky moves to join ABC, CBS, NBC, AP and UPI as defendants as provided by Rule 19(a)(1) and Rule 20 of the Rules of Civil Procedure. Civil Action against ABC, CBS, NBC, AP and UPI for Malicious Unprinted Continuing Libel and Defamation of Donald S. Drusky and Violation of Donald S. Drusky's Right to Redress of Grievances Under Amendment One of the Constitution

Background details and information are incorporated here by reference from the above matter regarding the Federal Communications Commission. The complaint against ABC, CBS, NBC, AP and UPI is for their malicious and continuing unprinted libel and defamation of Donald S. Drusky and hindering the right to redress grievances. ABC, CBS, and NBC are an electronic news force, and the AP and UPI are the press. They all enjoy freedom of the press, and are undermining Donald's freedom of speech by suppressing factual grievances subject to redress by Congress. The legal citation — United Mine Workers v. Illinois State Bar Association — as viewed on Exhibit 'B' prevails because Amendment One contains an association of rights not to be separated. Their perverseness of freedom of the press subjected Donald S. Drusky to prolonged abuse by the people of Pittsburgh, rather than giving the people of America an opportunity to know and respond to the truth, which has prevented the people from peacefully assembling to "gang up" on Congress for a redress of grievances. Donald S. Drusky was picketing in an endeavor to bring this case to the people of America for their attention and consideration. ABC News, CBS News, NBC News, Associated Press and United Press maliciously denied Donald S. Drusky fair and proper access to the people of America. During November 21, 1980 petition (viewed on Exhibit 'B') to ABC News, CBS News, NBC News, Associated Press, United Press and others, the last sentence read as follows: "I am asking ABC News, CBS News, NBC News, Associated Press and United Press to bring the details of the case to the people of America." The request was callously ignored and denied. The legal citation viewed on Exhibit 'B' is an association of rights constructed to work with each other not against each other. The news media maliciously worked against Donald (rather than fairly working with Donald) and successfully subjected Donald S. Drusky to disgrace and great defamation and vast injustice and severe disablement.

ABC News, CBS News, NBC News, Associated Press and United Press ingeniously performed a malicious continuing unwritten libel (equivalent to a printed newspaper libel) and defamation by constantly disallowing the picketing of Donald S. Drusky. Their continuing unpublished libel of Donald amounts to a published libel a day for a long period of years, with each daily libel being compounded by the next day's libel and so on, which has ruined the life of Donald S. Drusky. Plaintiff demands a jury trial and invokes the original jurisdiction of this Court under U.S.C.A. 28 § 1332 - Diversity of Citizenship, and U.S.C.A. 28 § 1331 over a civil action arising under the Constitution and laws of the United States.

Therefore, the motion to join ABC, CBS, NBC, AP and UPI as defendants must be granted.

---

Motion: Plaintiff moves to join the National Labor Relations Board and U.S. Attorney General Edwin Meese as Defendants under Rule 19(a)(1) and Rule 20 of the Federal Rules of Civil Procedure. Exhibits 'BB' and 'B' provide a view of 3 page reports which U.S. Senator Edward Kennedy and former U.S. Senator Harold Hughes received respectively on my behalf from the NLRB. The ingeniously twisted reports confirm the factual unfair labor practices (as well as many torts and felonies committed) by U.S. Steel, United Steelworkers and others, for which the NLRB unlawfully withheld remedial action. Participants are the USX Corp. and United Steelworkers. Viewed on Exhibit 'BB' is a charge dated 11-13-71 against Presidents Johnson and Nixon, Vice Presidents Humphrey and Agnew, and Congress. Also viewed on 'BB' is a charge dated 3-3-72 against the United States Senate and House of Representatives. Participants are all members of the 100th Congress. Both valid charges were not docketed or processed, and the Board order needed for the review can be seen on Exhibit 'B' within letters dated April, 1971 and June 3, 1969 by Regional Director Henry Shore. Congress affected commerce by not enacting corrective legislation providing an Amendment One redress and/or establishing a special court to remedy the NLRB's unfair labor practice of protecting U.S. Steel and the Steelworkers who committed many unfair labor practices affecting commerce. The failure of Congress to balance the Act as outlined in charge dated March 3, 1972 affected commerce, and made it easy for unions to violate the Act. Under U.S.C.A. 28 § 1337, this District Court has original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce. Meanwhile down through the years, the U.S. Dept. of Justice or U.S. Attorney General would not prosecute U.S. Steel and the United Steelworkers for the crimes of perjury, obstruction of justice, fixing charges at NLRB, and many other crimes made obvious by NLRB reports to Edward Kennedy and Harold Hughes. In Civil Action 68-124 at the U.S. District Court for the Western District of Pennsylvania, U.S. Steel and the United Steelworkers conspired to commit perjury to obtain summary judgment against Donald S. Drusky, and the NLRB's motion to dismiss complaint was granted. The crime deserves summary punishment. Plaintiff's charges at the Board were impeded by U.S. Steel and the United Steelworkers for repeated violations of Title 29, Section 162. Congress made no effort to pursue the violat[ion] and the basis of this petition is that U.S. Attorney General Edwin Meese will not (but must) do his duty and immediately prosecute U.S. Steel (now USX Corp.) and the United Steelworkers for their crimes. It is libel and gre[at] defamation of Donald's character, and a great disgrace for Donald to picket in Pittsburgh for almost 20 years serv[ing] the prison sentence of and by U.S. Steel and the United Steelworkers. Title 5 United States Code, Sections 702, 70[3] and 706 provide the Right of Review, Venue and Scope of Review, respectively. This District Court has jurisdiction un[der] U.S.C.A. 28 § 1361 and venue under U.S.C.A. 28 § 1391(e) to compel both the NLRB to take remedial action against USX Corp. and United Steelworkers, and U.S. Attorney General Edwin Meese to immediately initiate criminal proceedings against USX Corp. and United Steelworkers. Therefore, the motion to join the NLRB and U.S. Attorney General must be granted.

---

The Complaint Regarding Defendant God

Plaintiff Donald S. Drusky respectfully submits the following:

Part One — The complaint regarding Defendant God arises over the fact that Donald S. Drusky has been suffering a prolonged disabling injustice, and has dedicated 20 years of his precious youth in pursuit of justice and a redress of grievances for himself and all other citizens of America. Donald S. Drusky is innocent but the Governors, Lieutenant Governors and legislature of the 50 States and the President, Vice President and Congress would not provide a redress and callously permitted innocent Donald S. Drusky to spend more than 20 years serving the prison time of the guilty U.S. Steel Corp. and United Steelworkers of America, by picketing on the streets of Pittsburgh in an effort to bring U.S. Steel and the United Steelworkers to justice. Viewed on the attached Exhibit 'A' is a 4 page copy (reduced in size) of a valid complaint to the Supreme Court of the United States against the Fifty States of the United States of America, which was not docketed and processed by the Supreme Court. In the complaint to the Supreme Court, Donald S. Drusky filed a motion to join the National Labor Relations Board as a respondent. Two unfair labor practice charges were on view as exhibits in the complaint. The pertinent charge dated September 27, 1971 was collectively against the Governors, Lieutenant Governors, Attorneys Generals and Legislators of the Fifty States of the United States of America. Viewed on the attached Exhibit 'BB' are copies of two valid unfair labor practice charges. The pertinent charge dated November 13, 1971 is against Presidents Johnson and Nixon, Vice Presidents Humphrey and Agnew, and Congress. (A copy of the September 27, 1971 charge is attached as Exhibit #5 for the Court only.) The valid charges dated November 13, 1971 and September 27, 1971 comprise wrongs by elected public officials of the United States of America and the Fifty States of America. The Executives and Legislatures of the 50 States, and Executives and Congress of the United States violated the Constitution by not redressing grievances.

On March 31, 1987, a professionally printed "Petition for Review" dated March 31, 1987 was sent to the U.S. Court of Appeals for the District of Columbia. Exhibits #6 (Charge dated July 28, 1971), #7 (Charge dated August 30, 1971), #8 (Charge dated September 7, 1971) and #9 (Charge dated September 14, 1971) attached to the "Petition for Review" are attached to this petition as Exhibits #6, #7, #8 and #9 for the Court only. These exhibits are valid charges involving all the Federal Courts, State Courts, all the State Bar Associations, and many pre-eminent lawyers and law firms all over America. In any event, the valid "Petition for Review" is against the judicial officers of both the United States of America and the Fifty States of America and many lawyers who are officers of the Courts. They violated the Constitution by not judicially redressing grievances or failed to pursue redress of grievances. One cannot possibly support the Constitution when one does not redress a grievance under the Constitution. The valid petitions for the U.S. Supreme Court, U.S. Court of Appeals for the District of Columbia Circuit and U.S. District Court for the District of Columbia, collectively amount to a complete violation of Article VI of the Constitution by the U.S. Senators and U.S. Representatives, and the members of the 50 State Legislatures, and all executive and judicial officers of both the United States and the 50 States of America. The complaint regarding Defendant God centers on a broken Oath to God (under Article VI of the Constitution) to support the Constitution.

The executive, legislative and judicial officers of both the United States and the 50 States of America willfully broke their Oath to God or originally made a false Oath to God to support the Constitution. One cannot support the Constitution when one does not redress grievances under the Constitution. Article VI of the Constitution reads in pertinent part as follows: "The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." Defendant God is responsible for the damage and ruination of Donald S. Drusky. All parties making an Oath to Defendant God under Article VI broke their Oath of Office. They also broke the Pledge of Allegiance. The Pledge of Allegiance is as follows: "I pledge allegiance to the Flag of the United States of America and to the Republic for which it stands, one Nation under God, indivisible, with liberty and justice for all." (Public Law 287, 79th Congress, approved December 28, 1945, as amended June 14, 1954). — Donald S. Drusky was not blessed with justice and U.S. Steel and the United Steelworkers were not brought to justice. Article VI and the Pledge of Allegiance makes it perfectly clear that Defendant God is the highest official in the United States of America. The United States of America is a nation with an unwritten government that reflects upon Defendant God who is obligated to rectify all wrongdoing to Donald S. Drusky and undo all the damage that has ruined the life of Donald S. Drusky.

Part Two. — Part One of the complaint regarding Defendant God was Nation and Government related. Part Two of the complaint regarding Defendant God is Church related. The Church related complaint regarding Defendant God goes back to Donald S. Drusky's February 10, 1970 law suit in the U.S. District Court for the Western District of Pennsylvania against the American Bar Association and Henry Shore, Director of Region 6 of the National Labor Relations Board. Both Defendants filed improper motions to dismiss and / or motions for summary judgment. On May 13, 1970, U.S. District Judge Gerald Weber improperly granted the motions of both Defendants to dismiss the complaint. However, the National Labor Relations Board attached Exhibit "A" to their motion to dismiss. Exhibit "A" will be attached to this complaint as Exhibit #10 for the Court only. Exhibit "A" was a U.S. Government Memorandum dated March 31, 1970, attaching a four page list of charges submitted by Donald S. Drusky against various parties. Page 2 of the list shows that July 15, 1969 and July 17, 1969 charges were submitted against the National Labor Relations Board. Page 3 of the list shows that a September 15, 1969 charge was submitted against John Wright, Cardinal, Bishop of Pittsburgh. In general, the Catholic Church in the Pittsburgh area would not help me, but was working against me, and helping the corrupt U.S. Steel Corporation and United Steelworkers of America. The charge submitted against John Wright and all other charged parties were valid, and were subject to process by the Court. The charges were not acted upon and suppressed by Judge Weber's order of May 13, 1970 to dismiss the complaint. The Catholic Church in the Pittsburgh area committed an unfair labor practice, which was in violation of the National Labor Relations Act. Using the Ten Commandments format, it would read as follows: "Thou shalt not commit an unfair labor practice." John Wright and others of the Catholic Church in Pittsburgh did commit an unfair labor practice of major magnitude against Donald S. Drusky. The Catholic Church of Pittsburgh area is Defendant God's Church. Defendant God is obligated to rectify all wrongs and damage done to Donald S. Drusky by His Church.

In a 3 page petition including exhibits dated June 13, 1975 to the members of the Pennsylvania Senate Judiciary Committee and to the National Association of State Catholic Conferences, National Conference of Catholic Bishops and the United States Catholic Conference, petitioner Donald S. Drusky [illegible]

for U.S. Steel's and United Steelworkers' perjury and ruin the life of Donald S. Drusky. — (Pope John Paul II arbitrarily kept my case closed by not opening up the case by initiating the excommunication of Catholic officials from all levels of the U.S. Government). The mission of the Church to pursue justice combines with "Freedom of Religion" and its obligation under Amendment One (in association with other Amendment One rights) to pursue the redress of grievances. Exhibits #6, #7, #8 and #9 make it obvious that no law firm in America would provide counsel and no Court in America would appoint legal counsel for Donald S. Drusky. Attached as Exhibit #13 is a copy of the "Oath of Admission" for lawyers. Exhibit #13 and previously entered Exhibit #12 are for the Court only. Under the Oath, the lawyer must support the Constitution of the United States. The last sentence of the Oath reads as follows: "I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any man's cause for lucre or malice. So Help Me God." The Oath was broken because Donald S. Drusky was not blessed with honest legal counsel. It is with "Democracy as God" and with "Lawyers as Priests" for this reason, Pope Paul VI and Pope John Paul II and the Vatican and the Catholic Church were obligated to secure honest legal counsel for Donald S. Drusky but failed to do so.

The truth of my case was libelously suppressed by America's news media. However, on Christmas Day of 1974, someone (who sounded like a priest I heard on Church service over the radio on Sunday) came on the radio and spoke of lunacy as he brought up the sandwich board man (that's me Donald Drusky) picketing in Pittsburgh with fantastic claims. Just afterwards, Bishop Leonard of Pittsburgh came on the radio to talk but did not mention me. However, Donald S. Drusky is not a lunatic and this despicable smear ruined Donald and was in violation of the 9th Commandment of Defendant God, and in violation of "Libel and Slander" law. Defendant God is the sovereign ruler of the universe and took no corrective action against the leaders and officials of His Church and Nation for their extremely serious wrongs, which ruined the life of Donald S. Drusky. As a consequence, Defendant God lost his sovereignty and He is before this Court to provide a sovereign remedy and a divine redress. Defendant God does not defy law and order. Rule 55 of the Federal Rules of Civil Procedure provides that if You do not make Your appearance in this Court, You lose by default and must meet the favors set forth in the claim of relief. I firmly believe I am worthy of the favors I ask of Thee at this time.

Wherefore, Plaintiff prays: That 21 years of precious youth and health be restored to Donald S. Drusky. The return from Heaven or resurrection of my mother Anna Drusky to enable her son to buy a great mother a new house. The return to life of my friend "Hobo the Pigeon" adding a halo around Hobo's head. There are certain great things that could have been that will never be again, and it is Your problem to make it happen. As a special award and favor, I am asking Thee for the return from Heaven or the resurrection of Christa McAuliffe, Francis Scobee, Michael Smith, Ellison Onizuka, Ronald McNair, Judith Resnik and Gregory Jarvis. Send Abraham Lincoln as Your Ambassador from Heaven to help make a better America and world. Grant Donald S. Drusky the guitar playing skills of famous guitarists. Permit a cure for cancer to be soon found. Passenger pigeons are extinct. I ask of Thee for the re-creation of 12 male and 12 female passenger pigeons. Replace arms cut off 15 year old girl by rapist Singleton. Replace the 2 stone tablets containing the Ten Commandments regretfully destroyed by Moses.

Claim of Relief regarding Defendants President Reagan, Vice President Bush, U.S. Senate and U.S. House of Representatives: That a decree be entered perpetually enjoining Defendants to redress grievances of Plaintiff and all citizens of America. Defendants [illegible]

In the Supreme Court of the United States of America

October Term, 1985

Donald S. Brusky, Plaintiff

v.

The Fifty States of the United States of America, Defendants

## Motion for Leave to Proceed in Forma Pauperis

Plaintiff Donald S. Brusky moves the Supreme Court for leave to proceed in forma pauperis in Title 28, United States Code, Section 1915, and Rule 46 of the Rules of this Court for the following reasons: I have on Social Security Disability Benefits since 1976, and presently receive a "monthly disability check for" $537.00 and $10.00 "a month in federal food stamps. I have been unemployed and disabled since August 4, 1966. I have $12.12 in the Union National Bank in East McKeesport, Pennsylvania. I have no other savings or bonds, and do not own an automobile, house or other valuable property, but only own ordinary household furnishings and clothing. In a petition dated February 12, 1984, to the Governors of the 50 States of the United States of America, the 50 Senators of the Senate of Pennsylvania, President Ronald Reagan and Vice President George Bush, I opened the petition with an application "for" public funds" to pursue the legislative redress of all grievances by Congress. The application for public funds was ignored. Because of my poverty, I am unable to pay the costs of this proceeding, and I believe I am entitled to redress.

Wherefore, the motion for leave to proceed in forma pauperis must be granted.

## Motion for Leave to File Complaint

As a resident of the State of Pennsylvania, Plaintiff Donald S. Brusky asks the U.S. Supreme for leave to file civil complaint respectfully submitted herein against the Fifty States of the United States of America.

## Complaint

Plaintiff Donald S. Brusky brings this suit against Defendants Fifty States of the United States of America, and my cause of action is that the 50 state governments and the federal government do not redress grievances of all its citizens in violation of Amendment I and XIV of the U.S. Constitution. Also, the 50 states do not help its respective citizens or aggrieved citizens of another state obtain a redress from the United States of America. Plaintiff Donald S. Brusky's grievances were not redressed by the federal government, and the 50 state governments would absolutely not help secure redress of my grievances from the United States of America.

I

I bring this suit on my behalf and on behalf of all the citizens of the United States of America. ——

II

The original jurisdiction of this court is invoked under Article III of the Constitution of the United States of America and Title 28 United States Code, Section 1251.

III

Defendants Fifty States of America are the guardians and protectors of each of their respective citizens and all other citizens of America. All 50 Defendant States are securely bound by Amendment One of the Constitution to guarantee redress of grievances. The Fourteenth Amendment of the U.S. Constitution has made applicable to the states the guarantees of the First Amendment. In order for an aggrieved citizen to obtain a redress, the aggrieved citizen must first petition the government for redress of grievances. My original grievances are against the National Labor Relations Board, and the U.S. Supreme Court, eleven U.S. Circuit Courts of Appeals and 89 U.S. District Courts of Appeals, which the President, Vice President and Congress would not provide a legislative redress and resulted in a complete grievance against the Executive Branch, Legislative Branch and Judicial Branch of the Government of America. I have petitioned for redress, but have not received a proper redress. Through my own experience of 20 years, I have learned that grievances in general are not being redressed. Defendants were negligent and did not meet the vital responsibility or common care due to the citizens of America.

IV

Over the years, I also petitioned officials of the 50 state governments about my problems with the entire Federal Government not redressing my grievances. In essence, I sought the intercession of the 50 State Governments against the Federal Government. The basis of this complaint centers on the 50 State Governments not taking proper action on any of my petitions in the past or over my petition prior to this complaint in this Court. A copy of my last petition dated July 20, 1985 is attached as an exhibit. It is "reduced in size" not to violate Supreme Court Rule 33(c), but only done to reduce cost of printing and postage. I condensed an original 3 page legal sized petition onto a single letter sized front page with the back of page containing the exhibits to the petition. However, the Supreme Court will also receive a full sized copy of this petition. The Governors, as of July 20, 1985, have received the original sized copies in the first place. I was unable to get this complaint on 2 pages for a front and back page copy, so it will be reduced onto the front and back of a single page for service on the defendants or any other party. Of course, the Supreme Court will receive this original handwritten complaint. The July 20, 1985 petition was directed to the Disciplinary Board of the Supreme Court of Pennsylvania, President Ronald Reagan, Vice President George Bush, the Governors of the 50 States, the 100 U.S. Senators, 35 members of the U.S. House Judiciary Committee, the 50 members of the Senate of Pennsylvania and various other parties, including Pope John Paul II.

V

The Disciplinary Board of the Supreme Court of Pennsylvania did not honor my complaint, which was an extremely valid and meritorious complaint. The 50 Governors of America and the 50 Pennsylvania State Senators and all other recipients of the 7-20-85 petition did not honor the petition. All the problems and grievances subject to redress that are outlined in the petition are incorporated herein by reference. The crux of this civil action centers on the last paragraph on page 2 of the petition. It reads as follows:

Petition to President Reagan, Vice President Bush, Members of Congress, Governors of the 50 States and the Pennsylvania officials for a special amendment to the U.S. Constitution to bar any further legislative process until the legislative redress of grievances has taken place first. The right to petition the Government for redress of grievances is not supported and carried out to conclusion by any specific Congressional or State Legislative Committee. And, in essence, voided the right to petition for redress. To solve and correct the problem, I am asking the President, Vice President and Congress to establish a specific Joint Congressional Committee for the Redress of Grievances. I am asking the officials of the 50 State governments and their respective Legislatures to establish a specific Committee for the Redress of Grievances. The Governors of the 50 States are confronted with the responsibility of guaranteeing a Joint Congressional Committee for the Redress of Grievances and an appropriate amendment to the U.S. Constitution. Presently, the Federal and 50 State Governments do not have a Committee for the Redress of Grievances to work with the People's Right to Petition for Redress. This makes it very clear that the Federal and State Governments do not redress grievances because they do not possess a Committee for the Redress of Grievances. A major and vital right like the People's Right to Petition for Redress is incomplete without the supplement of a specific Committee for the Redress of Grievances.

VI

One exhibit in support of the July 20, 1985 petition was a copy of a petition dated July 2, 1971 to the State Superior Court, the Commonwealth Court and the Common Pleas Courts of The Fifty Nine Judicial Districts of Pennsylvania Except Allegheny County Judicial District Five. Seen below this petition is a petition dated June 2, 1971 to the Supreme Court (or highest court) of each of the fifty states of the United States of America and the Supreme Court of Puerto Rico and the District of Columbia Court of Appeals. Seen as an exhibit below the June 2, 1971 petition, is an unfair labor practice charge dated May 18, 1971 against (collectively) the 50 State Bar Associations and the Justices and Judges of the Federal Judiciary. At this point, I am adding, as a full sized exhibit, a copy of another unfair labor practice charge dated September 27, 1971 against the Governor, Lieutenant Governor, Attorney General and Legislature of the 50 States of America. In support of the NLRB charge, you will find on the reverse side of the exhibit, a copy of a "Petition for Redress" dated March 25, 1972 to the President and 50 Governors of America. The petition is headed with another petition dated April 22, 1972 to various federal and state officials of the 50 States of the United States. No redress was granted.

VII

## Motion to Join the National Labor Relations Board as a Respondent

Plaintiff Donald S. Brusky moves to join the National Labor Relations Board as a Respondent as provided by Rule 19(a)(1) and Rule 20 of the Federal Rules of Civil Procedure. Rule 19 is the Joinder of Persons Needed for Just Adjudication. Under Rule 19(a)(1), a party shall be joined in the action if in his absence complete relief cannot be accorded among those already parties. Under Rule 20, it reads in pertinent part as follows: "All persons may be joined in one action if any question of law or fact common to all defendants will arise in the action.

Under Title 5 United States Code, Section 702, I have the "Right of Review" of decisions by the National Labor Relations Board.

I am suffering a legal wrong because the National Labor Relations Board is unlawfully withholding remedial action against parties cited in the unfair labor practice charges on exhibit. Legal wrong for the purposes of Title 5 § 702, means an invasion of a legally protected right. Title 5 § 706 provides a "Scope of Review". Title 5 § 703 is the Form and Venue of proceeding as the Supreme Court is a court of competent jurisdiction. I invoke the jurisdiction of the Supreme Court under Title 5 United States Code, Section 703. The National Labor Relations Board is an indispensable party to gain complete relief from Defendants 50 States of America. The Board Order needed for this remedy can be seen in "headquarters form" in paragraph c of the May 18, 1971 charge on exhibit. In general, the Defendants 50 States by their respective Governor and Attorney General cannot rebut the complaint in this Court, when they could not rebut the unfair labor practice charge dated September 27, 1971.

Wherefore, the motion to join the National Labor Relations Board as a Respondent must be granted.

VIII

To the best of Plaintiff's knowledge and belief, the Defendants 50 States will obviously continue the wrongful acts of not redressing grievances. The conduct of the Defendants 50 States must be abated to relieve citizens of great suffering and health problems associated with not being blessed with justice and a redress of grievances. All 50 State Governments and the Federal Government are unholy governments. Innocent people are being subjected needlessly to irreparable damage. Plaintiff Donald S. Brusky has been subjected to irreparable injury as the Defendants 50 States under color of state law denied me the equal protection of the laws in violation of Amendment One and Fourteen of the Constitution. In general, the Defendants obstructed justice when they failed to take proper and remedial action over my petitions for redress. Title 42 United States Code, Section 1983 - Civil Action for Deprivation of Rights makes the Defendants liable to the Plaintiff in an action at law, suit in equity, or other proper proceeding for redress.

IX

A determination must be made in this cause to the extent that the redress of grievances in America will finally begin, and bring to a peculiar end, the suffering and irreparable injury to innocent people. Moreover, the 50 State Governments and the Federal Government are, in effect, pursuing political corruption over a proper redress of grievances. It is the responsibility of this Court to provide the Defendants with proper orders to stabilize America and bring to an end, political corruption associated with grievances not being redressed.

Wherefore, Plaintiff prays:

1. That a decree be entered adjudging the conduct of the Defendant Fifty States of America to be in violation of Amendment One and Fourteen of the Constitution of the United States of America.

2. That a decree be entered perpetually enjoining the Defendants from this day on to the end of the world to properly and promptly redress or secure the redress of all grievances of all citizens of America.

3. That a decree be entered adjudging the people's right to petition government for redress of grievances under Amendment One to be incomplete without the supplement of a specific Joint Congressional Committee for the Redress of Grievances and State Legislative Committees for the Redress of Grievances.

4. That a decree be entered advising the Defendants it is their responsibility to sponsor and ratify an amendment, in conjunction with the Amendment One right to petition the government for redress of grievances, which would bar Congress and all the States from proceeding on other legislation until the legislative redress of grievances are completed first. Redress of grievances will take priority over all other legislation except national emergency legislation.

5. That a decree be entered adjudging Plaintiff the recovery from the 50 State Defendants damages in an amount not yet determined but to be determined in this Cause compensating the Plaintiff for damage over a prolonged period of time. Moreover, Plaintiff will not accept money damages for the 20 years of youth and health of coal Plaintiff, because the 50 states are confronted with the obligation and problem of restoring 20 years of youth and health, that it has arbitrarily and callously taken away from the Plaintiff. Money will not satisfy the Plaintiff.

6. That a decree be entered ordering the Defendants to try and restore the 20 years of youth and health to Plaintiff.

7. That a decree be entered ordering the Defendants to share (apart from Federal Government share) all the yet to be determined costs of petitions by the Plaintiff to all levels of the Federal and 50 State Governments for the past 20 years. Plaintiff must also be awarded for expenses for around 100 various picket placards and traveling expenses to picket in Pittsburgh and other places for a redress of grievances. The expense from a pauper's pocket for 20 years to pursue justice and redress of grievances ruined the life of Plaintiff Donald S. Brusky.

8. That a decree be entered ordering Respondent National Labor Relations Board to use the Board's standards for rectifying and remedying valid charges brought before it by the Plaintiff with due consideration for the prolonged suffering and infliction the Board brought upon the Plaintiff.

9. That a decree be entered enjoining the Defendants to take appropriate action to promptly redress or secure the redress of all of Plaintiff's grievances outlined in the July 20, 1985 petition on exhibit and, of course, all other documents on exhibit, as well as, all other documents that Plaintiff could not afford to put on exhibit. Regarding the March 21, 1985 petition to Governor Thornburgh and others seen on exhibit, that a decree be entered ordering Pa. State Officials Governor Thornburgh, Lieut. Governor Scranton, Senator Frank Pecora and Representative Joseph Markosek to provide the Plaintiff with the name and address and phone number of the 17 year old unwed mother that I wished to sponsor. Not outlined in complaint to maintain normal sequence of circumstances of this suit, but set forth in Statement and Brief in Support of Motion, is a grievance on behalf of America's pigeons against the State of Iowa but all other States of America. Iowa is killing pigeons, which have earned a place in the American Society for their valiant service in America's wars. That a decree be entered against the State of Iowa adjudging that the killing of pigeons is wrong and must be abated and to provide medical care and build Pigeon Hospitals for the medical treatment of pigeons and for the decree to be entered against all the other states to forbid killing of pigeons and to build and maintain Pigeon Hospitals for the medical care of pigeons, and for all 50 States of America to fine and imprison all persons who kill or injure pigeons, and to ban any state law or local ordinance forbidding the feeding of pigeons, and for children in grade school to be given classes on the care of pigeons. This shall be also an award by the citizens of the 50 States of America of the Defendants 50 State Governments to the Plaintiff for obtaining the redress of their grievances.

10. That Plaintiff be awarded any further relief as this Court may deem proper and necessary, and for the Supreme Court to redress the valid complaint that the Disciplinary Board of the Supreme Court of Pennsylvania did not process. Finally, the Plaintiff is asking the Supreme Court to award Plaintiff compensation from all Defendants for not granting Plaintiff "public funds" to pursue redress of grievances.

## Statement and Brief in Support of Motion for Leave to File Complaint

### Jurisdiction

This is an action by Plaintiff Donald S. Brusky against Defendants Fifty States of the United States of America. This action is proposed to be instituted in this Court under the authority of Article III of Constitution of the United States and Title 28 U.S.C., Section 1251. This action by the Plaintiff against the Defendants is also on behalf of all citizens of the United States of America. This Court must assume jurisdiction over a matter of major national importance.

Purpose of the Proposed Action – Grievances are not being redressed in America by the Federal and 50 State Governments. Where there is no redress of grievances, there is no "Justice for All". Complaint prays Defendants be permanently enjoined to redress grievances.

Direct Precedents Involving Original Jurisdiction of This Court – I know of no direct precedents involving the original jurisdiction of this Court for the overall matters presented in this action.

Need for the "Aid of this Court" – I need the aid of this Court because the seriousness of this problem is denying the Plaintiff and all the aggrieved citizens of America the redress of grievances guaranteed by the First Amendment of the Constitution. The need for an immediate and effective start towards solution justifies the original action in this Court. By exercising this original jurisdiction at the request of Plaintiff Donald S. Brusky, this Court can give direction and immediacy to the nationwide need for the redress of grievances.

At this point, I am filing a grievance on behalf of America's pigeons to be redressed by the Defendants and, particularly, the State of Iowa. In February of this year, an Iowa Senate Committee passed a bill for open hunting season on pigeons as they were considered pests. Pigeons were not pests when they served the United States of America in its various wars. Pigeons served in the U.S. Army in World War I and World War II and did a very fine job and service for America. Pigeons helped to save the lives of many American soldiers during both World Wars. The most famous pigeon in the world was "Cher Ami". In World War I, "Cher Ami" was shot down by a German sharpshooter, and was brought back to America alive. Pigeons saved American lives, and we as Americans must save the lives of pigeons because pigeons have earned a place in the American Society.

### Conclusion

For the reasons stated, the motion for leave to file the complaint should be granted.

### Certificate of Service

On the 28th day of June 1986, I served a copy of this complaint by first class mail to the Governors and Attorney Generals of the 50 States of America, and to the Solicitor General and to the National Labor Relations Board.

Dated June 28, 1986

Respectfully submitted,
Donald S. Brusky



NATIONAL LABOR RELATIONS BOARD

OFFICE OF THE GENERAL COUNSEL

Washington, D.C. 20570

JUN 2 1969

May 29, 1969

Re: Steelworkers, et al.
(Edgar Thomson Works, United States Steel Corporation)
Case No. 6-CB-1669-8

Honorable Harold E. Hughes
United States Senate
Washington, D. C.

Dear Senator Hughes:

As Board Chairman Frank McCulloch advised you by letter of April 17, he has referred to me your inquiry concerning correspondence you received from Mr. Donald S. Drusky of Braddock, Pennsylvania.

Drusky's dispute with the Steelworkers, giving rise to the numerous unfair labor practice charges which he has filed with the National Labor Relations Board, relates back to his employment with United States Steel's Edgar Thomson Works plant in 1963. While on layoff status during that year he attempted to obtain a job at another Company plant located in Clairton, Pennsylvania. His rejection because of a physical defect led to his unsuccessful effort to have Steelworkers, Local 1219, and then the Clairton Local, 1557, process a grievance concerning the Company's action. In protest of the failure of these Locals to act in his behalf Drusky began picketing the Steelworkers' International headquarters in Pittsburgh on his days off. He offered to donate to the Children's Hospital $2500 which he claimed was due him in lost wages if the Steelworkers would admit its financial responsibility to its members. In July 1966 he began full-time picketing of the offices of the Company and Union and, after several warnings, was suspended on August 2, 1966, for having been absent from work for a 27-day period. Following his suspension, Local 1219 urged him to return to work in order to improve his chances of filing a successful grievance. Drusky refused to return, and his suspension was converted to a discharge on August 8. Thereafter, Drusky rejected Local 1219's offer to file and process a grievance concerning his suspension and discharge, contending that his grievance was with the Union, and he continued his picketing of both the Company and the Union.

Re: Case No. 6-CB-1669-8

On January 23, 1967, Drusky filed the first of his charges (Case Nos. 6-CA-3821 and 6-CB-1326), alleging that the Company had discriminatorily discharged him on August 8, 1966, in violation of the National Labor Relations Act, and that such discharge had been caused by the Union. The Regional Director refused to issue a complaint, and Drusky appealed to this Office. After careful consideration I decided to sustain the Regional Director's determination, concluding that in view of all the circumstances, including the Union's forbearance in the face of Drusky's repeated picketing of its headquarters since 1965 and Local 1219's offer to represent him for the purpose of filing a grievance concerning his 1966 suspension and discharge, insufficient basis existed for a finding that the Union had caused his discharge. A further contention, that the Union had failed to process a grievance on his behalf in 1963, was deemed barred by the limitations proviso to Section 10(b) of the Act which precludes the issuance of a complaint based on conduct occurring more than six months prior to the filing of a charge. With respect to Drusky's claim that the Company had suspended and discharged him because of his union activity, considering the record in its entirety, including the Company's tolerance of his picketing on his days off and the absence of any independent evidence of violations of the Act on the Company's part, I concluded that the burden could not be met of establishing that Drusky's suspension and discharge were for any reason other than his unprotected absence from work over a 27-day period without permission and despite repeated warnings.

On August 14, 1967, following denial of his appeal in the above cases, Drusky filed four charges (Case Nos. 6-CB-1411-1,2,3,4), alleging that since his discharge on August 8, 1966, the Union had blacklisted him from further employment and that President Johnson, Pennsylvania Governor Shafer, State Secretary of Labor Hart, and the State Bureau of Employment Security had assisted the Union in this respect. These charges were dismissed and the appeal therefrom denied. It was concluded that there was an absence of evidence that the Union had interfered with his efforts to obtain employment and that the charges against the other named parties were completely groundless.

On April 3, 1968, Drusky filed a charge (Case No. 6-CA-4207) alleging that the Company had discriminatorily denied his March 4, 1968, request for reemployment. Following investigation, this charge was dismissed for insufficient evidence, and such dismissal was sustained on appeal.

Re: Case No. 6-CB-1669-8

On October 1, 1968, Drusky filed a charge (Case No. 6-CB-1583) alleging that the Union had failed properly to represent him following his discharge in 1966 and that it had failed, after Drusky complained of such treatment, to publish in its newspaper an account of his claim against it. This charge was also dismissed after investigation, and I denied the appeal on the grounds that the Union's failure or refusal to publish in its newspaper an account of Drusky's claim against it satisfactory to him could not be deemed to constitute a violation of any provision of the Act, and that the allegation that the Union two years earlier had failed properly to represent him was barred by the six-month limitations proviso to Section 10(b).

Most recently Drusky filed 91 charges (Case Nos. 6-CB-1601-1-2, 6-CB-1603-1 to -69, 6-CA-4551-1 to -4, and 6-CB-1669,-2 to -16) in ten separate sets between November 5, 1968, and April 7, 1969, alleging in substance that various Local, District and International Union officials had improperly refused or failed to process his original grievance of 1963, that they thereafter conspired among themselves and with individuals from several private and public organizations to preclude Drusky's reinstatement by the Company and to obstruct his efforts to obtain redress from the Union either for its failure to process his grievance in 1963 or for causing his discharge in 1966 and preventing his reinstatement thereafter, and that they and other officials had failed to represent other members of the Union fairly and had caused many of them to be fired. The Regional Director dismissed all these charges, and I have denied the appeals on the grounds that the charges either alleged causes of action not within the purview of the Act, were barred by the aforesaid limitations proviso, named as respondents individuals who were neither employers, labor organizations nor agents thereof within the meaning of the Act, or were patently lacking in factual merit. With regard to the charge in Case No. 6-CB-1669-8 specifically, apart from the absence of any evidence to support the sweeping allegation that former Union president David McDonald had caused 25,000 workers to be illegally discharged during his term of office, further proceedings were barred by Section 10(b) of the Act, since McDonald left office in 1965.

I trust this reply fully answers your inquiry. If I can be of further service in this matter, please let me know. The correspondence sent with your inquiry is returned.

Sincerely yours,

Arnold Ordman
General Counsel

NATIONAL LABOR RELATIONS BOARD

REGION 6

1536 Federal Building, 1000 Liberty Avenue

Pittsburgh, Pennsylvania 15222

Telephone 644-2977

June 3, 1969

Mr. Donald S. Drusky
800 Talbot Avenue
Braddock, Pennsylvania 15104

Dear Mr. Drusky:

Between January 23, 1967 and April 7, 1969 you have filed 116 unfair labor practice charges with this office. As you know, each of these charges has been repeatedly dismissed by me and my decision in each has been sustained upon appeal to the General Counsel in Washington. Nevertheless, you have continued to file unfounded charges which essentially reiterate the same subject matter and which are either barred by the statute of limitations in Section 10(b) of the Labor Management Relations Act; or fail to state a cause of action; or name as respondents individuals who are neither employers, labor organizations, nor agents thereof; or which are patently lacking in factual merit.

Recently, on May 5, 1969 you filed an additional 19 unfair labor practice charges which, after careful consideration, were dismissed by me. As in the past, and in accordance with our procedures, you have been notified of your right to appeal my decision to the General Counsel. These 19 recent charges, together with the 116 charges discussed above, make a total of 135 charges filed by you since January 23, 1967. The processing of these charges, including their receipt, acknowledgment, docketing, and filing has consumed a substantial amount of clerical manpower, time and effort. Furthermore, the investigation, review and consideration of these charges have resulted in the expenditure of an excessive amount of professional time, including my own, in determining the appropriate disposition of each charge. Finally, it should be pointed out that the professional and clerical time expended by the Regional Office staff has been duplicated by the General Counsel's Office of Appeals in Washington which has considered all of your appeals and has prepared lengthy and detailed reports when responding to numerous inquiries made on your behalf.

Mr. Donald S. Drusky 2. June 3, 1969

In view of the foregoing, including the expense to the Government and the interference with the orderly processing of its normal workload, it is my conclusion that your continued filing of baseless charges relating to the same subject matter previously determined to be without merit, constitutes an abuse of the Board's processes and an undue harassment of respondents who must be served with copies of your charges and may be required to respond to them. Accordingly, you are hereby advised that I will no longer docket or process an unfair labor practice charge filed by you unless the charge on its face is timely and presents at least a prima facie case and I am satisfied that the filing of such a charge does not constitute a further abuse of the processes of this Agency.

Very truly yours,

Henry Shore
Regional Director

Certified Mail
Return Receipt Requested

NATIONAL LABOR RELATIONS BOARD

REGION 6

1536 Federal Building, 1000 Liberty Avenue

Pittsburgh, Pennsylvania 15222

Telephone (412) 644-2977

April 1, 1971

1. Construction

Constitutional rights to assemble peaceably and to petition for redress of grievances are intimately connected both in origin and in purpose with other rights of free speech and free press under this amendment, and all these rights, though not identical, are inseparable. United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n, Ill.1967, 88 S.Ct. 353, 389 U.S. 217, 19 L.Ed.2d 426.

To President Jimmy Carter, Vice President Walter Mondale, Republican National Committee, Democratic National Committee, Pennsylvania Governor Richard Thornburgh, Pennsylvania Lieut. Governor William W. Scranton III and Pope John Paul II and to ABC News, CBS News, NBC News, Associated Press and United Press:

My petitions seeking redress and a special "Holy Court" during the months of July, August, September and October to President Carter, Vice President Mondale, Governor Thornburgh, Lieut. Governor Scranton, the Republican and Democratic National Committees and Pope John Paul II have been ignored. The petitions contained many exhibited documents, which outlined great criminal acts and corruption by U.S. Steel and the United Steelworkers and others. My petitions also outlined various picket signs I used while picketing in Pittsburgh. I first began picketing the United Steelworkers headquarters in Pittsburgh on August 10, 1965. On August 8, 1966, I was fired by U.S. Steel while I was picketing the headquarters of the United Steelworkers of America for $2500 that the union owes me which I will donate to Children's Hospital. Down through the years of picketing, I have had a great many different picket signs that I used while picketing. Beginning on July 7, 1980, I picketed with the 4 placards listed below:

Placard #1 - U.S. Steel and the Steelworkers conspired with the Justices of the U.S. Supreme Court, eleven U.S. Circuit Courts of Appeals and 93 District Courts of the United States and its Territories in order to obstruct justice and swindle me out of a multimillion dollar compensatory and punitive damage award and to prevent imprisonment for their crimes.

Placard #2 - U.S. Steel and the Steelworkers failed to trick me into picketing the Democratic or Republican Conventions of 1972 to get a "snow job". In exchange, they would have provided the lucky Democrats or Republicans with money for their election campaign.

Placard #3 - Carter, Mondale & Congress: We have a mandatory duty to redress that picketer's grievances.

America's People: We are still the boss in this country and you must respect our wish to promptly redress his grievances.

Placard #4 - Carter, Mondale & Congress: How long have the United Steelworkers been playing politics and fixing cases in America's Courts?

U.S. Supreme Court: About 40 years

Placard #4 was supplanted with a new sign on November 10, 1980. The new sign is now designated as Placard #5 cited below.

Placard #5 - ABC News, CBS News, NBC News, Associated Press and United Press: Congress does not redress any grievances and we are not going to publicize grievances to put the heat on Congress to redress grievances.

As it now stands, U.S. Steel and United Steelworkers control and dictatorily govern all federal and state courts, agencies and departments while the federal and state governments redress no grievances from the corrupt actions and politics of U.S. Steel and the United Steelworkers. The matter is further compounded because America's news media is not meeting the responsibility of good journalism.

The purpose of the news media, in the first place, was to inform the public of the misconduct of public officials. But, instead, the news media is covering up for the government as the nonrepresentation of grievances is of the greatest magnitude of general misconduct by all public officials in America as a whole.

The Declaration of Independence on July 4, 1776 and the Revolutionary War resulted over the fact that King George III in England would not redress the colonists' grievances. In other words, petitions to King George III for redress of grievances were to no avail. Similarly, my petitions to all the "King Shots" in Washington were also to no avail. However, my Amendment One right of the U.S. Constitution guarantees my right to petition the government for redress of grievances, which must be promptly and properly acted upon by Federal Officials in Washington, D.C. Neither prompt or proper action was taken by the Government in Washington. Instead of the Government acting democratically, the Government has been acting hypocritically. It should be obvious that U.S. Steel and the United Steelworkers know that the Government does not redress grievances so they arbitrarily do as they wish and fix everything relentlessly.

I am innocent and suffering a disabling injustice and my horrible experiences would be an ingenious torture for Hitler of World War II to go through, yet, the world's "best government" is leaving me hang like a dog as I have picketed in Pittsburgh for justice since the illegal discharge of August 8, 1966, by U.S. Steel.

My original case against the Steelworkers' union involved over the fact the union was not properly representing the grievances of the union members which I sought to correct by offering the $2500 redress I was entitled to from the union to Children's Hospital. While seeking to have the grievances of the members of the Steelworkers union properly represented, it came to my attention that the grievances of the people of the United States of America are also not being properly represented and redressed. It has been quite obvious all along that my grievance being properly redressed has a great bearing on the proper redress of the grievances of every citizen of the United States. In general, I want the union members grievance to be properly represented and redressed and I also want the government to properly represent and redress the grievances of any aggrieved citizen in America.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD S. DRUSKY,

Plaintiff,

v.

THE JUDGES OF THE SUPREME COURT, ELEVEN U.S. CIRCUIT COURTS OF APPEALS and EIGHTY-NINE U.S. DISTRICT COURT EMBRACING THE FIFTY STATES OF THE UNITED STATES OF AMERICA, and DISTRICT OF COLUMBIA, and THE UNITED STATES STEEL CORPORATION, and I. W. ABEL, JOSEPH MOLONY and WALTER BURKE OF THE UNITED STEEL-WORKERS OF AMERICA, and THE NATIONAL LABOR RELATIONS BOARD,

Defendants.

Civil Action
No. 71 249

OPINION

Plaintiff has submitted to the Court in forma pauperis a Complaint charging defendants with conspiracy to deprive him of rights under the Constitution and laws of the United States. Invoked are the Civil Rights Statutes, 42 U.S.C.A. §§1981, 1983, 1985(2) and 1985(3). It is alleged that plaintiff was fired by defendant United States Steel Corporation for picketing in protest of the failure of the United Steelworkers of America to pay a sum of twenty-five hundred dollars to plaintiff, that the defendant National Labor Relations Board has erroneously refused to docket plaintiff's charge arising out of these circumstances, and that the various Judges of the Federal Courts have erroneously denied plaintiff's subsequent petitions concerning the same factual allegations. The basic factual allegations are not unknown to this Court, for plaintiff has previously and unsuccessfully sought relief at Civil Actions 68-124 and 70-160, based upon substantially similar allegations. The instant Complaint designates, in essence, the same defendants previously sued with the exception that plaintiff has now added as defendants virtually the entire Federal Judiciary.

For a multitude of reasons, the Complaint falls far short of what is necessary to state a cause of action under the Civil Rights Acts. To sustain a cause of action under the Civil Rights Acts, it must be alleged that the asserted wrongs were committed under color of State law. Collins v. Hardyman, 341 U.S. 651, 658 (1951); Huey v. Barloga, 277 F. Supp. 864, 869 (N.D. Ill. 1967). Nowhere in the instant Complaint are there to be found factual allegations indicating that any of the named defendants were acting under color of State law.

The allegation of conspiracy also is insufficient to sustain a cause of action under 42 U.S.C.A. §1985. It is not enough to use the bare word "conspiracy" without setting forth supporting facts which tend to show an unlawful agreement. O'Hara v. Mattix, 255 F. Supp. 540, 542 (W. D. Mich. 1966). No supporting facts have been set forth in the instant Complaint to support the bare allegation of conspiracy among the named defendants. On its face, the conspiracy alleged is incredulous.

While the foregoing deficiencies in the Complaint are believed to be sufficient to warrant dismissal of the Complaint as to all defendants, additional deficiencies with

respect to the causes of action asserted against the particular defendants provide further grounds for dismissal as to these defendants.

Although the common law doctrine of official immunity may not enjoy recognition to its fullest extent in a suit under the Civil Rights Statutes, it is recognized that the immunity enjoyed by members of the judiciary has not been abrogated by these Statutes. Bauers v. Heisel, 361 F.2d 581, 586-87 (3d Cir. 1966); Lockhart v. Hoenstine, 411 F.2d 455, 459-60 (3d Cir. 1969). Under the doctrine, a member of the judiciary is afforded immunity from liability under the Civil Rights Statutes for all acts which are not clearly outside his jurisdiction. Bauers v. Heisel, supra, p. 590. The instant Complaint fails to allege actions of defendant-members of the judiciary which were clearly outside their jurisdiction. In fact, the allegations of the Complaint suggest to the contrary. Accordingly, the doctrine of judicial immunity would bar relief against defendant-members of the judiciary.

Dismissal of the cause of action against the National Labor Relations Board is warranted apart from the failure of the Complaint to allege a sufficient conspiracy or action under color of State law. It is doubtful that the National Labor Relations Board could be regarded as a "person" within the meaning of the Civil Rights Statutes. See Monroe v. Pape, 365 U.S. 167 (1961) and Olson v. California Adult Authority, 423 F.2d 1326 (9th Cir. 1970). Moreover, the civil remedies provided by the Civil Rights Statutes are not means of obtaining redress from alleged errors of the National Labor Relations Board. See Schatte v. International Alliance,

Etc., 182
Labor Rel
1968).

assert fe
States St
Steel Wor
Civil Rig
alleged,
of action
ciples of
judgments
defendant
National
here.

Complaint
process
I nevert
as to wa
§1915; D

that lea
hereby d

cc: ✓Don
800
Bra

Exhibit 'AA'

FORM NLRB-508 (12-66)

Form Approved
Budget Bureau No. 64-R003.12

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD

## CHARGE AGAINST [redacted] ORGANIZATION OR ITS AGENTS

INSTRUCTIONS: *File an original and 3 copies of this charge and an additional copy for each organization, each local and each individual named in item 1 with the NLRB regional director for the region in which the alleged unfair labor practice occurred or is occurring.*

| DO NOT WRITE IN THIS SPACE |
|---|
| Case No. |
| Date Filed |

**1. [redacted] ORGANIZATION OR ITS AGENTS AGAINST WHICH CHARGE IS BROUGHT**

a. Name: The United States Senate and House of Representatives

b. [redacted] Representative to Contact:

c. Phone No.:

d. Address (Street, city, State and ZIP code): Washington, D.C.

e. The above-named organization(s) or its agents has (have) engaged in and is (are) engaging in unfair labor practices within the meaning of section 8 (b), subsection(s) ______ (List Subsections) of the National Labor Relations Act, and these unfair labor practices are unfair labor practices affecting commerce within the meaning of the Act.

2. Basis of the Charge (Be specific as to facts, names, addresses, plants involved, dates, places, etc.)

By now all members of Congress know that David McDonald had caused 25,000 workers to be illegally fired while he was President of the United Steelworkers of America. The discharges often occurred with the help of union officials at the local level.

When an employee-member exposes himself to be fired for engaging in union activities then the union officials who engage in causing the employee-member to be fired should be fired in return as a punishment to them. The employee-member should be reinstated with back pay and the union officials responsible for discharge should at the same time be fired by the company. This will either stop illegal firings or to say the least cut down the number of illegal firings as the union officials responsible should be exposed to some risk rather than just burden the employee-member.

The Congress of the United States of America failed to enact corrective legislation long ago by not causing the discharge of union officials who caused discharge of employee-member which permitted unfair labor practices to continue and remain unremedied and the 25,000 discharges that David McDonald is connected with is a stupendous example.

3. Name of Employer: United States Steel Corporation

4. Location of Plant Involved (Street, city, State and ZIP code): Grant Street, Pittsburgh, Pa. 15219

5. Type of Establishment (Factory, mine, wholesaler, etc.)

6. Identify Principal Product or Service

7. No. of Workers Employed

8. Full Name of Party Filing Charge: Donald S. Drusky

9. Address of Party Filing Charge (Street, city, State and ZIP code): 800 Talbot Ave., Braddock, Pa. 15104

10. Telephone No.: 351-2435

**11. DECLARATION**

I declare that I have read the above charge and that the statements therein are true to the best of my knowledge and belief.

By Donald S. Drusky
(Signature of representative or person making charge) ______ (Title or office, if any)

Address ______ (Telephone number) March 3, 1972 (Date)

WILLFULLY FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

Exhibit 'BB'

Form Approved
Budget Bureau No. 64-R003.12

...ON OR ITS AGENTS

| DO NOT WRITE IN THIS SPACE |
|---|
| Case No. |
| Date Filed |

...WHICH CHARGE IS BROUGHT

b. [redacted] Representative to Contact | c. Phone No.

...(are) engaging in unfair labor practices within ... of the National Labor Relations Act, and ... within the meaning of the Act.

...olved, dates, places, etc.)

[illegible]

...Product or Service | 7. No. of Workers Employed

... 15104 | 10. Telephone No. 351-2435

...rue to the best of my knowledge and belief.

(Title or office, if any)

...one number) November 13, '71 (Date)

...ND IMPRISONMENT (U.S. CODE, TITLE 18,

---

NATIONAL LABOR RELATIONS BOARD
OFFICE OF THE GENERAL COUNSEL
Washington, D.C. 20570

March 17, 1969

Re: I. W. Abel, Walter Burke, Joe Molony
(In their capacity as officers of United Steelworkers of America, AFL-CIO)
Case No. 6-CB-1583

Steelworkers, AFL-CIO, et al.
(Edgar Thomson Works)
Cases Nos. 6-CB-1601-1-2
6-CB-1603-1 to -69

Honorable Edward M. Kennedy
United States Senate
Washington, D. C.

Dear Senator Kennedy:

This is in response to your recent inquiry with regard to the disposition of appeals filed by Mr. Donald Drusky from the Regional Director's refusals to issue complaint in several of the above matters. To date Mr. Drusky has addressed similar communications to at least 8 other Members of Congress and the Vice President. The background facts relating to Drusky's August 8, 1966, discharge for absenting himself from work over a 27-day period without permission and despite repeated warnings in order to picket the Company and the Union, and his allegations that the Union—assisted by President Johnson, Governor Shafer of Pennsylvania and others—blacklisted him from employment thereafter and has continued to do so may be found in the attached statement, copies of which were prepared previously in various stages for numerous other Members of Congress in connection with their inquiries, at Drusky's request, concerning his charges in United States Steel Corp., Edgar Thomson Works, Case Nos. 6-CA-3821; 6-CA-4207, and United Steelworkers of America, AFL-CIO, et al., Case Nos. 6-CA-1326; 6-CB-1411-1 to -4.

The charge in Case No. 6-CB-1583 was filed on October 1, 1968, and alleged that the Union had failed properly to represent Drusky following his discharge in 1966, and that it had failed, after Drusky complained of such treatment, to publish in its newspaper an account of his claim against it. The Regional Director dismissed the charge on the grounds that the Union's failure or refusal to publish in its newspaper an account of Drusky's claim against it satisfactory to him could

- 2 -

Re: Cases Nos. 6-CB-1583
6-CB-1601-1-2
6-CB-1603-1 to -69

not be deemed to constitute a violation of Section 8(b)(1)(A) or any other provision of the Act, and that the allegation that the Union two years earlier had failed properly to represent him was barred by the six-month limitations proviso to Section 10(b). After a careful review of the appeal in light of the entire Regional Office file, I decided to sustain the Regional Director's action for the same reasons stated in his decision and so advised all interested parties.

The charges in Case Nos. 6-CB-1601-1-2 and 6-CB-1603-1 to -69 were filed in seven sets on November 5 and 8, and December 5 and 16, 1968, and January 2, 14 and 21, 1969, alleging in substance that various Local, District, and International Union officials had conspired among themselves and with individuals from several private and public organizations to preclude Drusky's reinstatement at the Edgar Thomson Works and to obstruct his efforts to obtain redress otherwise from the Union for its failure to process a grievance of his in 1963 and for causing his 1966 discharge from the Edgar Thomson Works and preventing reinstatement thereat.

Charges against Steelworker officials (Case Nos. 6-CB-1601-1 and -2; 6-CB-1603-8 to -14, -18 to -20, -42 to -53, -57 to -56, and -60 to -68) maintained that Locals 1219 and 1557 had failed to represent Drusky in respect to his grievance against the Clairton plant in 1963 and that when he caused a commotion over this lack of representation, the Union had him fired from the Edgar Thomson Works in 1966. They also asserted that the Union has been taking steps to hinder his pressing charges against the Union, for example, attempting to bribe him, omitting details of his dispute from the minutes of local meetings, having urine thrown on him, causing the Pittsburgh newspapers to tell untruths about his picketing, lying in court in a 1968 suit against the Union, and forcing various attorneys either to refuse to take his case or to misdirect him. Drusky also alleged in Case No. 6-CB-1603-16 that the Union had canceled his subscription to its newspaper subsequent to his discharge from the Edgar Thomson Works, and, in Case No. 6-CB-1603-59, that the Union is continuing discrimination against him in order to reduce him to an economic state from which he will no longer be able to press charges against it. Drusky offered no evidence to support any of these allegations not barred by the limitations proviso to Section 10(b).

With regard to non-Union parties, Drusky maintained that individuals associated with various private and public organizations are conspiring with the Union to prevent his attaining economic stability so that he may

- 3 -

Re: Cases Nos. 6-CB-1583
6-CB-1601-1-2
6-CB-1603-1 to -69

continue to press his cause against the Union. He asserted that officials of the National Right to Work Committee (Case Nos. 6-CB-1601-1; 6-CB-1603-1 to -7 and -29 to -41) have misled him by offering to help him and then not taking action against the Union; that a claims agent of the Pennsylvania Department of Public Welfare (Case Nos. 6-CB-1603-21 to -24 and -69) has been harassing him with a fallacious demand for a refund of relief money which was allegedly overpaid to Drusky; that certain caseworkers of the Allegheny County (Pennsylvania) Board of Assistance (Case Nos. 6-CB-1603-25 to -28) have been making it difficult for Drusky and his mother to obtain relief funds; that agents of the Internal Revenue Service (Case Nos. 6-CB-1603-54 to -56) improperly disallowed a claimed medical deduction for hair transplants which he underwent; and that the owner of Stanley Studio, a photographer in Pittsburgh (Case Nos. 6-CB-1603-15, - 17), did not take good pictures of his picketing Union headquarters and attempted to have him arrested in order that he would no longer be able to fight the Union.

The Regional Director dismissed all of the charges on the grounds either that they alleged causes of action which were not within the purview of the law administered by this Agency or that they alleged matters occurring more than six months prior to the filing of the charges and were barred by Section 10(b). After a careful review of the appeals in light of the entire Regional Office file, I have decided to sustain the Regional Director's action and am so advising all interested parties. The charges herein either were barred by Section 10(b), failed to state a cause of action, named as respondents individuals who were neither employers, labor organizations nor agents thereof within the meaning of the Act, or were patently lacking in factual merit.

I trust this reply fully answers your inquiry. If I can be of further service to you in this matter, please let me know.

Sincerely yours,

Arnold Ordman
General Counsel

In the Eighty-Eight U.S. District Courts of the Fifty States of the United States of America

Donald S. Drusky, Petitioner.
The People of the Fifty States of the United States of America,
Plaintiffs,

V.

The 100th U.S. Congress thru 105th Congress, and the Governor, Lt. Governor and Legislature of the Fifty States,
Defendants.

With six additional sections incorporated herein by reference.

Affidavit in Forma Pauperis

I, Donald S. Drusky, depose and say that I am the Petitioner in the above-entitled proceeding; that I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to redress; and that the nature of my petition is briefly stated as follows: There are seven sections to the petition that seek in sequence; 1. the removal of various elected public officials from office; 2. criminal complaint against the USX Corporation and the United Steelworkers of America; 3. criminal complaint against various public officials; 4. mandamus against various U.S. Attorneys; 5. mandamus against the Federal Communications Commission; 6. asks the Sovereign People of America to amend the U.S. Constitution and all the Constitutions covering the 50 States; 7. Donald S. Drusky seeks a devine redress from Defendant God.

In further support of this affidavit in forma pauperis, I have payments past due at the following:

1. Chase Manhattan Bank Visa Account Number: 4226 6100 0117 3620. By letter dated 1-26-99, Chase temporarily suspended credit privileges.
2. Sears Card Account Number: 0174049 189627. Between Billing Date of Oct. 19, 1998 thru Billing Date of Nov. 1998, as a penalty, the available credit was reduced from $1074 to $155. It is now $41.
3. Chevy Chase Bank Visa Account Number: 4246 1710 1220 2862. By letter dated January 13, 1999, charging privileges have been temporarily suspended.
4. The Associates Loan Account Number: 01376800-0514890. Pressing real hard for at least a $67 payment by phone, which I could not pay as I needed the money to finance cost of petitions for 88 U.S. District Courts.
5. First USA Bank (Bank One) BP Visa Account Number: 4266 5036 0838 8975. Charge privileges have been revoked by letter dated January 13, 1999, and by monthly statement.
6. The Associates Limited Edition Visa Account Number: 4261 2007 1153 8618.
7. National City Bank of PA Visa Account Number: 4316 4075 1300 5999. Returned cut credit card as requested by monthly statement with closing date of 1-20-99.
8. Discover Financial Services Card Account Number: 6011 0021 6952 8478. Upon their letter dated January 23, 1999, it became necessary for me to return my Discover Card. By letter dated Jan. 29, 1999, Discover sought the immediate payment of the full balance of $5,569.94.

In further support of this affidavit in forma pauperis, I have been unemployed and disabled since the August 8, 1966 discharge by U.S. Steel (now the USX Corp.). I presently receive $777 Social Security Benefit by Direct Deposit at Dollar Bank of Pittsburgh. I do not own any real estate, stocks, bonds, notes, automobiles or other valuable property. I have ordinary household furnishings and clothing, which also include television sets, VCR, stereo components, model train collection, stereo record and compact disc collection, and Christmas ornaments and decorations, which may be used as security toward the above-entitled proceeding.

I declare under penalties of perjury that the foregoing affidavit is true and correct to the best of my knowledge and belief.

This 5th day of February 1999.
Donald S. Drusky

CO-946
Rev. 10/86

CLERK'S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
WASHINGTON, D. C. 20001

Donald S. Drusky
422 Chicora St.
East McKeesport, PA 15035

Date August 24, 1987

Dear: Mr. Drusky,

The enclosed new case is returned because the Court has directed the Clerk not to accept for filing any document which does not conform to the requirements of the Rules of this Court or of the Federal Rules of Civil Procedure. The reason for the return is:

_____ JS 44 Cover Sheet not included.

_____ Summons for each defendant not included.

_____ Filing Fee not included.

_____ The word "Complaint" alone is insufficient; it must be "Complaint for......"

_____ Party(ies) full name, residence address and phone number not shown on complaint as required by Local Rule 106(d).

_____ Attorney's full name, address or phone number not shown on complaint as required by Local Rule 106(d).

_____ Complaint filed by out-of-town counsel not signed by member of our Bar as required by Local Rule 104(c).

_____ Copy of Complaint not supplied for the Court as required by Local Rule 106(c).

_____ Complaint not on paper 8½ by 11 inches long as required by Local Rule 106(e) effective January 1, 1983.

Other: Please refer to the enclosed materials for the proper format to use when writing a COMPLAINT. Also enclosed is an APPLICATION TO PROCEED IN FORMA PAUPERIS for use if you wish to proceed without prepayment of costs.

JAMES F. DAVEY, CLERK OF COURT

By [signature]
Deputy Clerk
A.J. Rambow