The United States Court of Appeals
for the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits

FILED
NOV 2 4 2000
SAMUEL L. KAY, CLERK
Southern

In re Donald S. Drusky and the People of the Fifty States of the United States of America, Petitioners.

CIVIL ACTION 2:99-0107
DRUSKY v. 100th U.S. CONGRESS

Petition for Writ of Mandamus

Petitioners, Donald S. Drusky and the People, plaintiffs / complainants in the Civil and Criminal Action captioned in Section One of seven sections as (Donald S. Drusky, Petitioner - The People of the Fifty States of the United States of America, Plaintiffs, v. The 100th Congress thru the 105th Congress, and the Governor, Lt. Governor and Legislature of the Fifty States, Defendants), in the 88 U.S. District Courts of the Fifty States of the United States of America, hereby applies, pursuant to the provisions of Section 1651, Title 28, United States Code, and Rule 21 (a) of the Federal Rules of Appellate Procedure, for a Writ of Mandamus to be issued by all eleven Circuit Courts of Appeals directing the Honorable Judges of the 88 U.S. District Courts of the 50 states of the United States of America to promptly and uniformly proceed and process the petition drafted by Donald S. Drusky to the 88 U.S. District Courts. Specifically, the eleven Circuit Courts of Appeals must direct the Honorable Judges of the 88 U.S. District Courts to direct the docketing of the seven section petition on behalf of the people of the 50 states of the United States of America under public funds, and docket the seven section petition on behalf of Donald S. Drusky in forma pauperis. Whereupon, the Clerk of Court must immediately serve suit and summons upon the defendants of the first six sections of the petition. Under the Rules of Civil Procedure, publication of a summons is the process of giving it currency as an advertisement in a newspaper, under the conditions prescribed by law, as a means of giving notice of the suit to a defendant upon whom service cannot be made. The Court of Appeals of all eleven circuits must also direct all 88 U.S. District Courts to provide publication of suit and summons regarding Defendant God in major newspapers all over the 50 states of the United States of America. God is a defendant in the seventh section of the petition.

In support of this application the petitioners state that a complete stapled set of the 12 page petition to the 88 U.S. District Courts is enclosed for each of the eleven U.S. Courts of Appeals. The base of the 12th page contains an application for "Appointment of Counsel," a Motion by the Sovereign People to proceed on public funds, and a Motion by Donald S. Drusky to proceed in forma pauperis. In support of the motion to proceed in forma pauperis an "Affidavit in Forma Pauperis" dated February 5, 1987 was stapled with the 12 page petition. The reverse side of the affidavit contained an exhibit, which was a letter dated August 24, 1987 from Deputy Clerk A. J. Rambow of the U.S. District Court for the District of Columbia in response to the enclosed 3 page reduced in size petition dated August 14, 1987 petition and exhibits to the U.S. District Court for the District of Columbia. Each of the eleven U.S. Courts of Appeals will receive 4 sets of the same stapled petition received by each of the 88 U.S. District Courts. However, my limited funds will only enable me to supply each Court of Appeals with only one set of the 3 page reduced in size petition and exhibits regarding the U.S. District Court for the District of Columbia. Correction: 4 sets will be provided.

## I. Order and Opinion Below

First Circuit covering Districts of Maine, Massachusetts, New Hampshire and Rhode Island:

Summary of the responses of the District Courts under the First Circuit are as follows: By form letter dated Feb. 11, 1999, a U.S. Magistrate Judge from the District of Rhode Island returned the petition. A copy of the form letter is attached as Exhibit #1, and is incorporated by reference herein. The petition to the District of Massachusetts was returned by the U.S. Post Office. A copy of the mailing envelope marked "Not Deliverable as Addressed" is attached as Exhibit #2. The petition to District of New Hampshire was docketed as Civil No. 99 - 72 - M on 2/19/99. U.S. Magistrate Judge James R. Muirhead ordered a $150 filing fee or a Motion to Proceed in Forma Pauperis or the case will be referred to a judicial officer for dismissal without prejudice. Attached were various forms to proceed in forma pauperis. A complete copy of the set of papers is attached as Exhibit #3. By Order of Dismissal dated March 9, 1999, District Judge Steven J. Mc Auliffe dismissed the case without prejudice.

7

A "Judgment" dated March 9, 1999 covering Judge McAuliffe's order was signed as: "By the Court, James R. Starr - Clerk." A copy of the Judgment document, and a copy of the Order of Dismissal document are jointly attached as Exhibit #4. No response from the District of Maine. Only one set of Exhibits #1 thru #4 will be received by the First Circuit Court of Appeals. The District of Massachusetts will have their original petition returned with improved address. The District of Rhode Island will have their original petition returned also.

Second Circuit covering Districts of Connecticut, New York and Vermont:

Summary of the responses under the Second Circuit are as follows: By letter dated February 12, 1999, Chief Deputy Clerk Marge Krahn of the District of Vermont enclosed 3 pages of forms to proceed in forma pauperis. A copy of the letter only is attached as Exhibit #5, and is incorporated by reference herein. By form letter dated 2/24/99, the PRO SE OFFICE of the Southern District of New York returned the petition for the following reason: "It is unclear what you are trying to do." A copy of the form letter is attached as Exhibit #6. Judge Norman A. Mordue of the Northern District of New York issued a 9 page Decision and Order dated March 5, 1999. Deputy Clerk Judy L. Baugh provided the Civil Judgment document, which stated as follows: "It Is Ordered And Adjudged the leave to commence this action in forma pauperis is granted; the Clerk of the Court is Ordered to consolidate civil action 99-CV-230 and civil action 99-CV-231 through 99-CV-239. Civil action number 99-CV-230 shall be referred to and treated as the "lead case" and all subsequent Order of this Court and papers that are submitted by the parties hereto that pertain to any of the foregoing actions shall be filed in civil action 99-CV-230; this action is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and Rule 5.4(a) of the Local Rules of Practice of the Northern District of New York." The original petition to the Court contained 7 sections or cases. Judge Mordue added three more cases to the original 7 cases. The extra cases were derived from captions of cases on exhibit in support of the original 7 cases. The first case added was as follows: "Donald S. Drusky, Plaintiff, v. The Judges of the Supreme Court, Eleven U.S. Circuit Courts of Appeal and Eighty-Nine U.S. District Courts; United States; District of Columbia; U.S. Steel Corp.; I.W. Abel; Joseph Molony of the United Steel Workers of America and the National Labor Relations Board, Defendants." The case was given the docket number 5:99-CV-230 (NAM) (GJD) Lead Case. Missing from the original caption was Walter Burke of the United Steelworkers of America. I.W. Abel is now deceased, and I don't know for sure the status of Joseph Molony and Walter Burke. This case was derived from Civil Action 71-249 in the U.S. District Court for the Western District of Pennsylvania, which can be seen as Exhibit 'AA' of the 3 page reduced in size exhibit attached to the original petition to the 88 U.S. District Courts.

The second case added was as follows: "Donald S. Drusky, Plaintiff, v. Office of the President of the United States; United States of America; Ronald Reagan, as president of the United States; God, Defendants." The case was given the docket number 5:99-CV-231 (NAM)(GJD) Member Case. This case was derived from the not docketed case returned to Donald S. Drusky by the U.S. District Court for the District of Columbia, which can be seen on the front page of the 3 page reduced in size exhibit attached to the original petition to the 88 U.S. District Courts.

The third case added was as follows: "Donald S. Drusky, Plaintiff, v. The Fifty States of the United States of America, Defendants." This case was given the docket number 5:99-CV-232 (NAM)(GJD) Member Case. This case derived from the not docketed case dated June 28, 1986 to the U.S. Supreme Court. By letter dated July 1, 1986 Assistant Clerk Edward C. Schade responded as follows: "The papers which you submitted for filing are returned for their failure to comply to any extent with the Court's Rules of Procedure, a copy of which is enclosed." The petition to the U.S. Supreme Court and Assistant Clerk Schade's response can be seen on Exhibit 'A' of the 3 page reduced in size exhibit attached to the original petition to the 88 U.S. District Courts.

Member Cases number 5:99-CV-233 through 5:99-CV-237 altered the original captions (correlative to Sections One through Five of the original petition) by adding the People of the Fifty States of the United States of America as Defendants, and using another approach towards justice. Judge Mordue maintained the original captions as set forth in Sections 6 and 7 of the original petition. A complete copy of the 10 page set of documents are attached as Exhibit #7, and is incorporated by reference herein. No response from the District of Connecticut. Only one set of Exhibits #5 and #6 will be received by the Second Circuit Court of Appeals.

Exhibit #7 will be received by all eleven Circuit Courts of Appeals. The District of Vermont and Southern District of New York will have their original petitions returned to them.

Third Circuit covering Districts of Delaware, New Jersey and Pennsylvania:

Summary of the responses under the Third Circuit are as follows: The Western District of Pennsylvania returned the petition. The back page of the petition was stamped Received FEB. 10, 1999, Clerk U.S. District Court, West. Dist. of Pennsylvania. A copy of the stamped page and a copy of a page titled "Notice To All Pro Se Litigants - Effective December 1, 1995" are jointly attached as Exhibit #8. A Pro Se Package was also provided by the Western District of Pennsylvania. The Middle District of Pennsylvania returned the petition. By letter dated February 17, 1999, Supervisor Florence A. Jenkins stated, "We are returning the enclosed papers to you along with the proper forms for filing a civil complaint. If you wish to file a complaint in this Court please use the enclosed forms." A copy of the February 17, 1999 letter is attached as Exhibit #9. No response from the Eastern District of Pennsylvania. By letter dated February 11, 1999, Supervisor Michael D. Shanklin of the District of New Jersey, at the direction of the Court, returned the petition along with a ProSe Package. A copy of the letter is attached as Exhibit #10, and is incorporated by reference herein. By letter dated February 17, 1999, Clerk of Court Peter T. Dalleo captioned the letter as "Re: Copies of Documents Returned for Clarification." A copy of the letter is attached as Exhibit #11, and is incorporated by reference herein. Clerk Dalleo also included a JS Civil Cover Sheet, an application to Proceed Without Prepayment of Fees and Affidavit, and a form regarding Order on Application to Proceed Without Prepayment of Fees. Copies of these 3 pages are included with Clerk Dalleo's letter as Exhibit #11, which covers the response from the District of Delaware. Only one set of Exhibits #8, #9, #10 and #11 will be received by the Third Circuit Court of Appeals. The Western and Middle Districts of Pennsylvania will have their original petitions returned to them.

Fourth Circuit covering Districts of Maryland, North Carolina, South Carolina, Virgina + West Virgina:

Summary of the responses under the Fourth Circuit are as follows: By letter dated February 16, 1999, the Staff Attorney for the Pro Se Unit for the District of Maryland returned the petition with approval of the Chambers Judge. A civil cover sheet and a general packet to file a case in their court was enclosed. A copy of the letter and a page entitled "Instructions To Persons Wishing To File A Complaint In Their Own Behalf" are jointly attached as Exhibit #12, and is incorporated by reference herein. The Deputy Clerk of the Eastern District of North Carolina, (Western Division) by Order of U.S. Magistrate Judge Alexander B. Denson dated the 18th day of February, 1999, returned the papers unprocessed. A copy of the letter or Order is attached as Exhibit #13, and is incorporated by reference herein. U.S. Magistrate Judge Joseph R. Mc Crorey of the District of South Carolina submitted a 16 page Report and Recommendation dated February 24, 1999, appending 8 pages of various court opinions involving or pertaining to plaintiff Donald S. Drusky. Case was docketed as C/A No. 3:99-0502-17BC. A copy of the complete 24 page document is attached as Exhibit #14, and is incorporated by reference herein. A copy of a 4 page Order dated February 24, 1999 by U.S. Magistrate Judge Joseph R. McCrorey grants authorization to proceed without prepayment of fees and costs. The order further stated as follows: "The Office of the Clerk is directed not to authorize the issuance and service of process in the above captioned case, unless it (the Office of the Clerk of Court) is instructed by a United States District Judge or a Senior District Judge to do so." The Request for Appointment of Counsel was denied. The covering mailing address for the window of the envelope also stated: "Please Take Notice - Pursuant to Local Rule 83. I. 06, Only Local Counsel Is Being Served." This 5 page set of documents are attached as Exhibit #15, and is incorporated by reference herein. By Order dated 3/15/99, United States District Judge Joseph F. Anderson of the District of South Carolina - Columbia Division reviewed the attached Report and Recommendation and no party having filed an objection, the within action is hereby dismissed with prejudice. Deputy Clerk Gail Hayden provided the Judgment In A Civil Case, which stated: "Decision by the Court. This action came before the Court, the Honorable Joseph F. Anderson, Jr., United States District Judge presiding. The issues having been decided and the Court having adopted the Magistrate Judge's Report and Recommendation, It is Ordered and Adjudged that the plaintiff take nothing and that this action is hereby dismissed with prejudice. - Dated March 16, 1999." Both documents are jointly attached as Exhibit #16. By Order dated February 23, 1999, U.S. District Judge John T. Copenhaver, Jr. of the Southern District of West Virgina referred the case to the Honorable Jerry D. Hogg, Magistrate Judge. The case was docketed as Civil Action No. 2:99-0107. A copy is attached as Exhibit #17, and

is incorporated by reference herein. U. S. Magistrate Judge Jerry D. Hogg provided a 3 page Report and Recommendation dated March 15, 1999, that recommended the affidavit in forma paupers be granted, request for appointment of counsel be denied, and complaint be dismissed without prejudice as being frivolous. The case was captioned as Donald S. Drusky, Plaintiff, v. (cited as defendants were all the defendants of the original 7 section petition collectively grouped as defendants). A copy of the 3 page document is attached as Exhibit #18, and is incorporated by reference herein. On March 24, 1999, Magistrate Hogg provided an Amended Report-Recommendation. The caption added the People of the Fifty States of the United States of America as Plaintiffs with Donald S. Drusky. The March 15, 1999 'Report' inadvertently recommended case be dismissed without prejudice. The original intent was that the dismissal be with prejudice. A copy of the 3 page amended report is attached as Exhibit #19, and is incorporated by reference herein. Judge John T. Copenhaver, Jr. of the Southern District of West Virginia issued a 2 page order dated May 7, 1999 after receiving and reviewing the report-recommendation by the U. S. Magistrate Judge. The Court adopted the findings of the U.S. Magistrate Judge, granted the application to proceed in forma paupers, denied request for appointment of counsel, the complaint was dismissed with prejudice as being frivolous. A single page "Judgment Order" on Civil Action No. 2:99-0107 dated May 7, 1999 by Judge Copenhaver, Jr. was Entered by the Clerk. A copy of the 3 page set of documents is attached as Exhibit #20, and is incorporated by reference herein. No response from the Middle and Western Districts of North Carolina, Eastern and Western Districts of Virginia, and Northern District of West Virginia. Only one set of Exhibits #12 through #20 will be received by the Fourth Circuit Court of Appeals. Exhibit #14 will also be received by the other ten Circuit Courts of Appeals. The Districts of Maryland and Eastern District of North Carolina will have their original petitions returned to them.

Fifth Circuit covering Districts of Louisiana, Mississippi and Texas:

Summary of the responses under the Fifth Circuit are as follows: The Deputy Clerk of the Eastern District of Louisiana returned the petition by a 2 page Memorandum form ~~letter~~ letter dated February 22, 1999. A third page pertained to "LR 10. 1E FORM: Statement Regarding Filing of Papers." The last paragraph reads as follows: "A completed and executed Civil Cover Sheet form shall accompany the initial pleading of each civil case to be filed, except that such requirement shall not apply to persons in the custody of civil, state or federal institutions or to persons filing cases pro se." Donald S. Drusky has been in an invisible prison serving 31 years of time for the 1968 perjury committed by U. S. Steel and the United Steelworkers of America in Civil Action 68-124 in the Western District of Pennsylvania over the union's failure to to represent a meritorius grievance and causing U. S. Steel to illegally discharge Donald S. Drusky on August 8, 1966. A copy of the 3 page document from Eastern District of Louisiana is attached as Exhibit #21, and is incorporated by reference herein. U.S. Magistrate Judge Jerry A. Davis of the Northern District of Mississippi - Eastern Division provided an Order Dismissing Case As Frivolous. The second paragraph reads as follows: "Apparently, petitioner's problems arose when he was fired by United States Steel sometime in the 1960's. The instant suit chronicles his attempts to "redress his grievances" and the failure of anyone and everyone to help him. In fact, his complaint against God seeks that his youth and health be restored, his mother be resurrected, and the return to life of "Hobo the Pigeon adding a halo around Hobo's head". The closing order read: "The complaint is clearly frivolous on its face and is hereby dismissed. The application to proceed in forma pauperis is denied. So Ordered this 25th day of February, 1999." Case was docketed as No. 1:99MC2-JAD. A second page provided an "Acknowledgement of Receipt" form. A copy of the 2 page document is attached as Exhibit #22, and is incorporated by reference herein. The Northern District of Texas returned the petition using a form titled "Guide for Filing Federal Civil Suits In The Northern District of Texas." A copy is attached as Exhibit #23, and is incorporated by reference herein. A Pro Se Writ Clerk of the Western District of Texas provided a letter dated February 22, 1999 stating, in part, as follows: "Please be further advised that the United States District Court for the Western District of Texas has no jurisdiction over anything that occurs in the District of Columbia, Washington D. C." A copy is attached as Exhibit #24, and is incorporated by reference herein. No response from the Western District of Louisiana, Southern District of Mississippi, Eastern and Southern Districts of Texas. Only one set of Exhibits #21 through #24 will be received by the Fifth Circuit Court of Appeals. The Eastern District of Louisiana and the Northern District of Texas will have their original petitions returned to them.

Sixth Circuit covering Districts of Kentucky, Michigan, Ohio and Tennessee:

Summary of the responses under the Sixth Circuit are as follows: The Western District of Kentucky mailed 7 separate envelopes over the 7 section petition. Six cases were docketed as Civil Action No. 3:99 CV-95S through 3:99 CV-100S. A 7th case was docketed as Civil Action No. 3:99CV-104S. Each case contained a Memorandum Opinion and Order of 2 to 3 pages. Each "Order" stated, in part, as follows: "Drusky also filed a motion for leave to proceed in forma pauperis. It Is Ordered that the motion is Granted." Each case was deemed as factually and legally frivolous. Each case contained a separate Order as follows: "For Reasons set forth in the Memorandum Opinion entered this date, It Is Ordered that the instant action is Dismissed pursuant to 28 U.S.C. § 1915 (e)(2)(B)(i). There being no just reason for delay in its entry, this is a final Order. Leave to appeal to the Court of Appeals in forma pauperis is denied pursuant to 28 U.S.C. § 1915 (a)(3). This 24th day of February, 1999." In sequence of the docket number, a complete set of the Memorandum Opinion and Order of each of the 7 docketed cases are collectively grouped and attached as Exhibit #25, and is incorporated by reference herein. U.S. Magistrate Judge Hugh W. Brenneman, Jr. of the Western District of Michigan - Southern Division returned the petition with an Order Rejecting Pleading on 2/18/99. The reasons given for the Clerk to return the Complaint is as follows: "Lack of original signatures on complaint and Affidavit in forma pauperis and Criminal Actions are commenced only by the Department of Justice." A copy of said order is attached hereto as Exhibit #26, and is incorporated by reference herein. The Western District of Tennessee returned the petition by form letter dated 2/17/99. The first of 3 reasons given for the return is as follows: "You must have a case number, we charge a fifteen ($15.00) search fee to find ~~your~~ the case number for you." A copy of the form letter is attached hereto as Exhibit #27, and is incorporated by reference herein. The Middle District of Tennessee returned the petition along with forms to file a civil action and to proceed in forma pauperis. Michael J. Laughlin, Pro Se Staff Attorney, provided a fully detailed form letter dated February 17, 1999 to cover the return of the petition. A copy of the form letter is attached hereto as Exhibit #28, and is incorporated by reference herein. The Eastern District of Tennessee returned the petition with a covering form letter dated February 17, 1999 by A. Beeler. A copy of the letter is attached hereto as Exhibit #29, and is incorporated by reference herein. No response from Eastern District of Kentucky, Eastern District of Michigan, and the Northern and Southern Districts of Ohio. Only one set of Exhibits #26 through #29 will be received by the Sixth Circuit Court. However, all eleven Circuit Courts will receive Exhibit #25, which is a full set of the Orders by Charles R. Simpson, III, Chief United States Distrc Judge of the Western District of Kentucky. - See end of Seventh Circuit for return of original petitions.

Seventh Circuit covering Districts of Illinois, Indiana and Wisconsin:

Summary of the responses under the Seventh Circuit are as follows: The Northern District of Illinois in Chicago returned the petition with no covering letter or Clerk of Court stamping. A copy of the mailing envelope is attached as Exhibit #30. The Southern District of Indiana - Indianapolis Division provided a docket number IP99-157-C-H/G with Entry and Judgment dated 2-16-99 by U.S. District Judge David F. Hamilton. The Entry deemed the case as frivolous and denied request to proceed in forma pauperis. The Judgment read as follows: "The court, having this day made its Entry, It Is Therefore Adjudged that this cause of action is dismissed for lack of jurisdiction." A copy of the 2 page document is jointly attached as Exhibit #31, and is incorporated by reference herein. The U.S. Post Office returned the petition to the Eastern District of Wisconsin by stamping on the envelope "Insufficient Address." A copy of the mailing envelope is attached as Exhibit #32. Originals returned to W. Dist. Mich. and East., West. and Middle District of Tennessee, which was omitted under the end of the Sixth Circuit responses are entered herein by reference to the Sixth Circuit. Under the Seventh Circuit, the Northern District of Illinois will have their original petition returned to them. The Eastern District of Wisconsin will have their original petition returned to them with an improved address. No response from the Eastern and Southern Districts of Illinois, Northern District of Indiana, and the Western District of Wisconsin. Only one set of Exhibits #30, #31 and #32 will be received by the Seventh Circuit Court.

Eighth Circuit covering Districts of Arkansas, Iowa, Minnesota, Missouri, Nebraska, North Dakota and South Dakota:

Summary of the responses under the Eighth Circuit are as follows: The Deputy Clerk of the Western District of Arkansas sent, with a covering letter dated 2/16/99, a copy of an Order dated February 16, 1999 by U.S. Magistrate Judge Beverly S. Jones over Civil No. 99-2023, and a filemarked copy of my Affidavit in Forma Pauperis dated Feb. 16, 1999. The Order by U.S. Magistrate Judge Jones states, in pertinent part, as follows: "We find the complaint should be provisionally filed prior to a determination regarding plaintiff's status as a pauper and service of process. The United States District Clerk is hereby directed to file the complaint and in forma pauperis application nunc pro tunc as of February 11, 1999." The Deputy Clerk's letter, the Order by the U.S. Magistrate Judge, and the filemarked copy of my affidavit in forma pauperis are jointly attached as Exhibit #33, and is incorporated by reference herein. A copy of a three page March 11, 1999 Report and Recommendation by U.S. Magistrate Judge Beverly S. Jones is attached as Exhibit #34, and is incorporated by reference herein. However, on page 3 of the report, it states, in pertinent part, as follows: "Accordingly, we recommend that Drusky be denied final in forma pauperis status, as his action is subject to dismissal on the grounds that it is frivolous and failed to state a claim." Finally, District Judge Robert T. Dawson of the Western District of Arkansas provided an order on Civil No. 99-2023, Donald S. Drusky v. The 100th Congress thru 105th Congress and the Governor, Lt. Governor and Legislature of the Fifty States, et al. The Order dated March 26, 1999 denied final in forma pauperis status and dismissed case as frivolous and fails to state a claim. The Deputy Clerk provided a two page covering letter dated March 26, 1999 along with a 2 page form for an Application to Proceed Without Prepayment of Fees and Affidavit. This group of documents are attached as Exhibit #35, and is incorporated by reference herein.

U.S. District Judge Wright of the Eastern District of Arkansas - Western Division provided an Order over "In Re: LR-M-99-27 Donald S. Drusky - Application to Proceed in Forma Pauperis" granting the application to proceed IFP, and directing the Clerk to file the complaint without prepayment of fees or costs or the necessity of giving security therefore." It Is So Ordered this 2nd day of April 1999." Following the order was a form titled 'Certificate of Party' for me to certify that Donald S. Drusky received a copy of a publication entitled "Your Day in Court: The Federal Experience." Of course, a copy of the publication was enclosed. Copies of the Order and Certificate are jointly attached as Exhibit #36, and is incorporated by reference herein. Along with papers cited as Exhibit #36, I received a file marked copy set of my petition to the 88 U.S. District Courts with File Number LR-C-99-242 and a packet on the Rules of the Eastern and Western Districts of Arkansas. Subsequently, Chief Judge Wright issued Order on the 6th day of April 1999 dismissing case as frivolous. The 3 page Order was followed by a one page Judgment that dismissed the case and the relief sought was denied. A copy of the 4 page set of documents are attached as Exhibit #37, and is incorporated by reference herein.

The Deputy Clerk of the Northern District of Iowa responded by letter dated March 2, 1999. Case was docketed as No. C99-33-MJM, with no further action or response. A copy of the letter is attached as Exhibit #38, and is incorporated by reference herein. The Southern District of Iowa - Central Division returned a filemarked Feb. 18, 1999 copy of the Affidavit in Forma Pauperis and also returned a filemarked Feb. 18, 1999 copy of the petition with case No. 4-99-CV-80088. U.S. District Judge Charles R. Wolle of the Southern District of Iowa issued a 2 page Order on March 2, 1999, which concluded as follows: "This court has no jurisdiction in this case. It is dismissed without prejudice." It was followed by a one Judgment that Ordered and Adjudged: This case is dismissed without prejudice. A copy of this 3 page set of documents are attached as Exhibit #39, and is incorporated by reference herein. The District of Minnesota returned the petition stamped as "Received by Mail Feb. 11, 1999." A copy of the dated caption page is attached as Exhibit #40. The Western District of Missouri returned the petition stamped as "Received by Mail Feb. 11, 1999." It had a stick on yellow note that read: NOT OUR COURT. A copy of the page is attached as Exhibit #41. No response from Eastern District of Missouri or from District of Nebraska.

Chief Judge Rodney S. Webb for the District of North Dakota - Southeastern Division provided an Order dated the 16th of March, 1999. The Order Granted IFP, Denied application for appointment of counsel, and Dismissed complaint as frivolous. A Notice of Entry by the Deputy Clerk was attached to the 2 page Order on a Judgment in a Civil Case - Drusky, et al. v. the 100th through the 105th Congress, et al. Case No. A3-99-37. A copy of the 3 page set of documents is attached as Exhibit #42, and is incorporated by reference herein. The petition to the District of South Dakota was returned by the U.S. Post Office for insufficient address. A copy of the mailing envelope is attached as Exhibit #43. Only one set of Exhibit #33 thru #36 and Exhibit #38 thru Exhibit #43 will be received by the Eighth Circuit Court. Exhibit #37 will be received by all eleven Circuit Courts. The District of Minnesota and the Western District of Missouri will have their original petitions returned to them. The District of South Dakota will have their original petition returned to them with an improved address.

Ninth Circuit covering Districts of Arizona, California, Idaho, Montana, Nevada, Oregon, Washington, Alaska and Hawaii:

Summary of the responses under the Ninth Circuit are as follows: The U.S. District Court for Arizona in a large envelope returned the original petition by stamping on the original mailing envelope: "Received Feb. 11, 1999." The Court also enclosed a "Glossary of Terms Used in Federal Court" and a packet on "Filing A Complaint In Your Own Behalf." Only a copy of the cover page of the packet is attached as Exhibit #44. The petition to the Eastern District of California was returned by the U.S. Post Office for insufficient address. A copy of the original mailing envelope is attached as Exhibit #45. The Clerk of the Southern District of California returned the petition "unfiled" by form letter dated 2-10-99. A copy of the form letter is attached as Exhibit #46. The Clerk also sent a packet titled "To Any Person Wishing To File A Complaint In Their Own Behalf." The petition meant for the District of Idaho was received by the Ada County District Court. The Deputy Clerk of the Ada County Court returned the petition by letter dated Feb. 19, 1999. The letter provided the correct address for the U.S. District Court for District of Idaho. A new copy of the original petition will be sent to the District of Idaho. A copy of the Deputy Clerk's letter is attached as Exhibit #47.

The District of Montana returned the petition with a copy of "Rules of Procedure of the United States District Court for the District of Montana." A copy of the cover page of the Rules is attached as Exhibit #48. The Deputy Clerk of the District of Nevada returned the petition by form letter dated 2/16/99. A copy of the letter is attached as Exhibit #49. The Office of the Clerk of the Western District of Washington provided a covering letter dated February 11, 1999, which enclosed a packet that included "Filing a Complaint in Your Own Behalf", a civil cover sheet and an application to proceed in forma pauperis. U.S. Magistrate Judge Ricardo S. Martinez on March 22, 1999 made an Order to Return Documents since they did not receive a filing fee or an application to proceed in forma pauperis. A copy of the Clerk's letter and Martinez's Order are jointly attached as Exhibit #50. The District Court for the Eastern District of Washington returned the petition with a packet of the Local Rules, Form for Summons, Instructions for Prisoners Seeking to File A Civil Rights Complaint Pursuant to 42 U.S.C. § 1983, and a form on Declaration and Application To Proceed In Forma Pauperis By A Prisoner Bringing A Civil Rights Action Pursuant to 42 U.S.C. § 1983. A copy of the Instructions for Prisoners and page 1 of the form for Declaration and Application to Proceed in Forma Pauperis by a Prisoner are jointly attached as Exhibit #51, and is incorporated by reference herein. In the mail on Feb. 22, 1999, Donald S. Drusky received a form titled "Notice Of Non-Compliance With Rules" dated 2-19-99 from the District of Alaska. It was followed by a "Minute Order From Chambers" filed on April 23, 1999 as Case No. A99-0053 CV (HRH). By two page Order dated May 10, 1999, the action was Dismissed. This group of documents are attached as Exhibit #52, and is incorporated by reference herein. The District Court of Hawaii returned the petition by covering letter dated February 12, 1999. The letter stated, in part, as follows: "If you wish to file your document in this Court, please resubmit your document after obtaining an original signature." A copy of the letter is attached as Exhibit #53. No response from the District of Oregon and the Northern and Central Districts of California. Only one set of Exhibit #44 through Exhibit #53 will be received by the Ninth Circuit Court. Original petitions will be returned to the following Districts: Arizona, Eastern and Southern California, Montana, Nevada, Eastern and Western Washington and Hawaii.

Tenth Circuit covering Districts of Colorado, Kansas, New Mexico, Oklahoma, Utah and Wyoming:

Summary of the responses under the Tenth Circuit are as follows: The U.S. Post Office returned the petition to the U.S. District Court for the District of Colorado by stamping "Addressee Unknown" on the envelope. A copy of envelope is attached as Exhibit #54. The Deputy Clerk of the Northern District of Oklahoma, by letter dated March 29, 1999, advised that Judge H. Dale Cook entered a Minute Order (over Case No. 99-C-131-C, Drusky v. Office of the President of the United States, et al.) denying plaintiff motion to proceed in forma pauperis. The Clerk was directed to provide plaintiff with proper in forma pauperis documents. A copy of the Deputy Clerk's letter is attached as Exhibit #55, and is incorporated by reference herein. Senior U.S. District Judge H. Dale Cook provided an Order dated May 25, 1999, which Dismissed the action. A copy of the Order is attached as Exhibit #56. By letter dated February 11, 1999, Clerk Betty Griess of the District of Wyoming returned the petition. The last sentence of her letter read: "If you wish to have a copy returned to you, it is necessary that a self-addressed STAMPED envelope be enclosed." A copy of the letter is attached as Exhibit #57, and is incorporated by reference herein. No response from Districts of Kansas, New Mexico, Eastern and Western Districts of Oklahoma, and Utah. Only one set of Exhibits #54 through #57 will be received by the Tenth Circuit Court of Appeals. The Districts of Colorado and Wyoming will have their original petitions returned to them.

Eleventh Circuit covering Districts of Alabama, Florida and Georgia:

Summary of the responses under the Eleventh Circuit are as follows: The U.S. Post Office returned the petition to the Northern District of Alabama by stamping on the envelope "No Such Street Number." A copy of the mailing envelope is attached as Exhibit #58. A Staff Attorney of the Clerk's Office in the Northern District of Florida returned the petition by form letter enclosing an In Forma Pauperis Application, and Civil Rights Complaint Form (s) - Section 1983. A copy of the form letter is attached as Exhibit #59, and is incorporated by reference herein. By form letter dated 2/11/99, the Deputy Clerk of the Southern District of Florida returned the petition for the reason a Civil Cover Sheet Form JJ-44 must be completed. A civil cover sheet was provided. A copy of the form letter is attached as Exhibit #60.

The Middle District of Florida provided the following:

Drusky v. The 100th U.S. Congress, et al. Case No. 99-127-CIV-J-20C. In Forma Pauperis Denied, Complaint Dismissed With Prejudice on Feb. 16, 1999. — Donald S. Drusky v. USX Corporation and United Steelworkers of America. Case No. 99-128-CIV-J-21A. In Forma Pauperis Denied, Complaint Dismissed With Prejudice on February 24, 1999. — Donald S. Drusky v. George Bush, et al. Case No. 99-129-CIV-J-10C. Notice of Designation Under Local Rule 3.05. — Donald S. Drusky v. George Bush, et al. Case No. 99-129-CIV-J-10C. In Forma Pauperis Denied. Complaint Dismissed With Prejudice on February 26, 1999. — Donald S. Drusky v. Janet Reno, etc., et al. Case No. 99-130-CIV-J-10C. Notice of Designation Under Local Rule 3.05. — Donald S. Drusky v. U.S. Attorney General Janet Reno, et al. Case No. 99-130-CIV-J-10C. In Forma Pauperis Denied, Complaint Dismissed With Prejudice on February 26, 1999. Attached to the Order was a Civil Appeals Checklist. Also attached to the Order was a Notice To Prisoners Concerning Civil Appeals by Clerk Miguel J. Cortez of the United States Court of Appeals for the Eleventh Circuit. — Donald S. Drusky v. Federal Communications Commission, et al. Notice of Designation Under Local Rule 3.05. No Order came under Respondent FCC, Case No. 99-131-CIV-J-10C. — However, under identical Case No. 99-131-CIV-J-10C, with caption Donald S. Drusky v. The 100th Congress, etc., et al., came an Order, which Denied motion to proceed in forma pauperis and Complaint is Dismissed With Prejudice on February 26, 1999, that duplicated Order by a different judge on Case No. 99-127-CIV-J-20C. — Donald S. Drusky v. The Sovereign People of the United States of America. Case No. 99-132-CIV-J-21B. In Forma Pauperis Denied, Complaint Dismissed With Prejudice on February 24, 1999. — Donald S. Drusky v. God. Case No. 99-133-CIV-J-10A. Notice of Designation Under Local Rule 3.05. — Donald S. Drusky v. God. Case No. 99-133-CIV-J-10A. In Forma Pauperis Denied, Complaint Dismissed With Prejudice on February 26, 1999. This group of sequenced documents from the Middle District of Florida is attached as Ex. #61

The Southern District of Georgia returned the petition. The original mailing envelope to the Court was stamp dated by the Clerk as 1999 FEB 12. The Clerk also sent four sets of the same packet titled "Instructions For Filing Complaints By Prisoners Under The Civil Rights Act, 42 U.S.C. § 1983" in the United States District Court for the Southern District of Georgia. A copy of the full ten page packet is attached as Exhibit #62, and is incorporated by reference herein. Exhibit #61 is also incorporated by reference herein over the Middle District of Florida. Exhibit #62, by the Southern District of Georgia, is superimposing and superinducing that Donald S. Drusky has the status of some sort of an innocent prisoner, in an invisible prison, serving the time of the guilty, due to matters set forth in the overall petition to the 88 U.S. District Courts of the 50 states of the United States of America. Only one set of Exhibits #58, #59 and #60 will be received by the Eleventh Circuit Court of Appeals. One set of Exhibits #61 and #62 will be received by all eleven Circuit Courts. No response from the Middle and Southern Districts of Alabama, and the Northern and Middle Districts of Georgia. The District Courts of Northern Alabama, Northern and Southern Florida, and Southern Georgia will have their original petitions returned to them.

Addendum to the responses of the District Courts: After the responses of the District Courts covering the eleven circuit courts were complete and the writ put on hold at that point, Donald S. Drusky received the following responses:

Judge J. Pollak of the Eastern District of Pennsylvania, over Civil Action No. 99-775, issued a three page order dated August 18, 1999. The order closed as follows: "Therefore, It Is Hereby Ordered That leave to proceed in forma pauperis is denied and the Complaint is dismissed." A copy of the 3 page order is attached hereto as Exhibit #63, and is incorporated by reference herein. All eleven circuit courts will be provided with one copy each of Exhibit #63.

Michael J. Melloy, Chief Judge of the United States District Court for the Northern District of Iowa issued a 2 page "Initial Review Order" on Case No. C99-0033-MJM. The order treated the action as one brought under 42 U.S.C. § 1983. Lastly, the relief sought by the plaintiff: removal from office, criminal prosecutions, mandamus against public officials, and "a divine redress from Defendant God," is unavailable under 42 U.S.C. § 1983. The complaint is dismissed as frivolous. Concluding: "The Clerk shall file the petition without payment of fees for the sole purpose of making a record." Clerk James D. Hodges entered a "decision by court", which Ordered And Adjudged: "Plaintiff take nothing, and this complaint is dismissed as frivolous." A copy of the 3 page document is attached as Exhibit #64, and is incorporated by reference herein. All eleven circuit courts will be provided with only one set of the 3 page document from the Northern District of Iowa. The first response from the Northern District of Iowa is listed under the Eighth Circuit, and is Exhibit #38.

## II. Statement of Facts

The facts necessary to an understanding of the issues presented by this application are as follows:

Initially appended to this application was a 12 page copy of the petition to the 88 U.S. District Courts of the 50 States of the United States of America, along with the February 5, 1999 affidavit in forma pauperis, and a copy of a letter on exhibit dated August 24, 1987 by Deputy Clerk A.J. Rambow of the United States District Court for the District of Columbia. The petition before the 88 U.S. District Courts contained 7 numbered sections. Within each section was a part referred to as "The Factual Setting." Those seven factual settings are incorporated by reference herein. Arising from the factual setting of the petition were the summary of the responses of the United States District Courts situated under their respective Circuit Court of Appeals listed under I. Order and Opinion Below. The summary of the responses of the U.S. District Courts (are incorporated by reference herein) that have respectively responded on behalf of their particular federal district were outlined with a total of 64 numbered exhibits. The details of the exhibits were all incorporated by reference. The U.S. District Courts that failed to respond were also listed under the summary of responses regarding each Circuit Court. Under the Third Circuit covering the Districts of Delaware, New Jersey and Pennsylvania, it stated as follows: "No response from the Eastern District of Pennsylvania." The late response from the Eastern District of Pennsylvania is attached as Exhibit #63. One of the District Courts not responding evidently referred their petition to the U.S. District for the District of Columbia.

Chief Judge Norma Holloway Johnson issued a one page form order dated 2-18-99. The petition was returned for two reasons. One reason checked was that the Court does not accept double sided pleadings. The reverse side of the order contained information on Prison Litigation Reform Act of 1995. A copy of the double sided document is attached as Exhibit #65, and is incorporated by reference herein. All eleven circuit courts will be provided with only one copy of the document. In prison you exist and rot away. Donald S. Drusky is not living his life, but is existing and rotting away.

## III. Statement of Issues Presented

The issues presented by this application are as follows:

The overall petition to the 88 U.S. District Courts was briefly and efficiently reduced down into a 3 page order from the Eastern District of Pennsylvania, which has been attached as Exhibit #63, and is incorporated by reference herein. All the matters set forth under Exhibit #63 are still pending and are a great issue. All 88 U.S. District Courts will receive a reduced in size copy of Exhibit #63. Greatly needed specific "Legislation" and "Amendments to the Constitution" are extremely important issues. Exhibits #64 and #65 pertain to 42 U.S.C. § 1983, which amount to Donald S. Drusky still serving the time of the officials of the former U.S. Steel Corporation (now USX) and the United Steelworkers of America that committed subornation of perjury, and perjury, and conspiracy to commit perjury in Civil Action 68-124 of the year 1968, and many other crimes since then. All 88 U.S. District Courts will receive reduced in size copies of Exhibits #64 and #65.

Within page 6 of the reduced in size petition dated August 14, 1987 to the U.S. District Court for the District of Columbia, it reflected upon U.S. Steel and the United Steelworkers of America conspiracy to commit perjury in Civil Action 68-124 in the Western District of Pennsylvania. The District of Columbia received a full sized petition and many full sized exhibits along with the reduced in size Exhibits "A" and "B," and Exhibits "AA" and "BB." Virtually all members of Congress received copies of the reduced in size petition and exhibits. The "freedom" of Donald S. Drusky and the imprisonment of all those responsible for perjury in 68-124, and all other crimes thereafter, and all others that compounded the crimes as outlined in the overall petition to the 88 U.S. District Courts is a great and very important issue. Donald S. Drusky will be "out of prison" when the exchange is made for the real criminals to serve their time. Many criminals have lived out their lives escaping imprisonment, and are now deceased, which is another great issue subject to redress. The petition to the U.S. District Court for the District of Columbia became the subject of the petition before the 88 U.S. District Courts of the Fifty States of the United States of America. Ultimately, the 88 U.S. District Courts failed to promptly imprison officials of the USX Corporation and the United Steelworkers of America, and failed to prosecute many federal and state officials responsible for "misprision of felony," which denied freedom to Donald S. Drusky. Once a felon who committed a crime reflecting upon Donald S. Drusky, and the felon dies before being brought to justice, it denied Donald S. Drusky the right to bring the felon to justice. There is no closure and the problem remains. Meanwhile Congress does not care about anything, and that is a great issue. This permitted day-to-day irreparable damage to mount continually against Donald S. Drusky, and this is also a great issue. Since the illegal discharge on August 8, 1966 by U.S. Steel, while picketing the United Steelworkers of America for *250 that the union owed Donald S. Drusky, which Donald S. Drusky will donate to Children's Hospital, it has cost Donald S. Drusky over 34 years of his youth, health and life, and this is the greatest issue of all, and subject to redress. The USX Corporation and the United Steelworkers of America have ruthlessly compounded their injustices by holding Donald S. Drusky in poverty for 34 years to hinder Donald S. Drusky's effort to bring the company and union to civil and criminal justice. The matter was compounded when no "public funds" were offered by any level of government, and is an issue of great magnitude, especially when it helped ruin the life of Donald S. Drusky.

## IV. Statement of Relief Sought

The relief sought by petitioner herein is as follows:

Sections One, Four, Five and Seven of the original petition to the 88 U.S. District Courts list the "Claim of Relief Sought," and are incorporated by reference herein. Under Section Six at the bottom of page 8, the "Constitutional and Legislative Solutions Sought" are listed in detail,

and are incorporated by reference herein. Sections Two and Three list no "Claim of Relief Sought." However, under Section Four, it reads as follows:

Claim of Relief Sought: Donald S. Drusky and the People seek a court order to compel U.S. Attorney General Janet Reno and the 88 U.S. Attorneys of their respective districts to prosecute all Defendants cited in Sections Two and Three of this petition for violations set forth in the Legal Setting of Sections Two and Three. Additionally, the duty of the Defendants of Section 4 is clear and indisputable.

Exhibit #63 describes in brief detail, section by section, the relief sought, and is incorporated by reference herein. In any event, any damage award over the entire petition, including the exhibits, are yet to be accurately determined. Any claim under 42 U.S.C.§ 1983, and/or claim against the United States are yet to be accurately determined.

V. Reasons Why Writ Should Issue

The reasons why the writ requested herein should issue are:

1. At the bottom of page 12 of the petition to the 88 U.S. District Courts, the "Application for Appointment of Counsel" reads as follows: "Petitioner Donald S. Drusky and the Sovereign People of America are applying to each of the 88 U.S. District Courts for "Appointment of Counsel" to represent this case before the 88 U.S. District Courts." Some Courts denied appointment of counsel, but the request for appointment of counsel was mostly ignored. There was not enough space left on page 12 of the petition to enter a formal demand for "Jury Trial," and no jury trial was conducted in any of the 88 U.S. District Courts.

2. Next was a "Motion for Leave to Proceed on Public Funds," which reads as follows: "Public Funds belong to the Sovereign People and the people move that this money be made available for use to pay court fees and costs, counsel." There may be a controversy over actual possession of public funds, but all the sovereign people were in this instance entitled to "a piece of the pie." Under this vital circumstance, the courts "could not discretionally" dismiss the case. The Sovereign People of America are without knowledge of their case before the 88 U.S. District Courts, and must proceed on public funds, not in forma pauperis. With knowledge of their case, the people will be able to pay the fees and costs, counsel. The "Motion for Leave to Proceed on Public Funds" was totally ignored.

3. Petitioner Donald S. Drusky made a "Motion to Proceed in Forma Pauperis," which reads as follows: "Petitioner Donald S. Drusky moves for leave to proceed in forma pauperis under U.S.C.A. 28 § 1915, and in support thereof attaches the affidavit by Donald S. Drusky." Thinking the petition carried over at that point to the "Affidavit in Forma Pauperis" dated "This 5th day of February 1999," the 12 page petition was left undated, but should be deemed with the date of February 5, 1999. At least 7 U.S. District Courts granted the motion.

4. The basic problems arising amongst the responses of the responding courts are reduced down as follows: Parts of the case or the overall case were "dismissed as frivolous," or "dismissed with prejudice," or "dismissed without prejudice." Some courts denied the motion to proceed in forma pauperis, but at least 7 courts did, but dismissed the case. In any event, a bank could pay the filing fee at each of the 88 U.S. District Courts, but Donald S. Drusky could not. Even if Donald S. Drusky was still employed, Donald S. Drusky could pay the filing fee for the U.S. District Court for the Western District of Pennsylvania, but could not pay the filing fee at the remaining 87 U.S. District Courts. However, the "Sovereign People" have a bank called the "U.S. Treasury," and can make withdrawals properly any time they wish to pay the filing fee and costs, and to pay for counsel, with "Donald S. Drusky as a rider."

5. Attached to the 12 page petition to the 88 U.S. District Courts was an "Affidavit in Forma Pauperis." This affidavit amounts to Donald S. Drusky being in a state of bankruptcy, which was brought about by the USX Corporation and the United Steelworkers of America by getting certain banks to work with them mostly, besides other unfair tricks, to not grant any request for an increase in credit, or to issue any automatic increases in credit, as Donald S. Drusky had basically the status of being a good credit risk. In reality, Donald S. Drusky had great future financial potential, and was no credit risk at all.

6. To hinder Donald S. Drusky's pursuit of justice against the USX Corporation and the United Steelworkers of America, the company and union knocked out the banks. Sears was a different situation but fairly brought the account to an end. Something may have been done at various Credit Reporting Agencies to blacklist Donald S. Drusky from gaining additional credit cards or loans from other banks. I assume, it was a major problem for the Comptroller of Currency to deal with, but Donald S. Drusky could not take on this problem and sort out the various circumstances of the problem, while researching and drafting the petition to the 88 U.S. District Courts, and thereafter work on a writ to 11 circuit courts, and maintain other problems as well. There was an overload of legal matters that Donald S. Drusky could not contend with all of them simultaneously.

7. One account not listed in the "Affidavit in Forma Pauperis" is the Dollar Bank located in Pittsburgh, Pennsylvania. It was a revolving account with a $2000 credit limit for a 5 year period, which expired. The application for an extension was denied after all 60 payments were previously paid for by automatic deduction from Donald S. Drusky's checking account at Dollar Bank, where Donald S. Drusky's monthly Social Security Disability Check for $777 was made by Direct Deposit at Dollar Bank. Presently, the Social Security check is for $797 by Direct Deposit. Dollar Bank still receives their automatic payment of $38.97 per month. Attached as Exhibit #66 is a copy of the latest monthly statement from Dollar Bank dated 9-25-2000, and is incorporated by reference herein. A copy of Exhibit #66 will be received by all 11 circuit courts and all 88 U.S. District Courts. It shows that Donald S. Drusky has a new balance of $598.23. It also shows under "Available Credit" 0. USX Corporation and the United Steelworkers of America worked together to deny Donald S. Drusky "available credit," which would now be $1401.77.

8. While monitoring my mail and tapping my phone with the aid of Bell Atlantic-PA, USX and the United Steelworkers became aware of my credit, which was reestablished in the fall of 1990 since the August 8, 1966 discharge by U.S. Steel. Over a long distance phone call to a model train dealer in New York, he asked, "Where are you getting all this money?" Donald S. Drusky [illegible] that (as near as I can remember), "I have credit cards and get increases in credit and occasionally get new credit cards." The USX Corporation and the United Steelworkers of America also got most of their information from James Jackson, who is the owner of the Hobbymasters of Pittsburgh, Inc. - Hobby Shop, where I bought accessories for model trains. It was through many of my appearances at the Hobbymasters Hobby Shop in Pittsburgh, that USX and the United Steelworkers gained vast knowledge from James Jackson and his employee Tim about my credit cards and information about my case against U.S. Steel and the United Steelworkers. Donald S. Drusky fully trusted James Jackson, who turned traitor and worked against Donald S. Drusky even though Donald S. Drusky was one of his best customers. James Jackson is the major party giving information to agents acting on behalf of the USX Corporation and the United Steelworkers of America "knocking out" the banks permanently. The three main reasons why the company and union took over the banks are to hold Donald S. Drusky in poverty, to hinder Donald S. Drusky's pursuit of justice against them, and to make it difficult to buy expensive Standard Gauge and O gauge Tin Plate Model Electric Trains and accessories. The USX Corporation and the United Steelworkers of America also made a hobby out of sabotaging and ruining my train collection. James Jackson once even admitted to Donald S. Drusky, "They (MTH Electric Trains) keep sending us seconds." I see what I can salvage.

9. Repeating more specifically, "The Motion to Proceed in Forma Pauperis" was granted by the Northern District of New York - under the 2nd Circuit, the District of South Carolina and Southern District of West Virginia - under the 4th Circuit, the Western District of Kentucky - under the 6th Circuit, the Eastern District of Arkansas and the District of North Dakota and the Northern District of Iowa - under the 8th Circuit. All the other responding Courts ignored the motion, denied the motion, or in general dismissed case as frivolous. The District of South Carolina - 4th Circuit, Southern District of West Virginia - 4th Circuit and Middle District of Florida - (11th Circuit) used the term "dismissed with prejudice" and operates as a bar to future action. The District of New Hampshire and the Southern District of Iowa (1st Circuit and 8th Circuit respectively) used the term "dismissed without prejudice" and does not bar subsequent suit upon the same cause of action. The specific reasons why the writ should be granted are that the responding Courts "grossly and clearly abused their discretion" over the various ways they responded to the original petition. Of course, Courts not responding also abused their discretion to not respond at all. Specifically, "the recipients of the petition" grossly and clearly abused their discretion" by not properly and uniformly proceeding on the petition.

10. The opening section of this writ was titled "Petition for Writ of Mandamus." Within this opening section, Donald S. Drusky and the People sought that the Clerk of Court must serve process upon the defendants of the first six sections of the petition. Process must be served by the Clerk of Court of all 88 U.S. District Courts. God is a defendant in the 7th section of the petition. Under the Rules of Civil Procedure, publication of a summons is the process of giving it currency as an advertisement in a newspaper, under the conditions prescribed by law, as a means of giving notice of the suit to a defendant upon whom service cannot be made. (See page 1228 of Black's Law Dictionary at "Service of process" under Publication. It also refers to e.g. New York CPLR § 315. See also Service (Service by publication). Specifically, the 11 Circuit Courts must direct all 88 U.S. District Courts to provide publication of suit and summons regarding Defendant God in newspapers all over the 50 states of the United States of America. Under "notes of decisions" of either the U.S.C.A or the United States Code, Donald S. Drusky came across the words "Divine Redress" captioning that particular note of decision at a certain number. There was only one citation listed under "Divine Redress," and it was as follows: Stephens v. Herring, 827 F. SUPP. 359 (E.D. Va. 1993). Donald S. Drusky did not copy the page from "notes of decisions" but copied the Stephens v. Herring citation. Upon review at home, the words "Divine Redress" were not stated within the citation even though the page on the note of decision stated "Divine Redress", which was evidently diagnosed by the person drafting the notes of decisions for the law book. Evidently, Arizzel Stephens was entitled to a divine redress. On page 363 under Stephens v. Herring in the top left column, one sentence read as follows: "As Lord Coke explained, judges of the King's Bench were accountable "to God and the King" not to each other." The question is, "What page of listed "Divine Redress" under the notes of decisions?" The next question is, "Which of the 88 U.S. District Courts, or the 11 Circuit Courts can find the citation that pointed Donald S. Drusky to Stephens v. Herring?" This is one citation that U.S. Magistrate Judge Joseph R. Mc Crorey of the District of South Carolina did not find. See Exhibit #14 under the 4th Circuit. In any event, if Arizzle Stephens was entitled to a "divine redress" under his circumstances, then Donald S. Drusky is entitled to a "divine redress" under the circumstances of this overall case. In any event, upon the Stephens v. Herring case, which has a particular and important bearing on this writ, the writ must be granted.

11. The petition before the 88 U.S. District Courts centered on the fact that the fedral and state governments do not legislate the redress of grievances on a regular basis. While responding courts listed many citations, which essentially worked in favor of the People and Donald S. Drusky, the responding courts could not produce an abundance of "records of redress", so the petition was extremely meritorious, and could not be dismissed as frivolous. Congress cannot produce any record of redress except for the internment of Japanese during World War II. A few states may be able to present a few records of redress that could not fill one page of a book, while the grievances not redressed could fill a library. They are not redressing grievances, whether it is a civil grievance, or a criminal grievance against a felon.

Wherefore, the petition regarding the first 7 sections of the petition to the 88 U.S. District Courts is not frivolous, and must be deemed meritorious by the 11 Circuit Courts, which must grant the writ.

Addendum to "Reason Why the Writ Should Issue": Long ago, Donald S. Drusky reviewed U.S. Magistrate Judge Joseph R. Mc Crorey's Report and Recommendation seen as Exhibit #14 under the 4th Circuit. Upon finishing this section of the writ, Donald S. Drusky decided to review again Exhibit #14. Mc Crorey began his report on Claim No. 7 with "God" as a defendant on pages 11 thru 14. A copy of the "reduced in size" pages 11, 12, 13 and 14 is attached as Exhibit "A", and is incorporated by reference herein. A copy of Exhibit "A" will be received by all 88 U.S. District Courts. All 11 U.S. Circuit Courts will receive the full Exhibit #14. On page 13, under a series of citations regarding ecclesiastical courts, Donald S. Drusky was amazed to see that McCrorey points out citation cf. Stephens v. Herring, 827 F. SUPP. 359, 1993 U.S. Dist. Lexis ® 15701 (E.D. Va. 1993). Sorry for the mistake. Donald S. Drusky did not remember the citation, and could not remember them all, but should have checked Exhibit #14 to be sure. So without knowledge or remembering Mc Crorey's citation, Donald S. Drusky invoked the same citation in favor of granting the writ, which strengthens the responses of the District Courts having cited various or similar citations amongst each other during their purposeful abuse of discretion dismissing the case to prepare the case for the eleven U.S. Circuit Courts of Appeal. It irreparably cost Donald S. Drusky another extremely vital 20 months of freedom, health and age. Reduced Ex. #14 replaces Exhibit "A."

The USX Corporation and the United Steelworkers of America enjoyed the decision. Whereupon, they continued their abuse and harassment of their victim Donald S. Drusky, which has been going on since the August 8, 1966 discharge by U.S. Steel. It kept officials of the corrupt USX Corporation and the United Steelworkers of America out of prison for another 20 months. It denied Donald S. Drusky 20 months of "due process" time needed to carry out the civil and criminal prosecution of officials of the USX Corporation and the United Steelworkers of America and others involved with them. As a consequence, instead of Donald S. Drusky "working over" the USX Corporation and the United Steelworkers of America in the courts, the USX Corporation and the United Steelworkers of America were "working over" Donald S. Drusky out of court. The 88 U.S. District Courts played into the hands of the USX Corporation and the United Steelworkers of America by not immediately opening up the case. Thereafter, the USX Corporation and the United Steelworkers of America made it a point to "zero-in" on Donald S. Drusky. The 88 U.S. District Courts put the life of Donald S. Drusky into the hands of the notorious USX Corporation and the United Steelworkers of America, which are both ruthlessly taking advantage of Donald S. Drusky to "win the case" before the 88 U.S. District Courts.

Furthermore, one style of caption should be adopted to uniformly proceed on the case. The caption used by U.S. District Judge Norman A. Mordue of the Northern District of New York, seen on Exhibit #7 under the 2nd Circuit, appears to be the best caption, while the report by U.S. Magistrate Judge Joseph R. McCrorey, seen as Exhibit #14 under the 4th circuit, appears to be the best detailed and thorough report on the overall original complaint before the 88 U.S. District Courts. Combining Exhibits #7 and #14 appears to be the best uniform method ~~method~~ to approach the overall case before the 88 U.S. District Courts.

## VI. Exhibits

Exhibit #14 of this writ contains 16 pages referred to as the Report and Recommendation by U.S. Magistrate Judge Joseph R. McCrorey. Appended to the document was a set of 8 pages of exhibits, which contained 4 court opinions. Page one cited Donald S. Drusky, Plaintiff, V. American Bar Association et al, Defendants. This was entered as docket No. 71-C-309 by the U.S. District Court for the Northern District of Illinois, Eastern Division. Pages two and three cited Donald S. Drusky, Plaintiff, v. Henry Shore, Regional Director, National Labor Relations Board, Pittsburgh, Pennsylvania, Defendant. This was docketed as No. 19,220-3A by the U.S. District Court for the Western District of Missouri, Western Division. Pages four, five and six cited Donald S. Drusky, Plaintiff, V. The Judges of the Supreme Court et al, Defendants. This was docketed as Case No. 71-249 by the U.S. District Court for the Western District of Pennsylvania, which can also be seen as Exhibit "AA" of the reduced in size exhibits attached to the original petition to the 88 U.S. District Courts. Pages seven and eight cited Donald S. Drusky, Plaintiff, V. American Bar Association et al., [FN*], Defendants. This was docketed as Civil No. 70-160 by the U.S. District Court for the Western District of Pennsylvania. The National Labor Relations Board were named as Defendants in all 4 cases cited within Exhibit #14. Apart from the infallible interpretation of the 4 court opinions, none of the reports from the National Labor Relations Board received by members of Congress on behalf of Donald S. Drusky were infallibly interpreted by any United States Court. Exhibits "B" and "BB" of the reduced in size petition to the 88 U.S. District Courts contains views of some reports from the National Labor Relations Board. ——— Wherefore, it is the responsibility of the eleven U.S. Circuit Courts of Appeals to make an infallible interpretation of court opinions prior to the complaint before the 88 U.S. District Courts, along with the infallible interpretation of reports received by members of Congress from the National Labor Relations Board, and to finally provide an infallible interpretation of the responses on exhibit from the responding courts over the petition to the 88 U.S. District Courts.

Ultimately, the 11 circuit courts along with the 88 district courts of the 50 states are defendants in Civil Action 71-249 at the U.S. District Court for the Western District of Pennsylvania. The newest version of 71-249 can be seen within Exhibit #7 by U.S. District Judge Norman A. Mordue of the U.S. District Court for the Northern District of New York. It is captioned as the "Lead Case" under 5:99-CV-230 (NAM) (GJD). All 11 U.S. Circuit Courts will receive a complete full sized 9 page document by Judge Mordue along with the Clerk's covering document. All 88 U.S. District Courts will receive a copy of only the reduced in size version of the 9 page document and will still be referred to as Exhibit #7 (minus the Clerk's covering document).

Pages seven and eight of the 8 page set of exhibits cited Donald S. Drusky, Plaintiff, v. American Bar Association et al under Civil No. 70-160. The National Labor Relations Board was a Defendant in the case and entered a 5 page Memorandum, which they attached as Exhibit "A" in Civil Action 70-160. Attached as Exhibit #67 is a reduced in size double sided copy of the NLRB's Exhibit "A" in 70-160. It lists a total of 50 charges submitted to the National Labor Relations Board by Donald S. Drusky. Approximately 400 charges were either filed or submitted to the National Labor Relations Board. The full sized 5 page set of Exhibit #67 will be received by the eleven U.S. Circuit Courts, while the 88 U.S. District Courts will receive the reduced in size version. Attached as Exhibit #68 is a reduced in size set of 3 letters from the National Labor Relations Board responding over two letters to President Richard M. Nixon and one letter to Vice President Spiro T. Agnew over a charge against Chief Judge Edwin M. Curran of the U.S. District Court for the District of Columbia, and a charge against "The Offices of Senator Hugh Scott and former Senator Joseph Clark." Exhibit #68, in a reduced in size version, will be received by all 11 U.S. Circuit Courts and all 88 U.S. District Courts. None of the parties charged on Exhibits #67 and #68 experienced having the charges against them infallibly interpreted in any United States Court. However, at this point, to add further emphasis and to help clarify and assist the eleven U.S. Circuit Courts in interpreting the reports from the National Labor Relations Board, Donald S. Drusky submits the following: Attached as two sided Exhibit #69 is a reduced in size copy of U.S. Steel Company Foreman E. R. Daniels' August 8, 1966 letter and its attachment discharging Donald S. Drusky. Also viewed is a reduced in size copy of A. J. Valicenti's letter denying lost time wages, which led to E. R. Daniels illegally discharging Donald S. Drusky. E. R. Daniels of U.S. Steel and A. J. Valicenti and Charles Maniccia were all suborned to commit perjury in 68-124. A. J. Valicenti was President of Local 1219 of the United Steelworkers of America, while Charles Maniccia was Chairman of the Grievance Committee. Daniels' and Valicenti's letters are on the front side of Exhibit #69. Both are now deceased. On the reverse side of Exhibit #69 is a reduced in size copy of a two report (minus its attached statement) dated December 27, 1967, which the late Senator Robert F. Kennedy received on behalf of Donald S. Drusky from the National Labor Relations Board. Exhibit #69 will be received by all 11 U.S. Circuit Courts and all 88 U.S. District Courts. From the bottom paragraph of the report, in pertinent part, are the words, "at most, it appeared that the Union had been inept in the handling of his grievance." Attached as a reduced in size two sided Exhibit #70 is a copy of two unfair labor practice cases at the National Labor Relations Board that makes it clear that Donald S. Drusky was illegally discharged by U.S. Steel on August 8, 1966. First case on view is the Falstaff Brewing Company and the Brewers and Malters Local Union 6. Second case on view is the Dura Lamp Company and the Teamsters Industrial and Allied Workers Local No. 97, Teamsters. These citations are self explanatory. Added on view is a copy of page 5 of the layman's manual of the National Labor Relations Act, which states in pertinent part: "Employees who strike to protest an unfair labor practice committed by their employer are called unfair labor practice strikers. Such strikers can be neither discharged nor permanently replaced." Also on view is a copy of 4 citations on picketing, which is a form of the constitutional right of freedom of speech, which was violated by the U.S. Steel Corporation and the United Steelworkers of America. A copy of Exhibit #70 will be received by all 11 U.S. Circuit Courts and all 88 U.S. District Courts.

Claim of Relief: On page 8 of the reduced in size petition to the U.S. District Court for the District of Columbia dated August 14, 1987, which was attached as an exhibit to the petition to the 88 U.S. District Courts shows in the "Claim of Relief" regarding Defendant NLRB: "Compel NLRB to initiate remedial action against all participants unlawfully withheld. Plaintiff demands USX Corporation and the United Steelworkers of America pay a full 21 years of back pay for each day of suffering since August 8, 1966, which has ruined the life of Donald S. Drusky." The matter has now extended to October 2000 for a total of 34 years and 2 months of back wages to be paid at a rate of 34 years and 2 months lost wages per day for each day over the last 34 years and 2 months. About 400 charges were filed or submitted at the NLRB. I did not have time or money to get formally on record many more unfair labor practices during 28 or 29 years of past time, but may have some notes on some of them. The case on "AA" Exhibit before the U.S. District Court for the District of Columbia was, in effect, "criminally defaulted" by the USX Corporation and the United Steelworkers of America, and they are liable for the "default." The formula of 34 years and 2 months back pay should also apply to all parties participating in the continuing unfair labor practice affecting interstate commerce, which includes the NLRB through the United States. Those that don't have the ability to pay the 34 year and 2 month formula per day of back wages, should then be paid by the United States. Donald S. Drusky doesn't need the money and will never be able to spend it, but justice must be done. At this point of time, Donald S. Drusky is not really ready to live, but almost ready to die.

Long ago, while picketing in Pittsburgh, an agent obviously acting on behalf of the USX Corporation and the United Steelworkers of America was sent to ask Donald S. Drusky, "Why don't you settle this in a Small Claims Court?" Here are the facts of a small claim. Let's suppose that both the USX Corporation and the United Steelworkers of America each pay Donald S. Drusky one penny (1¢) each for their unfair labor practice of August 8, 1966 respectively in violation of Sections 8 (a) (1) and 8 (a)(3), and 8 (b) (2) of the National Labor Relations Act to satisfy the company and union. To satisfy Donald S. Drusky, let's suppose that the company and union then pay 2¢ each for the second unfair labor practice, then pay 4¢ apiece for the 3rd unfair labor practice and so on keep doubling itself. By the 30th number, it would be $4,168,709.12. There were approximately 400 Charges filed or submitted. Donald S. Drusky prefers the formula of 34 years and 2 months lost wages per day for each 5 day period at 52 weeks a year for 34 years and 2 months to be paid each by the USX Corporation and the United Steelworkers of America for each court "criminal default" that they committed to obstruct justice regarding, specifically, any case with the National Labor Relations Board as a Defendant or Respondent.

The overall and complete redress from all sources is vast and yet to be exactly determined. However, at this point, to be incorporated as part of the redress from the United States of America and, eventually, the Commonwealth of Pennsylvania, Donald S. Drusky attaches as Exhibit #71 a copy of a reduced in size petition dated May 21, 1999 to Mike's Train House, President Bill Clinton and Pennsylvania Governor Tom Ridge, and a copy of a reduced in size petition dated 3-27-00 to Mc Intosh Laboratory Inc., President Bill and Pennsylvania Governor Tom Ridge. Exhibit #71 will be received by all 11 circuit courts and all 88 district courts. Both petitions are incorporated by reference herein. A partial list of Tinplate Trains and Accessories by MTH Electric Trains can be seen on the reverse side of Exhibit #71. The "Model Train" redress from the United States and, eventually, Pennsylvania shall be 100 sets or cases of each item seen on the partial listing of Exhibit #71 in every original color combination, plus some selected colors of Donald S. Drusky's choice, of every tinplate or die cast train or accessory ever made by Lionel in 'O' Gauge and Standard Gauge Tinplate and all 'S' Gauge, 'HO' Gauge and Standard Gauge Tinplate by American Flyer. If the petition dated August 14, 1987 to the U.S. District Court for the District of Columbia was promptly and properly processed, Donald S. Drusky would have had a great model train collection by now. Wherefore, since the case was "criminally defaulted" by the USX Corporation and the United Steelworkers of America, they must also provide as part of redress 100 sets or cases of each tinplate or die cast train or accessory. In addition, the company and union must provide 50 sets each of the Mc Intosh Stereo Components. Meanwhile, MTH must stop production after present model production is complete to begin production of certain items in multiples of 400 sets or cases of each. It also includes Lionel's production of Tinplate and their "Lionel Classics". Finally, I asked Mc Intosh to hold at least 6 units of the MC 2000 Tube Amplifier. Received no response.

The USX Corporation and the United Steelworkers of America were successful in their 34 year long effort causing the National Labor Relations Board and the Federal Courts to withhold justice. Donald S. Drusky is keenly aware that the company and union have monitored Donald S. Drusky extremely well, and will attempt to use their political power to defeat this writ in all eleven U.S. Circuit Courts of Appeals. The specific reasons why the writ should be granted are that the responding U.S. District Courts "grossly and clearly" abused their discretion over the various ways they responded to the petition.

Wherefore, the Sovereign People of the Fifty States of the United States of America and Donald S. Drusky respectfully pray that a writ of mandamus be issued by the eleven U.S. Circuit Courts of Appeals directing the respondents, the Honorable Judges of the 88 U.S. District Courts, to uniformly docket, serve process and proceed with the administration of justice, and for such other relief and further relief as all eleven U.S. Circuit Courts of Appeals may deem proper. Donald S. Drusky is asking for an advance under the Tort Claims Act to pay gas and electric bills because Duquesne Light and Equitable Gas shut off the electric and gas. Attached Exhibit #72 contains shut-off notices. Pay also all medical bills occurring meanwhile. Pay all medical expenses until death of D. S. Drusky.

Motion: The Sovereign People move for leave to proceed on appeal on public funds.

Motion: Donald S. Drusky moves for leave to proceed on appeal in forma pauperis.

Certificate of Service: On the 22nd day of November 2000, I served a copy of this writ and exhibits as outlined upon all 88 U.S. District Courts.

Respectfully submitted, Donald S. Drusky

Dated: November 22, 2000

U.S. DISTRICT COURT – N.D. OF N.Y.
FILED
MAR - 5 1999
AT ___ O'CLOCK
Lawrence K. Baerman, Clerk – Syracuse

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DONALD S. DRUSKY,
Plaintiff,

-V.-

THE JUDGES OF THE SUPREME COURT, ELEVEN U.S. CIRCUIT COURTS OF APPEAL and EIGHTY-NINE U.S. DISTRICT COURTS; UNITED STATES; DISTRICT OF COLUMBIA; U.S. STEEL CORP.; I. W. ABEL; JOSEPH MOLONY of the United Steel Workers of America and the NATIONAL LABOR RELATIONS BOARD,
Defendants.

5:99-CV-230 (NAM)(GJD) LEAD CASE

DONALD S. DRUSKY,
Plaintiff,

-v.-

OFFICE OF THE PRESIDENT OF THE UNITED STATES; UNITED STATES OF AMERICA; RONALD REAGAN, as president of the United States; GOD,
Defendants.

5:99-CV-231 (NAM)(GJD) MEMBER CASE

DONALD S. DRUSKY,
Plaintiff,

-v.-

THE FIFTY STATES OF THE UNITED STATES OF AMERICA,
Defendants.

5:99-CV-232 (NAM)(GJD) MEMBER CASE

DONALD S. DRUSKY,
Plaintiff,

-v.-

THE PEOPLE OF THE FIFTY STATES OF THE UNITED STATES OF AMERICA; 100th U.S. CONGRESS THRU 105TH CONGRESS,
Defendants.

5:99-CV-233 (NAM)(GJD) MEMBER CASE.

AO 72A (Rev.8/82)

DONALD S. DRUSKY,
Plaintiff,

-v.-

THE PEOPLE OF THE FIFTY STATES OF THE UNITED STATES OF AMERICA; USX CORP. and UNITED STEELWORKERS OF AMERICA,
Defendants.

5:99-CV-234 (NAM)(GJD) MEMBER CASE

DONALD S. DRUSKY,
Plaintiff,

-v.-

THE PEOPLE OF THE FIFTY STATES OF THE UNITED STATES OF AMERICA; GEORGE BUSH, President; UNITED STATES SENATE AND HOUSE OF REPRESENTATIVES OF THE 100TH CONGRESS; EDWIN MEESE, III, THE GOVERNORS AND STATE ATTORNEY GENERAL as individuals of the Fifty States of the United States of America as of June 1988,
Defendants.

5:99-CV-235 (NAM)(GJD) MEMBER CASE

DONALD S. DRUSKY,
Plaintiff,

-v.-

THE PEOPLE OF THE FIFTY STATES OF THE UNITED STATES OF AMERICA; JANET RENO, United States Attorney General; THE U.S. ATTORNEY OF EACH DISTRICT COURT OF EIGHTY EIGHT U.S. DISTRICT COURTS OF THE UNITED STATES OF AMERICA,
Defendants.

5:99-CV-236 (NAM)(GJD) MEMBER CASE

2

AO 72A (Rev.8/82)

DONALD S. DRUSKY,
Plaintiff,

-v.-

THE PEOPLE OF THE FIFTY STATES OF THE UNITED STATES OF AMERICA; FEDERAL COMMUNICATIONS COMMISSION, AMERICAN BROADCASTING COMPANY; CBS; NATIONAL BROADCASTING COMPANY; FOX BROADCASTING COMPANY; CABLE NEWS NETWORK, as indispensable parties,
Defendants.

5:99-CV-237 (NAM)(GJD) MEMBER CASE

DONALD S. DRUSKY,
Plaintiff,

-v.-

THE SOVEREIGN PEOPLE OF THE UNITED STATES OF AMERICA,
Defendants.

5:99-CV-238 (NAM)(GJD) MEMBER CASE

DONALD S. DRUSKY,
Plaintiff,

-v.-

GOD,
Defendant.

5:99-CV-239 (NAM)(GJD) MEMBER CASE

APPEARANCES:

DONALD S. DRUSKY
Plaintiff, *pro se*
422 Chicora Street
East McKeesport, PA 15035

NORMAN A. MORDUE, DISTRICT JUDGE

3

AO 72A (Rev.8/82)

DECISION and ORDER

I. **Background.**

Presently before this Court are applications to proceed *in forma pauperis* and complaints filed by Donald S. Drusky ("plaintiff" or "Drusky"). Drusky has not paid any fee relating to this action.

For the reasons stated below, plaintiff's complaints are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and Rule 5.4(a) of the Local Rules of Practice of this District.

In his *pro se* complaints, Drusky alleges that he has been improperly treated by the defendants, including, *inter alia*, God, the Justices of the Supreme Court, the Judges of the U.S. Circuit and District courts, United States Steel Corporation and the National Labor Relations Board. Plaintiff's allegations appear to all arise from plaintiff's termination by defendant United States Steel Corporation in 1988 for picketing such corporation regarding a sum of money plaintiff claims was owed to him by the United Steel Workers union as a result of a layoff. Further, Drusky seems to contend that he filed an action based on such allegations and same was improperly dismissed by the Western District of Pennsylvania in 1971. For a complete statement of plaintiff's claims, reference is made to the complaints filed herein.

II. **Discussion.**

Initially, the undersigned notes that a review of the facts alleged in the

4

AO 72A (Rev.8/82)

Exhibit #7

complaints noted in the caption hereto appear to involve common questions of law and/or fact. Therefore, the Court hereby consolidates these actions. Fed.R.Civ.P. 42(a).

Turning to plaintiff's *in forma pauperis* applications, the Court notes that consideration of whether a *pro se* plaintiff should be permitted to proceed *in forma pauperis* is a two-step process. First, the Court must determine whether the plaintiff may proceed with the action without prepaying, in full, the $150.00 filing fee. The Court must then consider whether the causes of action stated in the complaint are, *inter alia*, frivolous or malicious, or if they fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

In the present case, the Court has determined that Drusky's financial status qualifies him to file or "commence" this action without prepaying in full the $150.00 filing fee. Thus, the undersigned grants plaintiff's *in forma pauperis* application. (*See, e.g.* docket no. 2 in case number 5:99-CV-0230.)

Turning to the second inquiry, 28 U.S.C. § 1915(e), as amended, directs that the Court:

> (2) [S]hall dismiss the case at any time if the Court determines that -
>
> ...
>
> (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a - defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B). Thus, there is a responsibility on the Court to determine that a complaint may be properly maintained in the District before it may permit a plaintiff to proceed with an action *in forma pauperis*. *Id.*

In determining whether an action is frivolous, the Court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Although the Court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), there is a responsibility on the Court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis*. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the Court as well as to discourage the waste of judicial resources. *State of New York v. Sokol*, 1996 WL 428381, *4 (S.D.N.Y.), *aff'd sub nom., In re Sokol*, 108 F.3d. 1370 (2d Cir. 1997); *Neitzke*, 490 U.S. at 327.

As is the case with actions plaintiff appears to have filed with the Western District of Pennsylvania, *see Drusky v. Judges of the Supreme Court*, 69-CV-124, 70-CV-160 and 71-CV-249 (referred to in complaint filed herein, 99-CV-230 at 1), the instant

complaints are a series of confused, frivolous and delusional statements that fail to state a cause of action for a variety of reasons. For example, plaintiff seeks an order allowing him to purchase the "broadcasters" so that he may air his grievences to the general public, and that payment for the foregoing be made "from public funds." *Drusky v. People of the United States*, 99-CV-0233, docket no. 1 at 7. Drusky seeks to amend the U.S. Constitution in *Drusky v. USX Corp.*, 99-CV-0234 so as to "bar[ ] all other legislative process until the legislative redress of meritorious grievences occurs first." *Id.*, docket no. 1 at 7. Another example of Drusky's incomprehensible style of pleading is demonstrated in his action where the only named defendant is God, where he notes that "[Federal and state government officials] love your vote and love your tax money. They do not love you or care about you." *Drusky v. God*, 5:99-CV-0238, docket no. 1 at 2.

Moreover, the allegations in Drusky 5:99-CV-0238.'s complaints appear to arise from his termination in 1968 and the dismissal of his civil action(s) in March of 1971.[1] Yet the "applicable statute of limitations for § 1983 actions arising in New York requires claims to be brought within three years." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995). Therefore, since plaintiff cannot prevail on any claims asserted in his complaints which occurred prior to February 10, 1996, and all of the claims asserted in his pleadings occurred approximately twenty-five (25) years prior thereto, each of the

[1] *See* complaint in *Drusky v. Judges of the Supreme Court*, 99-CV-0230. The opinion of the Western District of Pennsylvania dismissing plaintiff's 1971 action is dated March 16, 1971.

complaints must also be dismissed as untimely.

Since plaintiff's complaints, as presented to this Court, fail to state a claim upon which relief can be granted, they must therefore be dismissed pursuant to 28 U.S.C. § 1915(e).

WHEREFORE, it is hereby

ORDERED, that leave to commence this action *in forma pauperis* is granted, and it is further

ORDERED, that the Clerk of the Court consolidate civil actions 5:99-CV-0230 and civil actions 5:99-CV-0231 through 5:99-CV-0239. Civil action number 5:99-CV-0230 shall be referred to and treated as the "lead" case, and all subsequent Orders of this Court and papers that are submitted by the parties hereto that pertain to any of the foregoing actions shall be filed in civil action number 5:99-CV-0230, and it is further

ORDERED, that the Clerk place a copy of this Order in the file of civil actions 5:99-CV-0231 through 5:99-CV-0239, and it is further

ORDERED, that this action is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and Rule 5.4(a) of the Local Rules of Practice of this District, and it is further

ORDERED, that the Clerk serve a copy this Order on plaintiff by regular mail.

IT IS SO ORDERED.

Dated: March 5, 1999
Syracuse, New York

Norman A. Mordue
U.S. District Judge

ORIGINAL FILED
FEB 2 5 1999
LARRY W. PROPES, CLERK
COLUMBIA, S.C.

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Donald S. Drusky, Plaintiff, | C/A No. 3:99-0502-17BC |
| vs. | Report and Recommendation |
| 100th United States Congress; USX Corporation; United Steelworkers of America; Janet Reno, Attorney General of the United States; George Bush, Former President of the United States; Edwin Meese, Former Attorney General of the United States; Representatives, Senators, and Governors of All Fifty States; God; Federal Communications Commission ("FCC"); American Broadcasting Corporation; Columbia Broadcasting Corporation; National Broadcasting Corporation; Fox Broadcasting Company; and Cable News Network, Defendants. | |

Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint and the accompanying application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. The review has been conducted in light of the following precedents: Denton v. Hernandez,

504 U.S. 25, 118 L.Ed.2d 340, 112 S.Ct. 1728, 1992 U.S. LEXIS® 2689 (1992); Neitzke v. Williams, 490 U.S. 319, 1989 U.S. LEXIS® 2231 (1989); Haines v. Kerner, 404 U.S. 519, 520-521 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 1995 U.S.App. LEXIS® 26108 (4th Cir. 1995)(*en banc*), *cert. denied*, 64 U.S.L.W. 3623, 134 L.Ed.2d 219, 116 S.Ct. 1273 (1996); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); and Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979). This court is required to construe *pro se* complaints and petitions liberally. Such *pro se* complaints and petitions are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, Leeke v. Gordon, 439 U.S. 970 (1978), and a federal district court is charged with liberally construing a complaint or petition filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See* Hughes v. Rowe, 449 U.S. 5, 9 (1980); and Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. Fine v. City of New York, 529 F.2d 70, 74 (2nd Cir. 1975). Even under this less stringent standard, the above-captioned case is subject to

summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. Weller v. Department of Social Services, 901 F.2d 387, 1990 U.S.App. LEXIS® 6120 (4th Cir. 1990).

The *pro se* plaintiff is an apparent resident of the Commonwealth of Pennsylvania, and resides at 422 Chicora Street, in East McKeesport, Pennsylvania 15035. Although the above-captioned case is, technically, not "in proper form," no useful purpose would be served by having the plaintiff submit items to render this case into "proper form."

A search of cases on the WESTLAW® service reveals that the plaintiff is attempting to "rehash" labor claims decided adversely to him in a series of cases filed in other federal courts in the early 1970's. *See* attached opinions in Drusky v. American Bar Association, 1971 WESTLAW® 782, 77 L.R.R.M (BNA) 2407, 66 Lab.Cas. (CCH) 11,984 (N.D.Ill., April 8, 1971); Drusky v. Shore, 1971 WESTLAW® 781, 77 L.R.R.M. (BNA) 2406, 66 Lab.Cas. (CCH) ¶ 11,198 (W.D.Mo., March 19, 1971); Drusky v. Judges of the Supreme Court,

324 F. Supp. 332 (W.D.Pa., March 16, 1971); and Drusky v. American Bar Association, 1970 WESTLAW® 622, 74 L.R.R.M. (BNA) 2543, 63 Lab.Cas. ¶ 10,939 (W.D.Pa., May 13, 1970). Appended to the complaint in this case are various exhibits. Several of the exhibits relate to a charge of unfair labor practices filed by the plaintiff in 1972.[1]

Information available on the WESTLAW® service suggests that the plaintiff has filed this repetitive litigation in the United States District Court for the District of South Carolina in the mistaken hope that this court, which might not be aware of his prior litigation, would authorize service of process upon the defendants. The caption of the complaint indicates that the plaintiff is attempting to file this case simultaneously in all eighty-eight (88) United States District Courts. Hence, it is not necessary for this court to restate the plaintiff's numerous allegations. *See* the order of the Honorable David C. Norton, United States District Judge, in Sadighi v. Daghighfekr, ___ F.Supp.2d ___,

[1] The decisions in the plaintiff's prior cases indicate that the National Labor Relations Board, in effect, placed the plaintiff under the administrative equivalent of a Graham v. Riddle order. See Graham v. Riddle, 554 F.2d 133, 134-135 & n. * (4th Cir. 1977). See also In Re Burnley, 988 F.2d 1, 2-3 & nn. 1-3, 1992 U.S.App. LEXIS® 33369 (4th Cir. 1992), which was released for publication on March 4, 1993; and Flint v. Haynes, 651 F.2d 970, 972-974 & nn. 5-14 (4th Cir. 1981), cert. denied, 454 U.S. 1151 (1982)(citing Graham v. Riddle and cases from outside the Fourth Judicial Circuit).

Exhibit #14

1999 WESTLAW® 18036 (D.S.C., January 5, 1999)("In a effort to heed the advice of Ecclesiastes to 'Let thy speech be short, comprehending in a few words,' the court will attempt to summarize, and not reiterate, the Plaintiffs' voluminous allegations.").

In short, the plaintiff's "labor" claims have been *res judicata* for more than twenty-seven (27) years. *See* Shoup v. Bell & Howell, 872 F.2d 1178, 1182, 1989 U.S.App. LEXIS® 5495 (4th Cir. 1989)("[J]ustice is better served by attributing finality to judgments . . . than by second efforts at improved results.").

In any event, the federal entities named as defendants by the plaintiff are entitled to sovereign immunity. Under the liberal construction given to *pro se* pleadings, even if the plaintiff is bringing an action under the Federal Tort Claims Act, this case is subject to summary dismissal. A suit under the Federal Tort Claims Act lies only against the United States, and a federal district court lacks subject-matter jurisdiction over claims asserted against federal agencies or individual federal employees. *See* Myers and Myers, Inc. v. United States Postal Service, 527 F.2d 1252, 1256 (2nd Cir. 1975). The

Federal Tort Claims Act (FTCA) waives the sovereign immunity of the United States in certain situations. Litigants must strictly comply with the requirements of the FTCA. *See* 28 U.S.C. § 2675; and United States v. Kubrick, 444 U.S. 111, 117-118 (1979).

An administrative claim must first be filed with the appropriate federal agency before commencement of a civil action in a district court under the Federal Tort Claims Act. *See* 28 C.F.R. § 14.2; and the "STANDARD FORM 95[.]" Since the complaint does not conclusively show that the plaintiff has submitted a Standard Form 95 to the appropriate federal agency or to the United States Department of Justice, this case should be dismissed for failure to exhaust federal administrative remedies.

In order to state a cause of action under 42 U.S.C. § 1983 or unde Bivens doctrine,[2] a plaintiff must allege that: (1) the defendant(s) depriv

[2]In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971), the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983: federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of state law. *See* Harlow v. Fitzgerald, 457 U.S. 800, 814-820 & n. 30 (1982). Harlow, which is often cited for the principle of the qualified immunity of state officials for acts within the scope of their employment, was brought against a federal official. In footnote 30 of the opinion in Harlow, the Supreme Court stated that Harlow was applicable to state officials sued under 42 (continued...)

or her of a federal right, and (2) did so under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). There is no indication that the media defendants in this case have acted under color of state law, which is a jurisdictional prerequisite to a § 1983 civil rights action. *See* Hall v. Quillen, 631 F.2d 1154, 1155-1156 & nn. 2-3 (4th Cir. 1980), *cert. denied*, 454 U.S. 1141 (1982).

The United States Court of Appeals for the Fourth Circuit has ruled that private corporations, individuals, or entities, generally, do not act under color of state law. Lugar v. Edmondson Oil Co., 639 F.2d 1058, 1062-1069 (4th Cir. 1981), *affirmed in part and reversed in part* [on other grounds], 457 U.S. 922 (1982). In any event, the *pro se* plaintiff has not made any allegations which would connect the actions of the media defendants or any of the media defendants' individual employees[3] to the actions of a person or persons acting

(...continued)
U.S.C. § 1983. In other words, case law involving § 1983 claims is applicable in Bivens actions and vice versa. Farmer v. Brennan, 511 U.S. 825, 128 L.Ed.2d 811, 114 S.Ct. 1970, 1994 U.S. LEXIS® 4274 (1994).

[3]Although a private citizen can act under color of state law, his or her actions must occur where the private citizen is a willful participant in joint action with the state or an agent of the state. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980).

under color of state law. Generalized allegations of conspiracy would not be sufficient. *See* Stubbs v. Hunter, 806 F. Supp. 81, 82-83, 1992 U.S.Dist. LEXIS® 21031 (D.S.C. 1992); Wetherington v. Phillips, 380 F. Supp. 426, 428-429 (E.D.N.C. 1974), *affirmed*, 526 F.2d 591 (4th Cir. 1975)[Table]; and Joyner v. Abbott Laboratories, 674 F. Supp. 185, 191 (E.D.N.C. 1987). Similarly, the plaintiff's allegations, if construed as allegations of negligence, do not constitute a claim cognizable under 42 U.S.C. § 1983 or the Bivens doctrine. Negligence is not actionable under 42 U.S.C. § 1983 or the Bivens doctrine. *See* Daniels v. Williams, 474 U.S. 327, 328-336 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-348 (1986); and Ruefly v. Landon, 825 F.2d 792, 793-794 (4th Cir. 1987). Finally, 42 U.S.C. § 1983 and the Bivens doctrine do not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-203, 1989 U.S. LEXIS® 1039 (1989).

There are five (5) "media" defendants in this case. Since the Supreme Court's decision in New York Times Co. v. Sullivan, 376 U.S. 254 (1964), was issued, it has been well-settled that "the First Amendment's speech and press

clauses greatly restrict a state's common law where the defendant is a member of the press, the plaintiff is a public figure, or the subject matter of the supposed libel touches on a matter of public concern." Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1091-1092, 1993 U.S.App. LEXIS® 11601 (4th Cir. 1993); and Sanders v. Prince, 304 S.C. 236, 403 S.E.2d 640, 641-643, 1991 S.C. LEXIS® 78 (1991). The plaintiff's allegations against the media defendants concern matters allegedly not reported by the media. Chapin v. Knight-Ridder, supra, 993 F.2d at 1091-1092 & nn. 3-4.

The media defendants cannot be compelled to give the plaintiff "coverage" of his allegations against the federal defendants, the USX Corporation, or the United Steelworkers of America. *See* Miami Herald Publishing Co., Division of Knight Newspapers, Inc. v. Tornillo, 418 U.S. 241 (1974)(newspaper may refuse to publish a political reply advertisement, even when state law gives right to reply). In Tornillo, the Supreme Court rejected an "access" theory for political candidates. The "access" theory at issue in Tornillo was embodied in Florida's statutory law:

> Faced with the penalties that would accrue to any newspaper that published news or commentary arguably within the reach of the right-of-access statute, editors might well conclude that the safe course is to avoid controversy. Therefore, under the operation of the Florida statute, political and electoral coverage would be blunted or reduced. * * * Government-enforced right of access inescapably "dampens the vigor and limits the variety of public debate[.]"
>
> * * *
>
> Even if a newspaper would face no additional costs to comply with a compulsory access law and would not be forced to forgo publication of news or opinion by the inclusion of a reply, the Florida statute fails to clear the barriers of the First Amendment because of its intrusion into the function of editors. A newspaper is more than a passive receptacle or conduit for news, comment, and advertising. * * * The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials – whether fair or unfair – constitute the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First Amendment guarantees of a free press as they have evolved to this time. Accordingly, the judgment of the Supreme Court of Florida is reversed.

Miami Herald Publishing Co., Division of Knight Newspapers, Inc. v. Tornillo, 418 U.S. at 257-258 (footnotes and citations omitted). *See also* Pacific Gas & Electric Co. v. Public Utilities Commission of California, 475 U.S. 1 (1986), where the Supreme Court reaffirmed its opinion in Tornillo: "For corporations as for individuals, the choice to speak includes within it the choice of what not

to say.'" Pacific Gas & Electric Co. v. Public Utilities Commission of California, 475 U.S. at 16, *quoting* Miami Herald Publishing Co., Division of Knight Newspapers, Inc. v. Tornillo, 418 U.S. at 258.

As to the claim enumerated by the plaintiff as Claim No. 7, the plaintiff has named "God" as a defendant. Indeed, one must wonder how the plaintiff intends to effect service of process upon "God." On page 12 of the complaint, the plaintiff indicates that he has named "God" as a defendant because this case includes a "claim for divine redress and special favors arising under the First Amendment to the Constitution of the United States[.]" (Complaint, at page 12). Such appeals for divine intervention are not new. *See* The Declaration of Independence (U.S. 1776); Psalm 22;[4] and Job 38:1-3. *But*

[4]The undersigned is referring to the Hebrew numeration of the Psalms. Certain religious denominations numerate the Psalms differently. *See* William L. Holladay, The Psalms through Three Thousand Years (© 1993, Augsburg Fortress [ISBN 0-8006-2752-0]), at page 4:

> There is one troublesome matter that must be dealt with here and now, and that is the numeration of the chapters and verses of the Psalms. Though both the Hebrew tradition and the Greek tradition (the Septuagint translation . . .) reckon 150 Psalms in the book of Psalms, there is a difference in their respective numerations. The two agree for Psalms 1 to 8. Hebrew Psalms 9 and 10 are reckoned in the Septuagint as Psalm 9. Then the Hebrew Psalms 11 to 113 are the Septuagint Psalms 10 to 112, respectively, so that for this span the Septuagint numeration is one behind the Hebrew. The Hebrew Psalms 114 and 115 are again reckoned by the

(continued...)

*see* Job 9:3 and Isaiah 45:9. Indeed, the plaintiff indicates, on page 12 of the complaint, that he (the plaintiff) has notified Pope John Paul II of his claims. The plaintiff, however, alleges that the Roman Catholic Church has "made no effort to rectify the crime of perjury or secure [to the plaintiff] the redress of grievances."

In the United States, there is no connection between governmental (state or federal) courts and Ecclesiastical Courts or courts interpreting Canon Law. *See* Oliverson v. West Valley City, 1994 U.S.Dist. LEXIS® 19383 (D.Utah, November 10, 1994)(comparing jurisdiction and functions of secular and ecclesiastical courts in pre-modern England)(no WESTLAW® citation

(...continued)

> Septuagint as one psalm, Psalm 113. Then the Hebrew Psalm 116 is divided in two by the Septuagint, Hebrew Ps. 116:1-9 being Septuagint Psalm 114 and Hebrew Ps. 116:10-19 being the Septuagint Psalm 115. Then the Hebrew Psalms 117 to 146 are the Septuagint Psalms 116 to 145, respectively, the Septuagint numeration again falling one behind the Hebrew. Then the Hebrew Psalm 147 is divided in two, Hebrew Ps. 147:1-11 being the Septuagint Psalm 146 and Hebrew Ps. 147:12-20 being the full Septuagint Psalm 147. The last three Psalms are then numbered identically, 148 to 150.
>
> The problem of numeration would be of concern only to specialists except for the fact that the Septuagint numeration became that of the Latin Vulgate and therefore the numeration of Roman Catholic translations until recently, whereas Protestant Bibles have used the traditional Hebrew numeration. * * * [W]hen Augustine refers to "Psalm 21" * * *, it is the Psalm known to us as Psalm 22[.]

available], *later proceeding reported at* 875 F. Supp. 1465 (D.Utah 1995)(also comparing jurisdiction and functions of secular and ecclesiastical courts in pre-modern England); and *cf.* Stephens v. Herring, 827 F. Supp. 359, 1993 U.S.Dist. LEXIS® 15701 (E.D.Va. 1993).

Furthermore, the religious allegations are beyond the jurisdiction of a United States District Court. As a court of limited jurisdiction, the United States District Court for the District of South Carolina has no jurisdiction over disputes concerning ecclesiastical law, rabbinical law, Canon Law, or religious disputes. *See* Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S. 696 (1976); EEOC v. Catholic University of America, 856 F. Supp. 1, 1994 U.S.Dist. LEXIS® 9190 (D.D.C., June 29, 1994), *affirmed*, 317 U.S.App.D.C. 343, 83 F.3d 455 (D.C.Cir. 1996); and Nunn v. Black, 506 F. Supp. 444 (W.D.Va. 1981), *affirmed*, 661 F.2d 925 (4th Cir. 1981)[Table], *cert. denied*, 454 U.S. 1146 (1982). As a result, a district court's exercise of jurisdiction over religious matters would violate the Establishment Clause. *See* Serbian Eastern Orthodox Diocese v. Milivojevich, supra; and Fraser v. Salvation Army, 1998 WESTLAW® 13272 (E.D.Pa., January 15, 1998)("Because, the

underlying controversy is of an ecclesiastical nature this court lacks jurisdiction to review this action."). Hence, the plaintiff's claims against "God" are non-justiciable in a federal district court.

Accordingly, it is recommended that the District Court dismiss the complaint in the above-captioned case *without prejudice* and without issuance and service of process. *See* Denton v. Hernandez, supra; Neitzke v. Williams, supra; Haines v. Kerner, supra; Brown v. Briscoe, 998 F.2d 201, 202-204 & n. * (4th Cir. 1993), *replacing* unpublished opinion originally tabled at 993 F.2d 1535 (4th Cir. 1993); Boyce v. Alizaduh, supra; Todd v. Baskerville, supra, 712 F.2d at 74; and 28 U.S.C. § 1915(e)(2)(B)[essentially a redesignation of "old" 1915(d)]. *See also* Floyd v. United States Postal Service, 105 F.3d 274 (6th Cir. 1997); and In Re Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997)(pleadings by non-prisoners should also be screened).

In light of the fact that the pleading reveals that the plaintiff intends to file repetitive cases in all federal district courts — and of the plaintiff's repetitive filings in the past in various courts — it is recommended that, if the District Court accepts this Report and Recommendation, the District Court, in its

discretion, consider publication of its Order, so that other federal district courts will not be forced to consider what are, in fact, repetitive pleadings.[5] The plaintiff's attention is directed to the notice on the next page.

Respectfully submitted,

Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

February 24, 1999
*(Date)*

[Various court opinions involving the plaintiff are appended to this Report and Recommendation.]

[5]This court has the inherent authority to protect its jurisdiction from conduct which impairs its ability and the ability of other federal district courts to carry out their Article III functions:

> There should be little doubt that the district court has the jurisdiction to protect itself against the abuses that litigants like Procup visit upon it. Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions. * * * The fact that Procup's complaint in this case may have failed to state a justiciable federal claim is of no impact on the court's power to enter injunctive relief against such a recalcitrant litigant. The court has a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others. * * *

Procup v. Strickland, 792 F.2d 1069, 1073-1074 (11th Cir. 1986)(*en banc*)(footnote omitted from quotation).

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**
**&**
**The *Serious Consequences* of a Failure to Do So**

The plaintiff is hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made and the basis for such objections. See Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), cert. denied, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), cert. denied, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are not sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

Accord Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger de novo review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. See Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**1845 Assembly Street**
**Columbia, South Carolina 29201**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DONALD S. DRUSKY, *et al*
Plaintiff

v.

THE 100TH U.S. CONGRESS, *et al*
Defendants

Civil Action

No. 99-775

FILED AUG 19 1999

**M E M O R A N D U M / O R D E R**

Seeking to proceed *in forma pauperis*, Donald S. Drusky has filed a seven-count complaint, on behalf of himself and all the people of the United States of America. The complaint will be considered only on behalf of Mr. Drusky, since the prerequisites to a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure have not been met.

The complaint appears to have arisen from Mr. Drusky's discharge from employment from the United States Steel Corp., now known as the USX Corporation, on August 8, 1966. The claims set forth in the complaint may be summarized as follows:

(1) petitioner seeks to sue the 100th through the 105th Congresses, the Governor, Lieutenant Governor, and Legislature of the fifty states, claiming violation of petitioner's First Amendment right to redress, seeking injunctive relief in the form of a court order or recall vote removing these defendants from office;

(2) petitioner seeks to sue the USX Corporation and the United Steelworkers of America, claiming conspiracy which allegedly caused the courts to withhold justice from petitioner - no specific remedy is sought;

AUG 20

(3) petitioner seeks to sue former President George Bush, the members of the U.S. Senate and House of Representatives of the 100th Congress, former Attorney General Edwin Meese, and the Governors and Attorney Generals of the fifty states as of June 1986, claiming the concealment of and failure to investigate the alleged perjury committed by the USX Corporation and the United Steelworkers of America in order to obtain summary judgment in petitioner's 1968 civil action against them - no specific remedy is sought;

(4) petitioner seeks to sue Attorney General Janet Reno and the U.S. Attorneys for all of the federal judicial districts of the United States, requesting injunctive relief in the form of a writ of mandamus compelling the prosecution of the defendants enumerated in counts 2 and 3 above - no specific claims are enumerated;

(5) petitioner seeks to sue the Federal Communications Commission, together with ABC, CBS, NBC, Fox, and CNN, requesting injunctive relief in the form of an order compelling the networks to inform the public of petitioner's grievances - no specific claims are enumerated;

(6) petitioner seeks to sue the "Sovereign People of the United States", after the removal of all elected members of the legislatures, resulting in a government of the Sovereign People, requesting an Amendment to the Constitution barring all legislative process until the "redress of meritorious grievances" occurs, and seeking the formation of a "Committee for the Redress of Grievances", overseen by the Pope, and a "Committee for Judicial Oversight", in which the President shall have no vote, and the formation of a "Clean Hands Policy" to abolish favoritism - no specific claims are enumerated;

(7) petitioner seeks to sue God, for failure of the Catholic Church to assist petitioner despite its enjoyment of freedom of religion under the First Amendment, seeking divine redress in the form of the resurrection of Amelia Earhart, Nicole Brown and Ronald Goldman, JonBenet Ramsey, Anne Frank and her family and friends, Karla Faye Tucker, Emperor Nicholas II, Empress Alexandra, and their children and servants, and seeking the restoration of Pope John Paul II's health.

Under 28 U.S.C. § 1915(2), this court is bound to dismiss any case that is frivolous, fails to state a claim on which relief can be granted, or seeks monetary relief against a

Exhibit #63

defendant who is immune from such relief. Though this court has no reason to doubt petitioner's sincerity, the seven counts of his complaint clearly fail to state claims upon which relief can be granted.

Therefore, IT IS HEREBY ORDERED THAT leave to proceed *in forma pauperis* is denied and the Complaint is dismissed.

August 18, 1999

POLLAK, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

FILED U.S. DISTRICT COURT NORTHERN DISTRICT OF IOWA SEP 20 1999 9:25am CEDAR RAPIDS HDQTRS OFFICE BY D. Katay

| | | |
|---|---|---|
| DONALD S. DRUSKY, Plaintiff, | ) | NO. C 99-0033-MJM |
| vs. | ) | **INITIAL REVIEW ORDER** |
| The 100th U.S. CONGRESS, *et al.*, Defendants. | ) | |

This matter is before the court on plaintiff's application to proceed *in forma pauperis*, filed March 2, 1999.

Plaintiff brings this action under no specific statutory authority. Treating this action as one brought under 42 U.S.C. § 1983 for the alleged deprivation of constitutional rights, venue is not proper in this district. *See* 28 U.S.C. § 1391(b). Further, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The plaintiff does not allege any facts of specific acts alleged to be constitutional violations by any specific "person" within the meaning of section 1983 jurisprudence. Lastly, the relief sought by the plaintiff: removal from office, criminal prosecutions, mandamus against public officials, and "a devine redress from Defendant God," is unavailable under 42 U.S.C. § 1983. This complaint is dismissed as frivolous. 28 U.S.C. § 1915A(b)(1); *Denton v. Hernandez*, 504 U.S. 25, 26-27, 112 S.Ct. 1728, 1730-31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325-27 (1989); *Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir. 1994).

The Clerk shall file the petition without payment of fees for the sole purpose of making a record.

IT IS SO ORDERED.

DATED this 20 day of Sept., 1999.

Michael J. Melloy, Chief Judge
UNITED STATES DISTRICT COURT

Copies mailed on SEP 20 1999 to counsel of record or pro se parties as shown on the docket sheet. w/ Jgmt D. Katay Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

FILED U.S. DISTRICT COURT NORTHERN DISTRICT OF IOWA SEP 20 1999 9:00am CEDAR RAPIDS HDQTRS OFFICE BY D. Katay

| | | |
|---|---|---|
| DONALD S. DRUSKY, Plaintiff, | ) | No. C 99-33-MJM |
| vs. | ) | JUDGMENT IN A CIVIL CASE |
| The 100th U.S. CONGRESS, et al. Defendants. | ) | |

***DECISION BY COURT:*** This action came on for decision before the Court. The issues have been decided and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

Plaintiff take nothing, and this complaint is dismissed as frivolous.

Dated: September 20, 1999

JAMES D. HODGES, JR.
Clerk

(By) Clerk

Exhibit #64

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Donald E. Drusky
plaintiff

v.

defendant

ORDER

The papers in the above captioned matter are hereby returned to you for failure to comply with the Federal Rules of Civil Procedure, the Local Rules of this Court and/or the requirements of the Prison Litigation Reform Act of 1995. The papers are deficient in the following area(s):

[X] Your complaint **must** set forth the facts of your case and indicate what kind of relief you seek from the Court. The name of this Court **must** be written at the top of the first page. The word **COMPLAINT** **must** appear under the caption. All parties to the suit must be named in the caption. The use of et al is **not** permitted as the rules require you to name each defendant as well as an address to effect service.

[ ] Your **COMPLAINT** **must** by typed or legibly handwritten. If you are requesting a jury trial, the jury demand **must** be stated in your complaint.

[ ] You must **ORIGINALLY** sign your complaint.

[ ] Application to proceed in forma pauperius **must** be completed and originally signed. (Enclosed)

[ ] A Petition for Writ of Habeas Corpus or a complaint under 42 USC Section 1983 submitted by anyone incarcerated in a District of Columbia Facility, **must** be on court approved forms. The appropriate forms are enclosed.

[X] OTHER: Court does not accept double sided pleadings

For the foregoing reasons, these papers are being returned unfiled. You have to right to re-submit the original papers to the Court, upon corrections of the deficiency(ies) checked above. **NEVER SEND PAPERS DIRECTLY TO ANY CHAMBERS**.

2.18.99
Date

JOHNSON, C.J.N.H.J.
Chief Judge Norma Holloway Johnson

## PRISON LITIGATION REFORM ACT OF 1995

Pursuant to the Prison Litigation Reform Act of 1995, new requirements have been placed on prisoners proceeding pro se when filing civil actions in Federal courts. Three of the most significant restrictions relate to the exhaustion of administrative remedies, filing *in forma pauperis* and filing successive claims.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

No action shall be brought with respect to prison conditions under Section 1979 of the revised Statutes of the United States (42 USC §1983), or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted. Therefore, your complaint must include information regarding whether you exhausted the administrative remedies available to you, and if not, why not.

### PROCEEDING *IN FORMA PAUPERIS*

The amendment to 28 USC §1915 now requires a prisoner to pay the filing fee ($150.00) when bringing a civil action or filing an appeal *in forma pauperis (IFP)*. If, however, insufficient funds exist in your prison account, the court must assess and, when funds exist, collect a partial filing fee of 20% of the greater of:

(1) the average monthly deposits to your prison account, or
(2) the average monthly balance in your prison account for the prior six-month period.

Thereafter, you are required to make monthly payments of 20% of the preceding month's income. The agency having custody of your account may be required to forward payments from your account to the clerk of the court each time the amount in your account exceeds $10.00 until the filing fees are paid. Alternatively, the agency may be required to remit one check from your inmate prison account in an amount equal to the unpaid balance of the filing fee.

If you are attempting to proceed *in forma pauperis*, you must submit a certified copy of the trust fund account statement for the prior six-month period along with the completed *in forma pauperis* application.

As a result of the change to 28 USC §1915, you may be required to pay the filing fee ($120.00) in full, even if the complaint is dismissed prior to the collection of the entire filing fee.

### SUCCESSIVE CLAIMS

Pursuant to the Prison Litigation Reform Act of 1995, unless a prisoner claims to be in "imminent danger of serious physical injury," he or she may not file a civil action or pursue a civil appeal *in forma pauperis* "if the prisoner has, on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or failed to state a claim upon which relief may be granted."

Exhibit #65


| ACCOUNT NUMBER | BILLING CYCLE CLOSING DATE | MINIMUM PAYMENT DUE | NEW BALANCE |
|---|---|---|---|
| 00108343100300164316 | 9/25/2000 | 38.97 | 598.23 |

**IMPORTANT!** Please see reverse side.

PAYMENT DUE DATE: 10/10/200

PLEASE INDICATE AMOUNT OF PAYMENT ENCLOSED $

DONALD S DRUSKY
422 CHICORA ST #2
EAST MCKEESPORT PA 15035-1304

MAKE CHECKS PAYABLE AND MAIL TO:

DOLLAR BANK
P.O. BOX 943
PITTSBURGH PA 15230-0943

001 083 431 00300164316 00000003897

RETAIN THIS PORTION FOR YOUR RECORDS

THE NEW BALANCE SHOWN IS AS OF THE BILLING CYCLE CLOSING DATE

FOR ACCOUNT NUMBER 083 431 00300164316

| DATE | TRANSACTION / CREDIT DESCRIPTION | | AMOUNT | BALANCE |
|---|---|---|---|---|
| 8/28/2000 | BEGINNING BALANCE | | | 625.20 |
| 8/28/2000 | BEGINNING RATE | .11000 | | |
| 9/11/2000 | AUTO PAYMENT | | 38.97 CR | 592.57 |
| | EFFECTIVE DATED | 9/10/2000 | | |
| | PRIN | 32.63 | | |
| | INT | 5.97 | | |
| | INS | 0.37 | | |
| 9/25/2000 | SIMPLE INS ADJUSTMENT | | 0.37 | 592.57 |
| | EFFECTIVE DATED | 9/26/2000 | | |

PRINCIPAL/ANNUAL PERCENTAGE RATE SUMMARY

| DATE | BALANCE | RATE | DAYS | DATE | BALANCE | RATE | DAYS |
|---|---|---|---|---|---|---|---|
| 8/28/2000 | 625.20 | .11000 | 13 | 9/10/2000 | 592.57 | .11000 | 15 |
| 9/25/2000 | 592.57 | .11000 | 1 | | | | |

INSURANCE DUE TO DATE 0.37

| PREVIOUS BALANCE | + CHRGS/DEBITS | - PAYMT/CREDITS | + FINANCE CHARGE | = NEW BALANC |
|---|---|---|---|---|
| 631.54 | 0.37 | 38.97 | 5.29 | 598.23 |

| CLOSING DATE | PAYMT DUE DT | AVAILABLE CR | PAST DUE AMT | MIN PAYMT DUE | LATE CHARGE D |
|---|---|---|---|---|---|
| 9/25/2000 | 10/10/2000 | 0 | 0.00 | 38.97 | 0.00 |

| DAYS IN CYCLE | X DAILY PERIODIC RATE* | X AVERAGE DAILY BALANCE | = FINANCE CHARGE | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|
| 29 | .000300422 | 607.19 | 5.29 | .11000 |

**NOTE:** SEE REVERSE SIDE FOR IMPORTANT INFORMATION

Exhibit #66

#66 * THE PERIODIC RATE MAY VARY #66

EXHIBIT "A"

UNITED STATES GOVERNMENT

# Memorandum

RUSH

TO : Glen Bendixsen, Litigation Branch
Attn: Robert E. Williams

DATE: March 31, 1970

FROM : Edward A. Grupp, Regional Attorney
Region Six

SUBJECT: Civil Action No. 70-160
Drusky vs. Shore
USDC, W.D. Pa.

Attached is a list of the charges submitted by Donald Drusky subsequent to June 3, 1969. On that date, pursuant to instructions from the Division of Operations, Regional Director Shore wrote to Drusky explaining that further charges would not be docketed or processed ". . . unless the charge on its face was timely and presented at least a prima facie case and he was satisfied that the filing of a charge did not constitute a further abuse of the process of this Agency." A copy of the June 3 letter is attached.

When charges have been received from Drusky after June 3, 1969, they have been carefully examined to determine if any new matter is alleged. The list attached shows the date on which charges were submitted and the names of persons against whom the charges were brought. Many of the alleged respondents are neither labor organizations nor employers and include newspapers but not in their capacity as employers, attorneys whom Drusky has consulted, the presiding Bishop of the Roman Catholic Church at Pittsburgh, the administrator of the Children's Hospital, various bar associations, legal aid societies, congressmen and the United States Department of Interior's Parks Service. These charges have not been docketed and a letter, similar in form to the attached letter dated June 24, has been sent to Drusky on each occasion acknowledging the number of charges received and the date of the letter which invariably accompanies the charges.

If you have need for further information, please advise me.

E. A. G.

cc: Francis E. Dowd
Assistant General Counsel

Charges ~~filed~~ submitted by Drusky against the following:

June 17, 1969

1. I. W. Abel, Joe Molony, Walter Burke, A. J. Valicenti, Rege Fallon, Charles Maniccia, Emil Narick, Paul Hilbert and John Hauser, all officers of the United Steelworkers of America.
2. United States Steel Corporation

June 24, 1969

1. Edgar Thomson Works, U. S. Steel Corporation
2. Valicenti, Maniccia, George Silvacy, Abel, Molony, Burke and Hilbert.
3. Abel, Burke, Molony, Tom Murray
4. United Steelworkers of America
5. United States Steel Corporation
6. Pittsburgh Post Gazette and Pittsburgh Press (newspapers)
7. Morris and Daniel Berger, ATTORNEYS

July 3, 1969

1. Pittsburgh Press
2. Abel, Molony and Burke
3. United States Steel Corporation

July 7, 1969

1. United States Steel Corporation
2. Abel, Molony and Burke

(Continued)

Exhibit #67

<u>July 15, 1969</u>

1. National Labor Relations Board

<u>July 17, 1969</u>

1. National Labor Relations Board

<u>July 30, 1969</u>

1. J. Gannon, official of the Dept. of Public Welfare
2. Abel, Moloney and Burke
3. United States Steel Corporation
4. Buchhannon, Ingersol, Rodewald, Kyle and Buerger, Attorneys
5. Mark Hunter, Attorney
6. Royston, Robb, Leonard, Edgecombe, Milton & Thorell, Attorneys
7. Robert A. Jarvis, Attorney
8. Harold Loube, Administrator, Children's Hospital of Pittsburgh.

<u>August 14, 1969</u>

1. Abel, Moloney and Burke
2. United States Steel Corporation

<u>August 19, 1969</u>

1. John Kennedy, Jr., Attorney
2. Kenney, Stevens, Clark and Semple, Attorneys

(Continued)

<u>August 19, 1969</u> (cont'd)

3. Abel, Moloney and Burke
4. Lawyers Referral Service of Allegheny County
5. Cyril Brain and Robert Pierce, Attorneys
6. Legal Aid Society of Pittsburgh
7. Neighborhood Legal Services Association

<u>August 26, 1969</u>

1. Edgar Thomson Works of U. S. Steel
2. Abel, Moloney and Burke
3. Pittsburgh Press

<u>September 15, 1969</u>

1. John Wright, Cardinal, Bishop of Pittsburgh
2. Abel, Moloney and Burke
3. United States Steel Corporation

<u>September 26, 1969</u>

1. United States Steel Corporation
2. Henry Loube, Administrator, Children's Hospital

<u>October 8, 1969</u>

1. American Bar Association

<u>October 14, 1969</u>

1. Pennsylvania Bar Association
2. United States Steel Corporation

(Continued)

<u>October 22, 1969</u>

1. U. S. Department of Interior, National Department of Parks.

<u>November 19, 1969</u>

1. United States Steel Corporation

<u>January 2, 1970</u>

1. The Offices of Senator Hugh Scott and former [sic] Senator Joseph Clark

<u>February 4, 1970</u>

1. United States Steel Corporation
2. United Steelworkers of America

<u>February 19, 1970</u>

1. The law firm of Covington and Burling, Washington, D. C.



NATIONAL LABOR RELATIONS BOARD

OFFICE OF THE GENERAL COUNSEL

Washington, D.C. 20570 December 28, 1970

Mr. Donald S. Drusky
800 Talbot Avenue
Braddock, Pennsylvania 15104

Dear Mr. Drusky:

Your letter of December 11, 1970, to Vice President Spiro T. Agnew has been referred to me for reply. In this letter you complained that our Pittsburgh Regional Office has refused to docket and process your charge dated December 7 against Chief Judge Edwin M. Curran of the U.S. District Court for the District of Columbia. I note from our correspondence file that this same complaint was made to President Richard M. Nixon and was the subject of a letter to you of December 22, 1970, from Assistant General Counsel Francis E. Dowd.

You have been previously advised by letter of June 3, 1969, from Regional Director Henry Shore that he would no longer docket or process your charges unless the charge on its face was timely and presented at least a prima facie case, and he was satisfied that the filing of the charge did not constitute a further abuse of the processes of this Agency. A copy of Mr. Shore's letter is attached. For the reasons set forth in Mr. Shore's letter to you, I find these requirements entirely reasonable. Furthermore, I have carefully reviewed the entire matter, including the current charge, and wish to advise you that I am in agreement with the action taken by Regional Director Shore.

Very truly yours,

John E. Higgins, Jr.
Deputy Assistant General Counsel

Enclosure

NATIONAL LABOR RELATIONS BOARD

OFFICE OF THE GENERAL COUNSEL

Washington, D.C. 20570

Mr. Donald S. Drusky
800 Talbot Avenue
Braddock, Pennsylvania 15104

Dear Mr. Drusky:

Your letter of December 11, 1970, to President Richard M. Nixon has been referred to me for reply. Your complaint is that the Pittsburgh Regional Office has refused to docket and process your charge dated December 7, 1970, against Chief Judge Edward M. Curran of the U.S. District Court for the District of Columbia.

You have been previously advised by letter of June 3, 1969, from Regional Director Henry Shore that he would no longer docket or process your charges unless the charge on its face was timely and presented at least a prima facie case, and he was satisfied that the filing of the charge did not constitute a further abuse of the processes of this Agency. For the reasons set forth in Mr. Shore's letter to you, I find these requirements entirely reasonable. Furthermore, I have carefully reviewed the entire matter, including the current charge, and wish to advise you that I am in agreement with the action taken by Regional Director Shore.

Very truly yours,

Francis E. Dowd
Assistant General Counsel

NATIONAL LABOR RELATIONS BOARD

OFFICE OF THE GENERAL COUNSEL

Washington, D.C. 20570

FEB 11 1970

Mr. Donald S. Drusky
800 Talbot Avenue
Braddock, Pennsylvania 15104

Dear Mr. Drusky:

Your letter of January 11, 1970, to President Richard M. Nixon has been referred to me for reply. Your complaint is that the Pittsburgh Regional Office has refused to docket and process your charges dated December 31, 1969, against "The Offices of Senator Hugh Scott and former Senator Joseph Clark."

You have been previously advised by letter of June 3, 1969, from Regional Director Henry Shore that he would no longer docket or process your charges unless the charge on its face was timely and presented at least a prima facie case, and he was satisfied that the filing of the charge did not constitute a further abuse of the processes of this Agency. For the reasons set forth in Mr. Shore's letter to you, I find these requirements entirely reasonable. Furthermore, I have carefully reviewed the entire matter, including the current charges, and wish to advise you that I am in agreement with the action taken by Regional Director Shore.

Very truly yours,

Francis E. Dowd
Assistant General Counsel

Exhibit #68

United States Steel Corporation
EDGAR THOMSON WORKS
Braddock, Pa. 15104

August 8, 1966

Mr. Donald Drusky
800 Talbot Avenue
Braddock, Pennsylvania

Dear Mr. Drusky:

In my letter dated August 1, 1966, you were notified that you were suspended for five days, August 2 through August 6, for unauthorized absenteeism. In addition, you were notified to report to my office on August 6 at 10:00 a.m. to receive Management's decision concerning your employment status. (Formal notification of your violation of Company rules and suspension is attached.)

You did not elect to come to my office in accordance with these instructions. Consequently, you are hereby notified that your suspension has been converted into a discharge. Please report to the Plant Personnel Office immediately upon receipt of this letter to return whatever Company property you may have in your possession and to process your termination. Arrangements will be made at that time for you to obtain your personal effects from your locker.

Sincerely,

E. R. Daniels
General Foreman
Pipe Shop

dem

Attachment

UNITED STATES STEEL CORPORATION

NOTIFICATION: [X] VIOLATION OF RULES [ ] UNSATISFACTORY WORK

Case No. 66-239
Code No. 1
Date 8-2-66

Mr. Donald S. Drusky Check No. 26751 Company Service 6-3-53
Department Maintenance Shops Occupation Pipefitter

PRESENT INFRACTION: You were absent without permission of your supervisor and without just cause on July 12, 13, 14, 15, 16, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29, and August 1, 1966, in violation of Section 2, Rule 7 of the General Plant Conduct Rules and Regulations.

PREVIOUS INFRACTIONS: (If more space is needed, use reverse side)

DISCIPLINE: You are hereby suspended for five days August 2, 3, 4, 5 and 6, 1966.

This notification has been recorded. A copy was ~~HANDED YOU ON~~ sent by certified mail on 8-8-66. (Date)

Signed E. R. Daniels, FOREMAN Approved [signature], DEPARTMENT SUPERINTENDENT

United Steelworkers of America
AFL-CIO
District 15--Local Union No. 1219
1306 BRADDOCK AVENUE
Braddock, Pa. 15104
BRANDYWINE 1-4555

EXECUTIVE OFFICERS
PRESIDENT A. J. VALICENTI
VICE PRESIDENT HENRY LITTLE
RECORDING SECRETARY ROBERT PIGMAN
FINANCIAL SECRETARY ANDY TOTTER
TREASURER REGIS COULTER
TRUSTEES GEORGE GALYA, CHAIRMAN; JACK HALLORAN; THEO MASKIEWICZ

GRIEVANCE COMMITTEE
CHARLES MANCCIA, CHM.
CHARLES W. DAVIS, SEC'Y.
ANTHONY PICCULLO
GEORGE SILVASY
MARTIN MCDONOUGH
STEVE VAMOS
EUGENE OHL
GUIDE
EDDIE CHOBOY
GUARDS
PAUL BULIK
THEO. HOPSON

July 18, 1966

Mr. Donald S. Drusky
800 Talbot Avenue
Braddock, Pa.

Dear Sir:

I want to thank you for notifying me for lost time because of union business for the dates July 12,13,14 and 15, 1966.

I am now notifying you that you are not an officer, griever or committeeman therefore I would not give you any authorization to be off on union business for July 12,13,14 and 15.

I think it's a great thing that you want to donate to the Children's Hospital, I do so myself. But I think it would be wise for you to donate your own money because Local 1219 does not owe you one penny for lost time.

Fraternally yours,

USWA-CIO, LOCAL 1219

A. J. Valicenti,
President

Exhibit #69



NATIONAL LABOR RELATIONS BOARD

OFFICE OF THE GENERAL COUNSEL

Washington, D.C. 20570

December 27, 1967

Re: United States Steel Corp.,
Edgar Thomson Works
Case No. 6-CA-3821

United Steelworkers of America,
AFL-CIO, et al
Case Nos. 6-CB-1326
6-CB-1411-1, 2, 3, 4

Honorable Robert F. Kennedy
United States Senate
Washington, D. C.

Dear Senator Kennedy:

This is in response to your recent inquiry concerning Mr. Donald Drusky's letter to you dated November 29. My decision denying his appeals in the cases there referred to issued on December 7 -- after he wrote to you and before I received your inquiry.

My records do not indicate any prior inquiry from you about Drusky's cases although I did receive such inquiries from various other Senators and Congressmen. You might nevertheless be interested in the fact that no evidence whatever was found to support Drusky's allegations of blacklisting which even named the President and the Governor of Pennsylvania as parties responsible. The attached statement reflects our view of the entire matter.

Among Drusky's chief complaints is his assertion that the Region failed to handle his case properly in 1963 and 1964, and then subsequently advised him that any action in the matter was barred by the limitations proviso to Section 10(b) of the National Labor Relations Act. On consulting the Region in late 1963 and early 1964, Drusky, who was a member in good standing of Local 1219, could not suggest any considerations relating to union activity or membership as the cause for the inaction on his grievance, nor did he make any other claim of Union hostility towards him; at most, it appeared that the Union had been inept in the handling of his grievance. In these circumstances, Drusky was properly advised at the time of the apparent lack of merit to his case. See

Re: Case Nos. 6-CA-3821
6-CB-1326
6-CB-1411-1, 2, 3, 4

Local Union No. 18, International Union of Operating Engineers (Ohio Pipe Line Construction Co.), 144 NLRB 1365, 1367-1368; Murray Barton, Inc., 142 NLRB 396, 418. Nevertheless, on each occasion, Drusky was further advised of his right to file a charge, despite the weakness of his case, and concerning the six-month limitations period.

I trust this reply fully answers your inquiry. If I can be of further service to you in this matter, please let me know.

Sincerely yours,

Arnold Ordman
General Counsel

[¶ 9018] Falstaff Brewing Corp., Brewers and Maltsters Local Union 6, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Oscar Gerak, an individual. 128 NLRB, No. 39, Cases Nos. 14-CA-2174 and 14-CB-789, July 25, 1960, Thomas A. Ricci, Trial Examiner. Before LEEDOM, RODGERS, and JENKINS.

Robert J. Griffith and James P. Mannion, Jr., St. Louis, Mo., for Employer. Harry H. Craig, St. Louis, Mo., for Union. John O. Harris for NLRB.

**Discriminatory Discharge—Sufficiency of Proof.**—Complaint that charges an employer with unlawfully discriminating against an employee by discharging him at the request of a union and a union with causing the employer to so discriminate against the employee must be proven by a preponderance of the evidence. The violations charged cannot be sustained by any lesser degree of proof.—Back reference ¶ 5590.521.

**Discriminatory Discharge—Sufficiency of Indirect Evidence.**—Direct proof was not necessary to sustain a charge that a union caused an employer to discharge an employee in reprisal for complaining to the union's Board of Monitors about the conduct of the union's affairs by its top official where the circumstances which surrounded the discharge were sufficient to establish that fact.—Back reference ¶ 5590.745.

**Discriminatory Discharge—Credibility of Evidence.**—Testimony that employee was discharged because of the employer's desire to protect itself against persons of the character of the dischargee lacked credibility where it conflicted with the witness' previous affidavit regarding instructions given him to investigate the cause of the dischargee's absence from work and where the record showed that the witness requested the dischargee to return to work but two days prior to his receiving a telephone call from a union official requesting that he prevent the dischargee's return to work despite the witness' remonstrance that he had no grounds to discharge him.—Back reference ¶ 5590.58.

**Discriminatory Discharge—Infringement on Right of Union Members to Express Dissatisfaction with Management of Union Affairs.**—It is unlawful for an employer to discriminate against an employee at the request of a union or for a union to cause an employer to discriminate against an employee for exercising his statutory right of complaining about the manner in which elected union officials are conducting the affairs of a union of which he is a member or in seeking to remove such officials or to have them change their methods of operations.—Back references ¶ 4095.45, 4135.0781.

The Board, in adopting the findings, conclusions and recommendations of the Trial Examiner, except insofar as it modified the same, determined that the preponderance of the evidence from the record as a whole supported findings that the employer discriminatorily discharged the charging party in violation of Section 8(a)(3) and 8(a)(1) of the National Labor Relations Board as amended by the Labor-Management Reporting and Disclosure Act of 1959, and that the union, of which the charging party was a member, caused the employer to discriminately discharge him in violation of Section 8(b)(2) and 8(b)(1)(A) of the amended Act. The Board ordered the employer to reinstate him with back pay and made the union jointly responsible with the employer for his loss of pay.

The charging party, who had been employed as a utility brewer with the employer for about 13 years, wrote a letter on May 18, 1959 to the Board of Monitors of the union with which his local was affiliated, and complained of the unfair manner in which the secretary-treasurer of his local was conducting its affairs. He had been irked for some time by the fact that he felt that this official had passed him up unfairly in regard to his efforts to have his classification changed from utility brewer to brewer, a classification which would have entitled him to greater seniority and earnings. Prior to May 18th, there had been heated words between this official, who was recognized as top man in the local and who was chairman of the grievance team, and the charging party. On May 4th, the charging party was administered a beating at the plant by a fellow employee for making derogatory remarks about his father. As a result, he required medical care and was forced to remain away from work until sometime after May 21st. He had not returned to work by June 4th, the date of his discharge. The employer knew of the reason for his absence and on May 26th its personnel director requested that he try to return to work on June 1st. On May 28th, the union official phoned the personnel director and requested that the charging party be prevented from returning to work. Despite the personnel director's remonstrance that he had no grounds for discharging him, the union official suggested that the employer pay him wages while he was kept away from work. On June 4th, the charging party was notified that he was discharged by a letter which in part read "the decision to discharge you is the result of an investigation of several undesirable matters which were brought to our attention during your absence."

Although the Board otherwise approved the Trial Examiner's report, it felt that a statement made by him with respect to the sufficiency of proof required to sustain a complaint alleging violations of the Act was not too clear. The Board modified it is follows:

**From the Board's Opinion**

> At one point in his Intermediate Report, the Trial Examiner states: "As in all proceedings charging unlawful discrimination under the statute, the question is whether or not the record as a whole supports the affirmative allegation of the complaint . . ." Insofar as this statement may suggest that the standard of proof required of the General Counsel is less than that imposed by the Act, we do not adopt it. The standard to be met has been stated clearly and succinctly thusly: "In every case, a violation of the Act must be proved by the General Counsel by the preponderance of the evidence . . ." *Glen Raven Silk Mills, Inc., and United Textile Workers of America, AFL,* 101 NLRB 239; enf'd as modified [CA-4; 1953, 23 LABOR CASES ¶ 67,582].

¹ The Trial Examiner has not ignored the fact, and does not suggest that it is consistent with reasonable discipline in a plant for an employee to tell a superior "you'll get yours." However, undisputed circumstances show that the remark, ambiguous in nature, was provoked by the treatment accorded the employee upon being returned to work. There is no claim that Malinuski was in any way disrespectful during the 6 weeks of his employment before management first unlawfully discharged him.

© 1960, Commerce Clearing House, Inc.

The Board also felt that the Trial Examiner should not have had injected any personal feeling in his report when he referred to a beating given to the employee involved in this proceeding by a fellow employee.

**From the Board's Opinion**

> The Trial Examiner, in referring to Light's beating of Gerak, submitted the following gratuitous observation: "granting, as I certainly do, that he (Gerak) also deserved a good punch in the nose . . ." Mindful of our responsibilities and duties of a judicial nature, we cannot align ourselves with remarks which characterize the recipient of a beating as "deserving" of such brutality.

The Trial Examiner was of the opinion that testimony of the personnel director to the effect that the charging party was discharged because of the employer's desire to protect itself against persons of his character lacked credibility. Particularly, where it conflicted with the witness' previous affidavit regarding instructions given him by the plant superintendent to investigate the cause of his absence from work, and where the record showed that the witness insisted that up to the time that the plant superintendent spoke to him on May 28th, he had received no information from him that he was dissatisfied with his character, nor information about employee complaints concerning him. Nor had he received any indication that the employees might refuse to work with him. There was also the fact that on May 26th, two days prior to the receipt of a call by the personal director from the union official requesting that the charging party be prevented from returning to work, the personnel director requested him to return to work on June 1st and had asked him to fill out papers for welfare benefits.

The Trial Examiner pointed out that although there was no direct evidence that the union official caused the employer to discharge the charging party, there were sufficient circumstances to justify such a conclusion. He ruled out the use of profanity, fighting and beer drinking as a basis for the discharge. The use of profanity in the shop was not uncommon, fighting had never been made a basis for discharge, and the men were permitted to drink beer without limitation.

In conclusion, the Trial Examiner pointed out that the amended Act protects the rights of union members to express their dissatisfaction with the manner in which elected officials manage union affairs. The employer's action in discharging the charging party at the request of the union amounted to discrimination in violation of Section 8(a)(3) and 8(a)(1) of the amended Act, and the union, by causing the employer to discharge him, had violated Section 8(b)(2) and 8(b)(1)(A) of the amended Act.

Exhibit #70

Exhibit #71

Petition to Mc Intosh Laboratory Inc., President Bill Clinton and Pennsylvania Gov. Tom Ridge

Donald S. Drusky has grievances that are pending for redress by the United States of America and the Commonwealth of Pennsylvania. Enclosed for the attention of Mc Intosh, President Clinton and Governor Ridge is a copy of a petition dated May 21, 1999 to Mike's Train House. President Clinton and Governor Ridge already have their copy of the petition and exhibit to the 88 U.S. District Courts of the 50 States of the United States of America, so a copy will be provided to Mc Intosh. The petition was not honored by President Clinton and Governor Ridge regarding the advance order of 100 units each of various tin plate and die cast trains and accessories. A recall of the production may be demanded. In addition to tin plate "Standard and O" Gauge engines, passenger and freight cars, and accessories, I am also seeking "O" gauge die cast engines and freight cars, and aluminum passenger cars, and accessories.

The subject of this petition is the advance order of the MC 2000 - 130 watt Tube Amplifier with an order deadline of March 31, 2000. I am asking Mc Intosh to please extend the order deadline till I have a writ in place before the U.S. Circuit Courts of Appeals over the "abuse of discretion" pertaining to the case before the 88 U.S. District Courts.

I hope to have the writ in the mail near the end of April and need time for the 11 U.S. Circuit Courts to properly process the writ during May. I know I am entitled to a great redress. Besides the future train orders, I am now seeking from the United States of America 50 units of the MC 2000 - 130 watt Tube Amplifier, and 50 units of Tube Amplifier from the Commonwealth of Pennsylvania for a total of 100 units, plus a total of 100 units of a Tube Pre Amplifier for the Tube Amplifiers. Plus a Tuner and CD Player to make 100 complete stereo sets to save, use or distribute as I see fit.

If Mc Intosh proceeds with production without an advance order of 100 units between the United States and Pennsylvania, I am asking Mc Intosh to save and hold at least 6 units of the MC 2000 Tube Amplifier and, I assume, a Tube Preamplifier will be made available for the MC 2000.

Regarding the MTH Volume III - 1999 catalog, Donald S. Drusky seeks the following:

New York Central 5 car Passenger Set (Gold plated & Platinum plated)
New York Central 4-6-4 Hudson Steamer J-1E (Gold + Platinum)
New York Central Y2K Boxcar 'O' (Gold + Platinum)

Railking Millennium - GG-1 Electric Engine and 4 car Aluminum Passenger Set and Pennsylvania Box Car (Gold + Platinum)

Standard Gauge Millennium Presidential Passenger Set (Gold with Platinum Highlights) Item No. 10-1126-0 Traditional

Tinplate Presidential Passenger Set - Traditional - Item No. 10-1122-0 Two Tone Blue Electric Engine and 4 car passenger set.

Switch Tower from American Flyer Standard Gauge style - Item No. 10-1124

With 100 units of each from the United States and 100 units of each from Pennsylvania Plus other items in the catalog.

Certificate of Service

I, Donald S. Drusky, served a copy of this petition upon the following by U.S. Mail on 3-27:

Mc Intosh Laboratory Inc.
2-T Chambers St.
Binghamton, N.Y. 13903

President Bill Clinton
1600 Pennsylvania Ave.
Washington, D.C. 20500

Governor Tom Ridge
State Capitol
Harrisburg, Pa. 17120

Dated: 3-27-00

Respectfully submitted, Donald S. Drusky

Petition to Mike's Train House, President Bill Clinton and Pennsylvania Governor Tom Ridge

Donald S. Drusky has grievances that are pending for redress by the United States of America and the Commonwealth of Pennsylvania. The drafting of the enclosed copy of a petition with 3 page reduced in size exhibit (on behalf of the sovereign people of the United States of America) has delayed a subsequent redress specifically on behalf of Donald S. Drusky. It will be emphasized in future petitions in the courts, and an important part of the redress shall be for the United States of America and the Commonwealth of Pennsylvania to each provide 100 units of each Tin Plate Traditions item listed in the February 1999 issue - Volume II MTH Catalog scheduled for production. Thereafter, each new catalog shall also require similar quantities (100 by U.S. and 100 by Pa.). All metal Standard Gauge and 'O' gauge die cast or tin plate accessories shall require 100 cases (6 packages per case) of each lamp, block signal, semaphore and etc. Standard Gauge light towers and high tension towers at 3 sets per case will require 100 cases of each.

Volume III 1999 MTH catalog is due to be issued in June 1999. After this scheduled production is completed, all the tin plate and die cast products listed in all MTH catalogs prior to the Volume II 1999 MTH catalog shall be reproduced with quality control in similar quantities. In the regard of the Blue Comet listed in Volume II 1999 MTH catalog, the U.S. and Pa. shall each provide 100 Engines and 100 4 car passenger sets. Regarding the Roundhouse, the U.S. and Pa. shall provide each 100 4 section sets with 100 Turntables. In general, 100 of everything paid by U.S. and 100 of everything paid by Pa. Plus a new modern warehouse to store them to use and distribute them as I see fit. Some may be donated to Model Train Museums.

The cooperation of Mike's Train House, President Clinton and Governor Ridge will be greatly appreciated.

The President and Governor may as well place their advance order on the MTH Volume II catalog which may require MTH to adjust its Volume II production schedule. Volume II will not be a subject of reproduction because Volume II is the starting point for production in honor of Donald S. Drusky's redress by the United States of America and the Commonwealth of Pennsylvania. Also a Z-4000 transformer shall be provided at one for every two locomotives. Standard gauge and 'O' gauge track must also be provided in adequate amounts. Lionel Tin Plate and die cast, and Richart Tin Plate products will also be sought in similar quantities.

Certificate of Service

I, Donald S. Drusky, served a copy of this petition and court documents upon the following by U.S. Certified Mail on May 21, 1999:

M.T.H. Electric Trains
7020 Columbia Gateway Drive
Columbia, Maryland 21046-1532

President Bill Clinton
1600 Pennsylvania Ave.
Washington, D.C. 20500

Governor Tom Ridge
State Capitol
Harrisburg, Pa 17120

Respectfully submitted,
Donald S. Drusky

Dated: May 21, 1999

No envelope or stamp needed. This flap is gummed. Seal and mail.

# WARRANTY REGISTRATION CARD

(Please Print or Type and Check All That Apply)

Name ______________________ Age ____________

Address ______________________

City ______________ State ________ Zip ________

Item Purchased ______________ Date Purchased ________

Please indicate what age group you are in: ❑ <21 ❑ 22-30 ❑ 31-40 ❑ 41-50 ❑ >61

Please indicate how much money you spend annually on toy trains and related products: ❑ >$250 ❑ >$500 ❑ >$1000 ❑ >$1500 ❑ >$2000 ❑ >$3000 ❑ >$5000

What size products are you primarily interested in? ❑ Premier/O-Scale ❑ RailKing®/0-31 Scale ❑ Both

If you have any MTH Premier Line items, what do you primarily use them for? ❑ Operating ❑ Collecting

If you have any MTH RailKing Line items, what do you primarily use them for? ❑ Operating ❑ Collecting

Where do you buy the majority of your trains: ❑ Hobby Shop ❑ Mail Order ❑ Trains Shows ❑ Other

Do you read a newspaper? ❑ Yes ❑ No

What is your favorite section of the newspaper? ❑ World News ❑ Regional News ❑ Local News ❑ Sports ❑ Life Style ❑ Business ❑ None

Do you read train magazines? ❑ Yes ❑ No

Which Train Magazines do you read? ❑ Classic Toy Trains ❑ Model Railroader ❑ O Gauge Railroading ❑ O Scale News ❑ Collecting Toys ❑ None

Do you read magazines other than train magazines? ❑ Yes ❑ No

Which non-train magazines do you read? ❑ Time ❑ Newsweek ❑ Sports Illustrated ❑ Nation Geographic ❑ US News ❑ Other

Do you listen to the Radio? ❑ Yes ❑ No

Which type of radio station do you listen to? ❑ News/Talk ❑ Country ❑ Easy Listening Rock & Roll ❑ Soft Rock ❑ Other

Do you watch TV? ❑ Yes ❑ No

Which TV network do you most frequently watch? ❑ ABC ❑ CBS ❑ NBC ❑ Fox ❑ CNN ❑ ESPN ❑ A&E ❑ Discovery ❑ Other

Do you have internet access? ❑ Yes ❑ No

If you do have internet access, which types of web sites do you visit most? ❑ News ❑ Travel ❑ Hobby ❑ Sports ❑ Business ❑ Style ❑ Other

# NEW PRODUCT VIABILITY SURVEY

We at MTH Electric Trains value your opinion and interests in new product developments and would appreciate your cooperation in completing this survey of new product productions. Your assistance will enable us to pick future product choices that you desire. If you have any other suggestions or comments not addressed in this survey, please feel free to write us at MTH Electric Trains, 7020 Columbia Gateway Drive, Columbia, MD 21046-1532.

## Standard Gauge

Check as many product types that you would be interested in purchasing sometime in the future.

**STEAM ENGINES**
❑ 385E ❑ 384E ❑ 400E ❑ 1835E ❑ 392E ❑ 390E

**ELECTRIC ENGINES**
❑ 381 ❑ 380 ❑ 408 ❑ 9E ❑ 10E ❑ 402 ❑ 318 ❑ 8E

**PASSENGER SETS**
❑ GIRARD ❑ 418 SERIES ❑ STATE SET ❑ 300 SERIES ❑ AMER. FLYER ❑ BLUE COMET ❑ IVES

**FREIGHT CARS-200 SERIES**
❑ BOX ❑ SEARCHLIGHT ❑ REEFER ❑ FLAT ❑ CATTLE ❑ TANK ❑ CRANE ❑ GONDOLA ❑ HOPPER ❑ DUMP ❑ CABOOSE

**ACCESORIES**
❑ 435 ❑ FIGURES ❑ HELLGATE ❑ 126 ❑ TOOL BOX ❑ 840 POWERHOUSE ❑ WEIGH STATION ❑ CONTAINERS ❑ ROUNDHOUSE ❑ BUNGALOWS ❑ TURNTABLE ❑ 115 ❑ CART SET ❑ 155 FREIGHT SHED ❑ 437 ❑ HIGH TEN. TWR. ❑ 43 BOAT ❑ 438 ❑ SRCHLITE TWR. ❑ 44 BOAT ❑ 436 ❑ 440 SIGNAL ❑ RACE CAR SET

**FREIGHT CARS-500 SERIES**
❑ BOX ❑ GONDOLA ❑ REEFER ❑ FLAT ❑ CABOOSE ❑ TANK ❑ SEARCHLIGHT ❑ HOPPER ❑ DUMP

**OTHER** ______________________

## O Gauge Tinplate

Check as many product types that you would be interested in purchasing sometime in the future

**STEAM ENGINES**
❑ 262 ❑ 258 ❑ 263 ❑ 259 ❑ 260 ❑ 249

**ELECTRIC ENGINES**
❑ 253 ❑ 250 ❑ 256 ❑ 252 ❑ IVES 1694 ❑ 254 ❑ 251

**PASSENGER SETS**
❑ HIAWATHA ❑ IVES 1695 ❑ 613 CARS ❑ RAIL CHIEF ❑ U.P. 752 SET ❑ BLUE COMET

**FREIGHT CARS - 800 SERIES**
❑ SEARCHLIGHT ❑ HOPPER ❑ BOX ❑ FLAT ❑ CABOOSE ❑ CATTLE ❑ GONDOLA ❑ REEFER ❑ TANK ❑ CRANE

**OTHER** ______________________

FORM DS1-1661(1/00)

Name: Donald Drusky
Address: 422 Chuor St 2fl
Account Number: 7800617534001 Shut-Off Date: 9-5-00

## *Your Electricity Has Been Shut-Off*

Date: 9-5-00

***We shut off your electricity because you did not*** pay your past-due electric bill.

**To have your electricity turned on, call us to make a payment arrangement.** Your service will be reconnected, no later than, the end of the first full working day after you have paid the following charges.

| | |
|---|---|
| Past-due Amount | $ 499.72 |
| Security Deposit | + $ |
| Turn-on Fee | + $ 20.00 |
| TOTAL | $ |

### MEDICAL EMERGENCY NOTICE

If someone living in your home is very ill, we will not shut off your electricity if you take two actions.

(1) Have a doctor call or write to tell us the name of the person who is ill, the type of illness they have, how long the illness will last and that the illness will get worse if you do not have electricity.

AND

(2) Make an arrangement with us to pay your past-due and current bills.

*Please call us to take care of this problem.*

Duquesne Light Company
(412) 393-7200
708 Smithfield Street
Pittsburgh, PA 15279

Hours - Monday Through Friday
8:00 a.m. to 4:30 p.m.

Century III Mall Office
Beaver Valley Mall Office

Hours - Monday Through Friday
9:00 a.m. to 8:30 p.m.

DONALD
DRUSKY

# SERVICE IS TERMINATED

Dear Customer:

Your gas service has been terminated in accordance with procedures established by the Public Utility Commission.

If you or anyone presently and normally living in your home is seriously ill, we will restore your service during such illness provided:

A. A physician certifies by phone or in writing that such illness exists and that it may be aggravated if your service is not restored; and

B. Make some equitable arrangements to pay the company your past due and current bills for service and/ or pay the required security deposit.

C. Contact us by calling the Customer Service Division at this number (412) 395-3050.

DATE POSTED 6/21/00

**EQUITABLE GAS**

200 ALLEGHENY CENTER MALL
PITTSBURGH, PA 15212-5352

Form 542870 Rev. 3/00

Exhibit #72